# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW G. GREGORY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FRESNO COUNTY, et al.,<br><br>Defendants. | Case No. 1:18-cv-00524-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION TO DISMISS AND GRANTING COUNTY DEFENDANTS' MOTION TO DISMISS<br><br>(ECF Nos. 21-22, 25, 50-57, 58, 59)<br><br>ORDER SETTING PAGE LIMITATION FOR OBJECTIONS TO FINDINGS AND RECOMMENDATIONS<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

On April 16, 2018, Plaintiffs Matthew G. Gregory, Danella J. Gregory, Gina D. Gregory, Matthew J. Gregory, Wounded Warriors Support Group ("WWSG"), and Central Coast Equine Rescue & Retirement ("CCERR") (collectively "Plaintiffs") filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Fresno County, Lisa Smittcamp, and Jeffrey Dupras (collectively "County Defendants"), and Xavier Becerra, Julianne Mossler, Elizabeth S. Kim, Tanya M. Ibanez, The Registry of Charitable Trusts ("RCT"), Kamala Harris, David Eller, Walter Garcia, and the Department of Justice ("DOJ") (collectively "State Defendants"). Currently before the Court are two motions to dismiss filed by the County Defendants and the State Defendants.

The Court heard oral argument on the motions to dismiss on August 15, 2018. Counsel Gina Gregory appeared for Plaintiffs. Counsel Brande Gustafson appeared on behalf of the County Defendants; and counsel Diana Esquivel appeared on behalf of the State Defendants. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the August 15, 2018 hearing, as well as the Court's file, the Court issues the following findings and recommendations.

## I.

## PROCEDURAL HISTORY

On April 16, 2018, Plaintiffs filed this action against the State and County Defendants. (ECF No. 1.) On June 6, 2018, State Defendants filed a request for an extension of the page limitation in filing a motion to dismiss. (ECF No. 18.) The district judge granted the request and extended the page limitation for both State Defendants' motion to dismiss and Plaintiffs' opposition to the State's motion. (ECF No. 20.) On June 27, 2018, State Defendants filed a motion to dismiss and request for judicial notice. (ECF Nos. 21 and 22.) On June 29, 2018, the State's motion to dismiss was referred to the undersigned for the preparation of findings and recommendations. (ECF No. 23.)

On July 3, 2018, County Defendants filed a motion to dismiss. (ECF No. 25.) On July 5, 2018, the County's motion to dismiss was referred to the undersigned for the preparation of findings and recommendations. (ECF No. 26.) On July 17, 2018, Plaintiffs filed a request for an extension of the page limitations for their oppositions which was opposed by Defendants and was denied. (ECF Nos. 36, 37, 38.)

On August 1, 2018, Plaintiffs filed two oppositions; a notice of judicial notice of additional facts discovered; declarations of Gina Gregory; Matthew G. Gregory, and Matthew J. Gregory; and two notices of intent to appear in opposition to the motions to dismiss. (ECF Nos. 41-48.) On August 2, 2018, Plaintiffs' oppositions were stricken from the record for failure to comply with the page limitations in the June 12, 2018, and July 19, 2018 orders. (ECF No. 49.) On August 6, 2018, Plaintiffs refiled all documents in opposition to the motions to dismiss. (ECF Nos. 50-57.) Accordingly, the Court shall disregard the documents filed on August 1,

2018. (ECF No. 43, 44-48.) Plaintiffs also filed two notices of intent to appear in opposition of the motions. (ECF No. 53, 54.) While the local rules require that a motion be noticed on the motion calendar, there is no requirement for an attorney to file a notice of intent to oppose the motion. Therefore, Plaintiffs' notices of intent to oppose the motions shall be disregarded as unnecessary.

On August 10, 2018, the County Defendants and State Defendants filed reply briefs. (ECF Nos. 58, 59.)

## II.

## COMPLAINT ALLEGATIONS

Plaintiff Matthew G. Gregory is the President of the WWSG and CCERR. (Compl. ¶ 3, ECF No. 1.) He holds a general contractors license from the State of California and owns and operates Gregory Construction and Gregory Motorsports. (Id.) CCERR is a registered 501(c)(3) nonprofit organization located in California which rescues horses from abusive and neglectful homes, provides care for rescue and retired horses, and educates the public about animal neglect and abuse. (Id.) CCERR has been active from 2011 to the present providing fulltime care to rescued horses. (Id.) WWSG is also a registered 501(c)(3) nonprofit organization located in California whose purpose is to educate the public about Post-Traumatic Stress Disorder ("PTSD"), veteran plight and homelessness, and veteran's poverty. (Id.) WWSG began a therapeutic horseback riding program for United States veterans. (Id.) Plaintiff Matthew G. Gregory has a vision to found the Carmel Healing Center for Wounded Warriors ("Healing Center") which would be a retreat where veterans could receive treatment for PTSD by specialists and psychotherapists. (Id.) At the Healing Center, riding arenas and barns would be available for veterans to take therapeutic horseback riding lessons without interruption or restrictions from other horse enthusiasts or stable owners. (Id.)

Plaintiff Danella Gregory is Plaintiff Matthew G. Gregory's wife and secretary, officer, and director of WWSG and CCERR. (Compl. ¶ 4.)

Plaintiff Matthew J. Gregory is the son of Plaintiffs Matthew G. Gregory and Danella Gregory. (Compl. ¶ 5.) He is the treasurer, officer, and director of WWSG and CCERR. (Id.)

He also owns and operates The Bug Dash and Colic Gard.  (Id.)

Plaintiff Gina Gregory is the daughter of Plaintiffs Matthew G. Gregory and Danella Gregory.  (Compl. ¶ 6.)  She is an attorney admitted to the California Bar in June 2014.  (Id.)  She became certified by the Professional Association of Therapeutic Horsemanship ("PATH") in 2015.  (Id.)  She offered lessons to veterans on flyers throughout the Bay Area after becoming PATH certified.  (Id.)

Plaintiffs bring this action against the following defendants.  Defendant Fresno County is a local government entity and oversees and monitors the functions of the Fresno County District Attorney and her staff.  (Compl. ¶ 8.)  Defendant Lisa Smittcamp has been the Fresno County District Attorney since 2014.  (Compl. ¶ 16.)  She oversees Defendant Jeffrey Dupras who was an assistant district attorney during 2015.  (Compl. ¶ 15.)

Defendant Xavier Becerra has been the Attorney General of California since January 24, 2017, and is charged with enforcing California's statutes.  (Compl. ¶ 9.)  He directs and controls the DOJ and is responsible for the operations of the RCT.  (Id.)  He is responsible for administering California's Supervision of Trustees and Fundraisers for Charitable Purposes Act.  (Id.)

Defendant Kamala Harris was the Attorney General from 2011 to 2017.  (Compl. ¶ 12.)  In this capacity she administered California's Supervision of Trustees and Fundraisers for Charitable Purposes Act.  (Id.)

Defendant DOJ is interchangeable with the Office of the Attorney General.  (Compl. ¶ 11.)  It is the Attorney General's law enforcement division which is comprised of sworn law enforcement officers, criminalists/forensic scientists and professional personnel.  (Id.)

Defendant Walter Garcia works at the Office of the Attorney General as Defendant Becerra's press secretary.  (Compl. ¶ 13.)  In this capacity, he communicates with the press.  (Id.)

Defendant Julianne Mossler was acting as a deputy attorney general for Defendant Becerra starting on January 24, 2017, and previously worked for Defendant Harris.  (Compl. ¶ 14.)

Defendant Tanya Ibanez works for the Office of the Attorney General in Los Angeles,

California.  (Compl. ¶ 17.)

Defendant Elizabeth Kim is a supervising deputy attorney general at the DOJ and Office of the Attorney General.  (Compl. ¶ 18.)

Defendant RCT has an online database that contains information about charitable registrants of the State of California.  (Compl. ¶ 10.)  It is accessible to the public at large, free of charge, through search engines such as Google and Bing.  (Id.)  Defendant David Eller works as Staff Services and Registrar for the RCT.  (Compl. ¶ 19.)

Plaintiffs are suing Defendants Becerra, Harris, Garcia, Mossler, Dupras, Smittcamp, Ibanez, Kim, and Eller in their official and individual capacities.  (Compl. ¶¶ 9, 12, 13, 14, 15, 16, 17, 18, 19.)

Plaintiffs allege that based on false allegations from the County Defendants, and Defendants Harris, the DOJ, and Defendant Mossler; and without properly investigating those allegations, Defendants Mossler, the DOJ, Defendant Garcia and Defendant Becerra made false allegations and defamatory out of court statements that criminal acts were committed by Plaintiffs.  (Compl. ¶ 24.)  Due to these statements, various press and media sources published damaging and sensationalistic stories about Plaintiffs.  (Compl. ¶ 25.)  In February 2018, Plaintiffs discovered that Defendant Becerra had emailed false and defamatory statements about Plaintiffs to the press and reporters.  (Id.)

In January 2018, Plaintiffs Gina Gregory and Danella Gregory became aware that letters addressed to WWSG and CCERR and notations that contain allegations of criminal conduct were recorded into the RCT and were available for the public to view free of charge.  (Compl. ¶ 26.)  This information contains false and defamatory statements made by Defendants RCT, DOJ, Mossler, Dupras, and Eller which caused reputational harm to Plaintiffs.  (Id.)  Plaintiff Matthew J. Gregory received a letter dated May 21, 2015 from Defendant Dupras in the mail and asked Defendant Dupras to remove the letter shortly thereafter.  (Id.)  Upon being told about the Dupras letter, Plaintiff Matthew G. Gregory had a phone conversation with Defendant Dupras in which he requested that the May 21, 2015 letter be removed from the database.  (Id.)  Defendant Dupras promised that the letter would be removed, but it was not removed.  Plaintiffs Matthew

G. Gregory and Danella Gregory do not use computers and do not know how to access the internet to check the RCT database. (Id.) Plaintiff Matthew J. Gregory stopped checking the database approximately two months after he spoke with Defendant Dupras and has only recently became aware that the letter is still on the RCT database through a February 1, 2018 letter from Defendant Eller which referenced the letter. (Id.)

The RCT database contains letters from Defendants Dupras, Mossler, and Eller. (Compl. ¶ 28.) In addition, the database contains a cease and desist letter and other documents regarding the status of WWSG and CCERR. (Id.) The entries in the RCT are received from untested information that local district attorneys and other staff submit to the DOJ. (Compl. ¶ 30.) This information is accessible by third parties, including investigative agencies inside and outside California, licensing agencies, employment screening agencies, and the public at large free of charge. (Compl. ¶ 33.) Licensors, certification agencies, employers, and others who have access to Plaintiffs' records are directed to review the information on the RCT website as well as the articles quoting Defendant Becerra's press releases and out of court statements about Plaintiffs. (Compl. ¶ 34.)

Prior to April of 2018, Plaintiffs were not provided with an opportunity or means to inspect, correct, challenge or reverse the information contained on the RCT database. (Compl. ¶ 36.) Plaintiffs submitted a public records act request for records which have mostly been denied with objections. (Id.) After Plaintiffs filed a claim pursuant to the California Tort Claims Act, they received an opportunity to contest the contents of the February 1, 2018 letter from Defendant Eller. (Id.) Plaintiffs allege that the February 1, 2018 letter was required to be drafted by an attorney, and Defendant Eller was not admitted to the California Bar at the time that the letter was drafted. (Id.) The February 1, 2018 letter accused Plaintiffs of committing criminal acts, including violation of California Penal Code section 320.5. (Id.)

The letter accuses WWSG of 1) illegally soliciting donations in 2011, two years before filing its articles with the California Secretary of State and three years before registering with the RCT; 2) selling raffle tickets for a chance to win a car in violation of Penal Code section 320.5; 3) selling raffle tickets and operating a raffle before becoming an organization qualified to do

business in California; 4) selling raffle tickets over the internet; 5) failing to use at least 90 percent of the gross receipts generated by the raffle to benefit or provide support for beneficial or charitable purposes; 5) selling raffle tickets without a permit from the RCT; 6) failing to appeal a cease and desist order on the ground that Plaintiffs were ineligible to conduct a raffle issued in May 2015 by the Fresno County District Attorney's Office; 7) continuing to sell raffle tickets and conducting a raffle in violation of the cease and desist letter; 8) continuing to sell raffle tickets in August 2016 causing the RCT to issue a cease and desist letter that was not appealed by Plaintiffs; 9) in August 2016, Plaintiffs' raffle registration for the period of September 1, 2015 to August 31, 2016 was revoked and Plaintiffs did not appeal the revocation or denial of the raffle permit; 10) continuing to sell raffle tickets in September 2016 which resulted in penalties of $3,000.00 which were paid and not appealed; 11) continuing to sell raffle tickets into December 2016 despite the revocation of the raffle permit and two cease and desist letters resulting in penalties of $17,000.00 which have not been paid or appealed; 12) conducting a raffle on January 1, 2017, in violation of two cease and desist letters and the denial of the application for a raffle permit for the period of September 1, 2016 through August 31, 2017; 13) failing to submit a raffle report by October 1 providing information about the period ending August 31 which included aggregated gross receipts from the operation of the raffle and aggregate direct costs incurred from the operation of the raffle; 14) selling raffle tickets from September 1, 2014 through August 31, 2015, and holding a raffle on January 1, 2015 without filing a report for the period; and 15) selling raffle tickets between September 1, 2016 and August 31, 2017 and holding a raffle on January 1, 2017 without filing a report for the period. (Compl. ¶ 36.)

Plaintiffs have also been accused of embezzlement of charitable monies, larceny by false pretenses, and fraudulent misrepresentation. (Compl. ¶ 37.) Defendant Becerra has accused Plaintiffs of lining their pockets with charitable monies and dishonestly taking advance of the goodwill of the American public. (Id.) Plaintiffs contend they did not receive adequate notice or the opportunity to clear their name prior to the defamatory statements being published. (Id.)

Plaintiffs have filed a timely response in the case of People of California v. WWSG.

(Compl. ¶ 38.)  Plaintiffs also sent a timely response to the February 1, 2018 letter requesting a hearing to contest the contents of the letter.  (Id.)  Plaintiffs responded that they did not solicit donations for WWSG in 2011 and that WWSG's fundraising efforts in 2011 and 2012 were for Giant Steps.  (Compl. ¶ 38.)  WWSG's fundraising efforts in 2013 were for the Wounded Warrior Project.  (Id.)  WWSG operates an "equal opportunity drawing" which may be advertised, offered and distributed over the internet and not a raffle.  (Id.)  The tickets stated that no purchase was necessary and funds were a donation rather than gaming or a chance to win. (Id.)

Plaintiffs' also contend that WWSG was qualified to operate in California as of the close of the 2014 calendar year.  (Comp. ¶ 38.)  Plaintiffs contend that since they offered an equal opportunity drawing they were not required to comply with the 90-10 rule.  (Id.)  Since it was an equal opportunity drawing no raffle permit was necessary.  (Id.)  A raffle permit was only obtained to avoid confusion with the participating public and to satisfy the demands of the RCT. (Id.)  Since WWSG was offering an equal opportunity drawing and not a raffle they were not in violation of the cease and desist letters.  (Id.)  Plaintiffs contended there was no need to appeal because they informed Defendant Dupras of the disagreement and he agreed to remove the letter from the RCT and a letter was sent on September 12, 2016 that satisfied all the necessary components to request an appeal.  (Id.)

Further, Plaintiffs contend that they paid the $3,000.00 fine to alleviate WWSG from the harassment of the Attorney General's Office.  (Compl. ¶ 38.)  Plaintiffs contend that fines were improperly levied against WWSG for selling raffle tickets at car show events.  (Id.)

The February 1, 2018 letter provided that WWSG's application for registration/renewal was denied and that it could not solicit assets or donations for any charitable purposes or engage in any activity for which registration with the Attorney General was required.  (Compl. ¶ 40.) The registration of CT0213442 was suspended effective thirty days from the issuance of the notice and until further written notice of the attorney general.  (Id.)  WWSG could not distribute or expend any charitable asset without the written approval of the Attorney General.  (Id.) WWSG was required to provide an accounting of all assets received and disbursed since its

inception within thirty days of the notice.  (Id.)  The letter stated that the cease and desist order has been in effect since May 21, 2015, and is effective on WWSG, its officers, directors, agents, and anyone acting on WWSG's behalf.  (Compl. ¶ 51.)

Plaintiffs contend that they did not conduct raffles and had thousands of free ticket entries annually and the contest always stated "no purchase necessary" and "void where prohibited." (Compl. ¶ 42.)  The only hearing to allow Plaintiffs to contest the allegations was scheduled for June 6, 2018.  (Compl. ¶ 44.)  Plaintiffs held the drawing in Chandler, Arizona on January 1, 2017.  (Compl. ¶ 158.)

On April 17, 2017, Defendants Becerra, Kim, Ibanez, and Mossler filed a lawsuit against Plaintiffs and Gregory Motorsports in Alameda County Superior Court, People v. WWSG, No. RG17856929.  (Compl. ¶ 47.)  Around this same date, Defendant Becerra sent emails to various press and media companies identifying Plaintiffs as known or suspected criminals.  (Compl. ¶ 59.)

Plaintiffs contend that a reasonable person would have recognized that Plaintiffs Matthew G. Gregory, Matthew J. Gregory, and Danella Gregory have loaned approximately $1.7 million to Plaintiffs WWSG and CCERR, the loaned car prizes were done without taking write offs as tax deductions, have worked 80 to 100 hours per week without taking a salary, and are entitled to reimbursement for reasonable expenses.  (Compl. ¶ 53.)

The May 21, 2015 letter stated that the Fresno District Attorney's Office had received information from the California Attorney General's Office that WWSG was conducting a raffle over the internet at the link: https://raffle.winwithacobra.com, and that WWSG was not registered to conduct a raffle.  (Compl. ¶ 55.)  The letter stated that Defendant Dupras could be contacted with questions or concerns.  (Id.)  It further informed that pursuant to California Penal Code section 320.5 a raffle could not be operated or conducted in any manner over the internet. (Id.)

Plaintiffs allege that it is the policy or custom of Fresno County, the DOJ, and the RCT to overlook facts that exonerate individuals accused of conducting raffles without properly weighing the evidence and without an adequate investigation; make accusations of criminal

misconduct without probable cause or adequate investigation; to complete and submit reports and letters without conducting an adequate investigation, verifying with local officials the veracity of the information contained in the documents or giving the individuals an opportunity to be heard; to refuse to advise the removal of any listing on the RCT until there is a judicial finding of innocence; to fail to adequately notify suspected violators of their right to appeal; to fail to provide adequate notice of the right and opportunity to be heard by an impartial adjudicator; to seek confidential information about donor and drawing entrants information; allow investigators to perform adjudicative functions; impose monetary penalties and revocations without adequate notice and an opportunity to appeal; fail to schedule and provide hearings even when receiving timely notice requesting such; retroactively suspend rights, non-profit registrations, and raffle registrations without adequate notice and the right to appeal; impose monetary penalties prior to providing notice; routinely suspend or revoke rights and impose penalties before notice has occurred; charge penalties for raffle activities at events not attended and before a hearing by an impartial adjudicator; and fail to take down stigmatizing information from the RCT database.  (Compl. ¶ 64.)

Plaintiffs contend that the goodwill of WWSG's name has been severely damaged by the information contained on the RCT website and the statements of Defendant Becerra.  (Compl. ¶ 68.)  On February 28, 2018, Plaintiffs presented a claim for damages in compliance with California's Tort Claims Act.  (Compl. ¶ 72.)  In March of 2018, Plaintiffs received a response to the claim form.  (Compl. ¶¶ 73, 74.)  Plaintiff submitted additional claims that were not responded to.  (Compl. ¶¶ 75, 77, 78.)

On March 12, 2018, Plaintiffs sent a letter to Defendant Mossler requesting that all WWSG ticket entries be returned and have not received the tickets back.  (Compl. ¶ 76.)

Plaintiffs bring claims against Defendants Mossler, Harris and the DOJ for denial of the right to freedom of association and freedom of speech in violation of the First Amendment, federal preemption and for unreasonable search, unreasonable search and seizure under the Fourth Amendment, and denial of the right of privacy in violation of the California Constitution; against Defendants Mossler, Becerra, Ibanez, Harris, Kim, Eller, Dupras, Smittcamp, Fresno

County, DOJ, and RCT for retaliation in violation of the First Amendment; against all defendants for claims for policy and procedure, defamation in violation of the Fourteenth Amendment, denial of the right of privacy in violation of the California Constitution; and against Defendant Mossler, Ibanez, Kim, Becerra, Harris, and the DOJ for abuse of process .

Plaintiffs are seeking declaratory relief; injunctive relief requiring Defendants to print a full retraction of statements published, remove links to documents on the web, return ticket entries to WWSG, and to allow inspection of internal records possessed by the Attorney General; and monetary damages.

## III.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations

of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)).

## IV.

## REQUESTS FOR JUDICIAL NOTICE

### A.    Defendants' Request for Judicial Notice

As a general rule, the court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion. United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011). There are two exceptions to this rule, when the complaint necessarily relies on the documents or where the court takes judicial notice of documents. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The County Defendants request that the Court take judicial notice that no claim for damages was filed against Fresno County, Lisa Smittcamp, or Jeffrey Dupras. (ECF No. 25-2.) The State Defendants request that the Court take judicial notice of the following that are matters of public record.

1.    State Defendants' June 27, 2018 Request for Judicial Notice

1.    Plaintiffs WWSG and CCEER are nonprofit public benefit corporations.

2.    On April 17, 2017, the Office of the Attorney General filed a lawsuit against Plaintiffs entitled People v. WWSG (Alameda County Superior Court No. RG17856929). That lawsuit is still pending in the Superior Court and arises from the same set of facts and events at

issue in this matter. Discovery and other pretrial proceedings are still ongoing in the state-court case. A settlement conference is set for July 3, 2018. The pretrial conference is set for August 10, 2018, and trial is scheduled to start on August 27, 2018.

3. Around February 20, 2018, Plaintiff Matthew G. Gregory submitted a government claim. Claims for damages within six months of submitting the government claim were accepted, and the remaining claims were deemed untimely.

4. Around February 20, 2018, Plaintiff Matthew J. Gregory submitted a government claim. Claims for damages within six months of submitting the government claim were accepted, and the remaining claims were deemed untimely.

5. Around February 20, 2018, Matthew G. Gregory on behalf of WWSG submitted a government claim. Claims for damages within six months of submitting the government claim were accepted, and the remaining claims were deemed untimely.

6. Around February 20, 2018, Plaintiff Danella Gregory submitted a government claim. Claims for damages within six months of submitting the government claim were accepted, and the remaining claims were deemed untimely.

7. Former Attorney General Kamala Harris was elected to the United States Senate in November 2016, and assumed the office of Senator on January 3, 2017.

8. On January 24, 2017, Xavier Becerra was sworn in as California's Attorney General.

Judicial notice may also be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee, 250 F.3d 668, 689 (9th Cir. 2001). Accordingly, that Court takes judicial notice of People v. WWSG (Alameda County Superior Court No. RG17856929). (ECF Nos. 22-3, 22-4, 22-5.) The Court also takes judicial notice of the facts that former Attorney General Kamala Harris was elected to the United States Senate in November 2016, and assumed the office of Senator on January 3, 2017, and on January 24, 2017, Xavier Becerra was sworn in as California's Attorney General. These facts are set forth in Plaintiffs' complaint and are matters of public record which are not subject to dispute.

1    Plaintiffs' complaint refers to and relies on the claim forms submitted against the State
2    defendants and the Court shall take judicial notice of the documents under the incorporation by
3    reference doctrine and because these are documents of public record that are properly subject to
4    judicial notice.

5    Courts may take judicial notice of information displayed on government websites where
6    neither party disputes the accuracy of the information contained therein.  Daniels–Hall v.
7    National Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010).  The Court takes judicial notice of
8    the documents displayed on the RCT website.  (ECF Nos. 22-1, 22-2.)

9        2.    State Defendants' August 10, 2018 Request for Judicial Notice

10    State Defendants request that the Court take judicial notice of the proposed decisions of
11    the Office of Administrative Hearings, issued August 6, 2018, in In the Matter of the Refusal to
12    Register/Renew Registration and Automatic Suspension Against Central Coast Equine Rescue
13    and Retirement, Case No. CT0183312, and In the Matter of the Refusal to Register/Renew
14    Registration and Automatic Suspension Against Wounded Warriors Support Group, Case No.
15    CT0213442.

16    "It is well established that '[a] court may take judicial notice of records and reports of
17    administrative bodies[.]' "  Lundquist v. Cont'l Cas. Co., 394 F.Supp.2d 1230, 1243 (C.D. Cal.
18    2005).  As these exhibits are administrative court records, State Defendants request for judicial
19    notice is granted.  See Sheikh v. Med. Bd. of Cal., No. CIV S-10-0213 FCD, 2010 WL 2793551,
20    at *2 (E.D. Cal. July 14, 2010) (taking judicial notice of administrative court records).

21        3.    County Defendants' Request for Judicial Notice

22    The County Defendants request that the Court take judicial notice that no tort claim form
23    was filed based on the 2015 letter.  Courts find that whether or not a Tort Claim has been
24    presented to a public entity is subject to judicial notice.  Davis v. Zimmerman., No. 17-CV-
25    01230-BAS-NLS, 2018 WL 1806101, at *6 (S.D. Cal. Apr. 17, 2018); Kenney v. City of San
26    Diego, No. 13CV248-WQH-DHB, 2014 WL 325157, at *7 n.5 (S.D. Cal. Jan. 28, 2014); Elliott
27    v. Amador Cty. Unified Sch. Dist., No. 2:12-CV-00117-MCE, 2012 WL 5013288, at *7 (E.D.
28    Cal. Oct. 17, 2012) (collecting cases).  As Plaintiffs do not oppose the request, the Court takes

judicial notice of the fact that no claim form was presented to Fresno County regarding the 2015 Dupras letter.

### B. Plaintiffs' Request for Judicial Notice

Plaintiffs filed a request for the Court to take judicial notice of additional facts that support their claims. (ECF No. 50.) State Defendants and County Defendants object to the declarations submitted by Plaintiffs in opposition to the motion to dismiss and the request for judicial notice as to those documents that were not already attached to the complaint.

Initially, the Court advises Plaintiffs that the current motions are brought under Rule 12(b) to dismiss the complaint. As discussed above, in deciding a motion to dismiss, the Court only considers the allegations contained in the complaint and may consider documents that the complaint necessarily relies on or documents that subject to judicial notice. Lee, 250 F.3d at 689. Therefore, the documents filed addressing additional facts and the additional facts alleged in the declarations may not be considered in deciding whether the complaint should be dismissed for failure to state a claim.

Plaintiffs seek for the court to take judicial notice of 38 documents.[1] The Court may take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Judicially noticed facts often consist of matters of public record, such as prior court proceedings, see, e.g., Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir.1988) (administrative materials), Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.1994) (city ordinances), Toney v. Burris, 829 F.2d 622, 626–27 (7th Cir.1987) (city ordinances and official maps), Aiello v. Town of Brookhaven, 136 F.Supp.2d 81, 86 n. 8 (E.D.N.Y.2001) (geological surveys and existing land use maps), and Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir.2000) (taking judicial notice of a filed complaint as a public record)." United States v. S. California Edison Co., 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004).

---

[1] To the extent that Plaintiffs are seeking judicial notice of documents attached to the complaint and incorporated by reference, the request is unnecessary. See Khoja v. Orexigen Therapeutics, No. 16-56069, at *22-24 (9th Cir. August 13, 2018).

"The existence and authenticity of a document which is a matter of public record is judicially noticeable such as the authenticity and existence of a particular order, pleading, public proceeding, or census report, which are matters of public record, but the veracity and validity of their contents (the underlying arguments made by the parties, disputed facts, and conclusions of fact) are not." Cactus Corner, LLC v. U.S. Dep't of Agric., 346 F.Supp.2d 1075, 1099 (E.D. Cal. 2004), aff'd, 450 F.3d 428 (9th Cir. 2006).

Plaintiffs have not stated why any specific document is appropriate for judicial notice nor supported the request with legal authority. Upon review of the documents attached to the request for judicial notice, the Court finds that the following documents have some relevancy to the current motion and are appropriate for judicial notice as they are matters of public record or incorporated by reference in Plaintiffs' complaint: August 16, 2016 Cease and Desist Order issued to CCERR; August 16, 2016 Cease and Desist Order issued to WWSG; Notice of Refusal to Register/Renew Registration filed in case nos. CT0213442 and CT0183312; press releases from Xavier Becerra; May 21, 2015 cease and desist letter to WWSG, and government claim form documents. (Request for Judicial Notice at 7-9, 10-13, 40-46, 48-54, 117-18, 127, 179-84.) Judicial notice shall be taken of these documents. Plaintiffs seek judicial notice of the notices of hearing filed in CT0213442 and the motion to quash filed in RG17856929, however these documents do not aid the Court in determining the pending motions to dismiss and the request shall be denied. (ECF No. 50 at pp. 89-100, 186-202.)

The following documents are not appropriate for judicial notice: United States Postal Service tracking records; letters from Department of Justice or other individuals to Plaintiffs, letters or correspondence written by Plaintiffs, telephone records; photographs, emails, posters, juror summons, bank records, and website posts. Plaintiffs' request for judicial notice is denied as to these documents.

**V.**

**DISCUSSION**

The State Defendants move to dismiss the complaint on the grounds that the Younger abstention doctrine provides that the claims must be litigated in state court, the State Defendants

are entitled to absolute and qualified immunity; the Anti-Injunction Act bars the claims for injunctive and declaratory relief, and the complaint fails to state a cognizable claim under section 1983.

The County Defendants move to dismiss the complaint on the grounds that the claims are barred by the statute of limitations; the federal claims are barred by absolute prosecutorial immunity; the official capacity claims are redundant and should be dismissed with prejudice; the complaint fails to allege facts to support an individual capacity claim against Defendant Smittcamp; the punitive damages claims against the County of Fresno should be dismissed; the retaliation claim fails to allege a substantial causal link between the alleged adverse action and the protected activity; the complaint fails to state a due process claim; the federal defamation claim fails to state a claim; the claim for injunctive relief is not an independent claim for relief and should be dismissed as barred by the Anti-Injunction Act; the right of privacy claims are barred by the statute of limitations, the complaint fails to allege conduct amounting to a serious invasion of a protected privacy interest, County Defendants are entitled to immunity pursuant to Government Code sections 815.2(b) and 821.6; the complaint fails to state a direct liability claim against the County of Fresno; and any surviving claims should be stayed pending disposition of the quasi-criminal enforcement action filed in Alameda County State Court. The County Defendants also join in the State Defendants motion to dismiss

Plaintiffs counter that the <u>Younger</u> abstention doctrine does not apply because none of the exceptional circumstances warranting abstention under <u>Younger</u> are present and the <u>Younger</u> factors are not satisfied, they need not exhaust state remedies to bring a claim under section 1983, the Anti-Injunction Act does not bar their request for injunctive relief, the claims were brought within the limitations period, Defendants are not entitled to immunity from suit, and the allegations in the complaint are sufficient to state cognizable claims.

### A.  Law Pertaining to Charitable Entities in California

"In order to solicit tax deductible contributions in California, a non-profit corporation or other organization must be registered with the state's Registry of Charitable Trusts." <u>Ctr. for Competitive Politics v. Harris</u>, 784 F.3d 1307, 1309 (9th Cir. 2015) (citing Cal. Gov. Code §

12585).  "To ensure that charitable status is not abused, the Attorney General has 'broad powers under common law and California statutory law to carry out [its] charitable trust enforcement responsibilities.' " Ctr. for Competitive Politics v. Harris, 296 F.Supp.3d 1219, 1221 (E.D. Cal. 2017) (quoting Cal. Gov't Code § 12598(a)).

Under the Supervision of Trustees and Fundraisers for Charitable Purposes Act (the Act), Cal. Gov't Code § 12580 et seq., the Attorney General has the primary responsibility to supervise charitable trusts and public benefit corporations that are incorporated in or conducting business in California, and to protect charitable assets for their intended use.  Ctr. For Competitive Politics, 784 F.3d at 1310 (citing Cal. Gov't Code §§ 12598(a), 12581).  The Act "requires the Attorney General to maintain a registry of charitable corporations and their trustees and trusts, and authorizes the Attorney General to obtain 'whatever information, copies of instruments, reports, and records are needed for the establishment and maintenance of the register.' " Ctr. For Competitive Politics, 784 F.3d at 1310 (quoting Cal. Gov't Code § 12584).

To that end, RCT was established and is required to provide public access to reports filed with the Attorney General and certain documents filed with the Attorney General that must be open to public inspection.  Cal. Gov't Code §§ 12587.1, 12590.  To solicit funds from California residents, an organization must maintain membership in the registry.  Cal. Gov't Code § 12585. The Act requires that corporations file periodic written reports, and requires the Attorney General to promulgate rules and regulations specifying both the filing procedures and the contents of the reports.  Cal. Gov't Code § 12586(b); Cal. Code Regs. tit. 11, § 300 et seq.

The regulation at issue here pertain to the operations of raffles.  Cal. Code. Regs. tit. 11, § 410 et seq.  Together with California Penal Code § 320.5, the regulations require, among other things, that all eligible organizations wishing to conduct a raffle must register with the DOJ in the Nonprofit Raffle Program before conducting the raffle and that raffle tickets not be sold, traded, or redeemed over the Internet.  Cal. Penal Code. § 320.5(c), (f)(2), (h); Cal. Code Regs. tit. 11, §§ 410, 415, 417, 423.  Enforcement of the raffle requirements rests with the DOJ, and the DOJ is authorized to take any legal or administrative action for violations of the raffle regulations, including requiring a charitable organization to provide all information, documents,

and other records to enable the Attorney General and other law enforcement agencies to ascertain compliance with Penal Code § 320.5. Cal. Penal Code. § 320.5(i), (j); Cal. Code Regs. tit. 11, §§ 419.2, 425. Any appeal of a denial, suspension, or other administrative action taken in connection with raffle activities must be brought under Penal Code § 320.5(h). Cal. Code Regs. tit.11 § 419.3.

The Act gives the Attorney General the authority to secure compliance and address violations. Cal. Gov't Code § 12591. Upon finding that an entity or person who is subject to the Act has committed a violation, the Attorney General may issue cease and desist orders, impose monetary penalties, suspend or revoke registration, or file an enforcement action. Cal Gov't Code §§ 12591.1(b), (c), (d), 12598(a), (e); Cal. Code Regs. tit. 11, § 999.6(a). Any person or entity that the Attorney General has filed an action against under California Government Code § 12591.1 may, within 30 days of notice of the action, appeal the action or request a hearing to review that action. Cal. Gov't Code § 12591.1(e); Cal. Code Regs. tit. 11, § 999.6(c); see also Cal. Code Regs. tit. 11, § 999.7 (allowing for further review of an appeal). The appeal must be in writing and must include the name and entity affiliation, address and telephone number of the person appealing, registration number, and statement of the basis of the appeal. Cal. Code Regs. tit. 11, § 999.6(c)(1).

## B. <u>Younger</u> Abstention

The State and County Defendants argue that the Court should refrain from intervening in the ongoing state judicial proceedings pursuant to <u>Younger v. Harris</u>, 401 U.S. 37 (1971). Defendants contend that there is a quasi-criminal action pending in state court on the same issues raised in this action which implicates the State's important interest in protecting charity donors from fraudulent and deceptive solicitation, and Plaintiffs can raise any federal challenge in the state proceedings. Plaintiffs counter that <u>Younger</u> abstention does not apply to civil actions, Defendants demonstrated bad faith because the state action was motivated by the State Defendants desire for political gain in their positions and Defendants have harassed Plaintiffs by issuing multiple cease and desist letters without providing Plaintiffs with a hearing, and the requirements of <u>Younger</u> are not met.

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." Younger, 401 U.S. at 43. The first ground on which the decision rested was "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law." Id. A more vital reason was "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . ." Id. at 44. Therefore, federal courts should refrain from interfering in state court prosecutions. Id. at 45.

"When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution[,]" and Younger abstention has been extended to particular state civil proceedings that are akin to criminal prosecutions, [], or that implicate a State's interest in enforcing the orders and judgments of its courts[.]" Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72–73 (2013) (internal citations omitted); see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 (1987) (Younger abstention applies to certain civil proceedings where "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government."). "The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Cases that fall within the Younger doctrine are "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Commc'ns Inc., 571 U.S. at 73 (citations omitted). These principals apply to actions at law as well as those in equity, and an action for monetary damages should not be dismissed but should be stayed until the state proceedings are completed. Gilbertson v. Albright, 381 F.3d 965, 968 (9th Cir. 2004).

As relevant here, <u>Younger</u> abstention is appropriate in certain civil proceedings that are akin to criminal proceedings, specifically where the state has initiated a sanction for some wrongful act. <u>Middlesex County Ethics Committee</u>, 457 U.S. at 434-35; <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 604 (1975). In this type of action, the state is routinely a party to, and often initiates, the action. <u>Sprint Commc'ns Inc.</u>, 571 at 79; <u>see Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.</u>, 477 U.S. 619, 628 (1986) (state civil rights commission administrative proceedings alleging sex discrimination); <u>Trainor v. Hernandez</u>, 431 U.S. 434, 444 (1977) (state action to recover welfare payments obtained by fraud). These cases commonly involve investigations which culminate in the filing of a formal complaint or charges. <u>Sprint Comm. Inc.</u>, 571 U.S. at 80. However, <u>Younger</u> does allow the federal court to intervene "in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whether manner and against whomever an effort might be made to apply it.' " <u>Huffman</u>, 420 U.S. at 611.

In determining whether <u>Younger</u> abstention is warranted in a civil action, the court is to consider if a state-initiated proceeding is 1) ongoing, 2) a quasi-criminal enforcement action or involves a state interest in enforcing the orders and judgments of the state court, 3) the proceeding implicates important state interests, and 4) allows the federal litigant the opportunity to raise the federal constitutional issues in the state proceedings. <u>Cook v. Harding</u>, 879 F.3d 1035, 1039 (9th Cir. 2018); <u>Gilbertson</u>, 381 F.3d at 978; <u>ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund</u>, 754 F.3d 754, 758 (9th Cir. 2014). If these factors are met, then a federal court action that would enjoin the proceedings or have the practical effect of doing so would interfere and <u>Younger</u> requires that the federal court abstain. <u>Gilbertson</u>, 381 F.3d at 978; <u>San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose</u>, 546 F.3d 1087, 1092 (9th Cir. 2008). The limited circumstances in which an exception exists remain the exception rather than the rule. <u>San Jose Silicon Valley Chamber of Commerce Political Action Comm.</u>, 546 F.3d at 1092.

1.      There is an Ongoing State Proceeding

There is no question that at the time that Plaintiffs filed this action there was an ongoing state action pending. Plaintiffs filed the complaint in this action on April 16, 2018. On April 17, 2017, the Office of the Attorney General filed a lawsuit against Plaintiffs in the Alameda County Superior Court which is set for trial in August 2018. That lawsuit arises from the same set of facts and events that are at issue in this matter. The State is seeking the appointment of a receiver and the involuntary dissolution of WWSG and CCERR alleging that WWSG operated an illegal raffle as a primary source of revenue, a grant was provided to CCERR for a specific purpose but the funds were not used for that specified purpose, and the Gregory family members used the monies for their personal benefit in violation of their fiduciary duties. (ECF No. 22-4.) By the instant action, Plaintiffs are seeking monetary damages and the return of evidence in the possession of the Department of Justice for use in prosecuting the state court action. (Compl. ¶¶ 116.)

2.      The State Action is a Quasi-Criminal Action to which Younger Applies

Plaintiffs argue that the state court proceeding is not a parallel criminal proceeding or civil enforcement proceeding that would allow for abstention under Younger. The basis of Plaintiffs complaint here is that the State has improperly categorized their fundraising activities as a raffle when it was an equal opportunity drawing. In the state action, the State is seeking to sanction Plaintiffs for their failure to comply with the Act. In 2015, the Fresno County District Attorney's Office received information that Plaintiffs were conducting an illegal raffle. Multiple cease and desist orders were issued, the State conducted an investigation,[2] and ultimately the state action was filed to appoint a receiver and dissolve the corporations. The state complaint was filed pursuant to California Government Code section 12598 to enforce the Act. The complaint alleges that Plaintiffs conducted an illegal raffle and misused the funds raised for their personal use. Plaintiffs here are defending the state court action.

---

[2] To the extent that Plaintiffs allege that the State did not investigate, the complaint itself demonstrates otherwise. The Court is not required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Daniels-Hall, 629 F.3d at 998. Plaintiffs complaint alleges that Defendant Mossler sought documents pursuant to an audit request in July 2016. (Compl. ¶¶ 93, 110, 202-204.)

While Plaintiffs argue that the state defendants are not parties in the civil action, the state is seeking to enforce California state charitable regulations and protect charitable donors from deceptive charitable fundraising. The Court finds that this is the type of quasi-criminal proceeding to which <u>Younger</u> applies. <u>Cook</u>, 879 F.3d at 1040; <u>see also</u> <u>Williams v. State of Wash.</u>, 554 F.2d 369, 370 (9th Cir. 1977) (state action to protect consumers from unfair and deceptive trade practices by prosecuting and penalizing those who violate the Consumer Protection Act is quasi-criminal action); <u>Fairfield Cmty. Clean Up Crew Inc v. Hale</u>, No. 17-15224, 2018 WL 2324217, at *2 (11th Cir. May 22, 2018) (civil enforcement proceeding seeking determination that bingo machines are illegal gambling devices under state law is type of action to which <u>Younger</u> abstention applies).

3.   <u>The State has an Important Interest in Protecting Charitable Assets</u>

Defendants argue that the State has an important interest in seeking to recover charitable assets which the plaintiffs have wrongly misappropriated, to appoint a receiver to preserve and distribute the remaining assets in a manner consistent with their charitable purpose, and assess civil penalties against the plaintiffs. Plaintiffs counter that there is no important state interest for abstaining from the state court action where they are attempting to assert independent civil rights violations in this action.

"Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.' " <u>Gilbertson</u>, 381 F.3d at 984 n.11 (quoting <u>Moore v. Sims</u>, 442 U.S. 415, 426 (1979)). "The importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual's case." <u>Baffert v. Cal. Horse Racing Bd.</u>, 332 F.3d 613, 618 (9th Cir.2003). Generally, a state's interest in administering quasi-criminal proceedings without interference is significant. <u>Baffert</u>, 332 F.3d at 618.

It has long been established that donations received for charitable purposes must be used for the purposes for which they are given and the Attorney General has a duty to bring enforcement actions to enforce charitable trusts. <u>Pac. Home v. Los Angeles Cty.</u>, 41 Cal. 2d 844, 854, 264 P.2d 539 (1953); <u>O'Hara v. Grand Lodge Indep. Order of Good Templars of State of</u>

1  California, 213 Cal. 131, 141 (1931).  The State has a substantial interest in guarding against

2  fraudulent activities in the name of charity.  Riley v. Nat'l Fed'n of the Blind of N. Carolina,

3  Inc., 487 U.S. 781, 792 (1988).  California has enacted regulations governing the regulation and

4  supervision of charitable trusts.  These "statutes were enacted in recognition of the problem of

5  providing adequate supervision and enforcement of charitable trusts."  Holt v. Coll. of

6  Osteopathic Physicians & Surgeons, 61 Cal.2d 750, 754 (1964).  The Attorney General has been

7  empowered to oversee charities as a representative of the public because there is usually no one

8  willing to assume the burden of oversight or who could properly represent the interests of the

9  trust or the public.  Holt, 61 Cal.2d at 754.  The donors also have an interest in ensuring that their

10  donations are used for the purposes for which they were given.  Id.

11  The State has a substantial interest in ensuring that charitable assets are not fraudulently

12  obtained or wrongly misappropriated.  Here, the State has an important interest in ensuring that

13  Plaintiffs' fundraising efforts complied with the Act and the charitable assets were used for the

14  purposes for which they were given.

15  4.  Plaintiffs can Raise their Federal Constitutional Claims in the State Action

16  Plaintiffs argue that they are not able to file a counterclaim against the defendants in the

17  state court action.  The burden is on the federal plaintiff to show that state procedural law barred

18  presentation of the constitutional claims.  Pennzoil, 481 U.S. at 15.  Plaintiffs do not allege that

19  the statute governing raffles itself is unconstitutional, but argue that the state did not adequately

20  investigate and wrongly concluded that they were conducting a raffle.  To the extent that

21  Plaintiffs allege constitutional challenges to the actions of the defendants in investigating and

22  prosecuting the state action, these issues can properly be raised in state court.  Baffert, 322 F.3d

23  at 620.  The state court judges have a duty to enforce the United States Constitution.  Huffman,

24  420 U.S. at 611.

25  Plaintiffs argue that they cannot raise their federal question issues in state court, but do

26  not point to anything that would suggest that California courts are procedurally barred from

27  considering their constitutional claims.  Further, as Defendants counter, California law provides

28  that a party may file a cross-complaint alleging "[a]ny cause of action he has against a person

1 alleged to be liable thereon, whether or not such person is already a party to the action, if the

2 cause of action asserted in his cross-complaint (1) arises out of the same transaction, occurrence,

3 or series of transactions or occurrences as the cause brought against him or (2) asserts a claim,

4 right, or interest in the property or controversy which is the subject of the cause brought against

5 him." Cal. Civ. Proc. Code § 428.10(b). The Court finds that the state court proceedings

6 provide Plaintiffs with an adequate opportunity to raise their constitutional claims. Moore, 442

7 U.S. at 430.

8        5.        The Younger Factors Require Abstention in this Instance

9        To rule on the constitutional claims in the circumstances presented here would implicate

10 the state's interest in administration of its judicial system, would risk offense because it would

11 reflect unfavorably on the state court's ability to enforce constitutional principles, and would put

12 the federal court in the position of making a premature ruling on a matter of constitutional law.

13 Gilbertson, 381 F.3d at 984. Here, the main issue to be decided in both this and the state court

14 action is whether Plaintiffs were conducting a raffle in violation of California law and the state

15 court is the best court to decide this issue. The principles of comity counsel restraint, and this

16 action seeking damages should be stayed until the pending state court proceedings are complete.

17        6.        No Extraordinary Circumstances Exist to Justify Immediate Federal Relief

18        The State Defendants argue that they have a reasonable expectation of obtaining a valid

19 "conviction" in the State proceedings given that, although Plaintiffs allege they were not

20 conducting a raffle, they admitted that they were holding a raffle to solicit donations and

21 Plaintiffs continued to solicit donations after the two cease and desist letters were received.

22 Further, Defendants argue that the allegation of retaliation does not show bad faith because the

23 First Amendment does not shield fraud and fraudulent solicitation of charitable donations is not

24 protected speech.

25        Plaintiffs counter that the defendants' actions were motivated by a desire to experience

26 political gain in their positions, the order to stop all solicitation was overbroad and constituted

27 bad faith, no reasonable person could expect a valid conviction to result in the state action, and

28 the Plaintiffs loaned millions of dollars to the charities without being fully repaid. Plaintiffs

argue they have been harassed by the multiple cease and desist orders that were issued, the failure to provide a timely hearing, and during their depositions in the civil case.

"In the Younger abstention context, bad faith 'generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.' " Baffert, 322 F.3d at 621 (quoting Kugler v. Helfant, 421 U.S. 117, 126 n. 6 (1975)). Here, Plaintiffs sold tickets over the internet at the link: https://raffle.winwithacobra.com and at car shows. (Compl. ¶¶ 38, 55.) They were issued a cease and desist letter by the Fresno County District Attorney and a cease and desist order by the DOJ but admit that they continued to solicit donations for drawing tickets. Based on the factual allegations in the complaint, Plaintiffs cannot show that the state court action was brought without a reasonable expectation that the State would prevail on the claim that Plaintiffs conducted an illegal raffle and solicited contributions in violation of cease and desist orders.

Plaintiffs argue that the cease and desist orders are irredeemably and inconsistently overbroad because they were issued without WWSG having its day in court. However, each of the orders informed Plaintiffs of the procedures for appealing the order, and the state court is fully capable of addressing the alleged due process issues in resolving the quasi-criminal action.

Plaintiffs contend that the state defendants harassed them by issuing multiple cease and desist orders, but Plaintiffs admitted that they continued to solicit donations after the first cease and desist letter was issued. The need for multiple cease and desist orders is reasonably attributable to Plaintiffs continuing to engage in conduct that was found to be prohibited by the letters, rather than any harassing conduct on behalf of the defendants. Plaintiffs have not alleged any facts by which the Court can infer that Defendants issued cease and desist letters or orders or filed the state action to harass Plaintiffs. Plaintiffs assertion that the drawing was not a raffle but an equal opportunity drawing is insufficient to demonstrate bad faith on behalf of the defendants in the circumstances presented here.

Although Plaintiffs argue that the state action is irrelevant to this action, all of Plaintiffs other claims in this action are based on their argument that they did not conduct a raffle. Plaintiffs contend that they were not required to submit a raffle report or comply with the 90/10

rule because they did not conduct a raffle. Plaintiffs also allege that the comments made by the defendants were defamatory because they did not engage in a raffle. If the state court proceedings determine that Plaintiffs did engage in an illegal raffle, issue preclusion will likely resolve the majority, if not all, of the claims in this action.

Further, there has been an administrative hearing and the administrative law judge has issued a proposed decision. (ECF No. 58-1.) The administrative law judge's finding addresses the issue of whether Plaintiffs' complied with the appeals process and whether Plaintiffs were conducting a raffle. Staying this action will allow for the agency to adopt or decline to adopt the proposed findings to which collateral estoppel may apply. "[C]ollateral estoppel should be applied '[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.' " Eilrich v. Remas, 839 F.2d 630, 633 (9th Cir. 1988). Collateral estoppel bars relitigating an issue where "(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." Eilrich, 389 F.2d at 633 (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)). Since this decision has not yet been addressed by the agency, staying the action will allow for the state administrative proceedings to conclude after which the parties can address the effect the final decision would have in this or the state court matter.[3]

Finally, Plaintiffs argue that they are not seeking to enjoin the state court action. But Plaintiffs are seeking for this court to issue an order requiring the State Defendants to return evidence that is relevant to the prosecution of the state action. Also, "Younger principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as

---

[3] State Defendants seek to have the Court apply preclusive effect to the findings of the administrative law judge. However, since the decision is not final, the Court finds that the findings are not entitled to preclusive effect at this stage in these proceedings.

a declaration or injunction on pending state proceedings." <u>Gilbertson</u>, 381 F.3d at 968. Here, the State court is addressing the specific issues that Plaintiffs seek to litigate in this Court and for this Court to decide that Plaintiffs' constitutional rights have been violated would have the same practical effect of enjoining the state court action.

The Court finds that no exception to the abstention doctrine would apply in this case.[4]

### C. Anti-Injunction Act

Plaintiff's eighth cause of action is for injunctive and declaratory relief. The State and County Defendants contend that the Anti-Injunction Act does not allow this Court to provide the declaratory and injunctive relief that Plaintiffs are seeking and seek to dismiss Plaintiffs' eighth cause of action. Further, the County Defendants move to dismiss the cause of action for injunctive relief as it is not an independent claim. Plaintiffs argue that section 1983 is an express authorization to grant injunctive relief and the Anti-Injunction Act does not bar the requested relief.

Pursuant to 28 U.S.C. § 2283, a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Anti-Injunction Act "imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions." <u>Mitchum v. Foster</u>, 407 U.S. 225, 229 (1972). In <u>Mitchum</u>, the Supreme Court held that 42 U.S.C. § 1983, which expressly authorizes a suit in equity to redress deprivations under color of state law of any rights, privileges or immunities secured by the Constitution, is within the expressly authorized exceptions to the Anti-Injunction Act. 407 U.S. at 242-43. The Court stated that in so concluding, they did "not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." <u>Id.</u> at 243.

Accordingly, if Plaintiffs were to state a claim under section 1983, the Court finds the

---

[4] Plaintiffs argue that the <u>Rooker-Feldman</u> doctrine is inapplicable to this action, however, the defendants have not argued that <u>Rooker-Feldman</u> applies here.

Anti-Injunction Act does not bar injunctive relief in this action.  Bear Creek Water Ass'n, Inc. v. City of Canton, 606 F.Supp. 247, 250 (S.D. Miss. 1985); Trapper Brown Const. Co. v. Electromech, Inc., 358 F.Supp. 105, 107 (D.N.H. 1973); Miofsky v. Superior Court of State of Cal., In & For Sacramento Cty., 703 F.2d 332, 335 (9th Cir. 1983).  However, as discussed above, Younger abstention is applicable in this action and precludes the Court from issuing the relief requested.  See Cook v. Harding, 190 F.Supp. 3d 921, 934-35 (C.D. Cal. 2016), aff'd, 879 F.3d 1035 (9th Cir. 2018) ("In order for a federal court to provide declaratory or injunctive relief where there is related, ongoing state court litigation, the case must fit within both an exception to the Anti-Injunction Act and an exception to the Younger doctrine.").  The Court recommends that Defendants' motion to dismiss the requests for injunctive relief as barred by the Anti-Injunction act be denied as to the section 1983 claims.

County Defendants also seek to dismiss the eighth cause of action because a request for injunctive relief is not an independent cause of action.  Courts find that it is well settled that a claim for injunctive relief standing alone is not a cause of action.  Veridian Credit Union v. Eddie Bauer, LLC, 295 F.Supp.3d 1140, 1156 (W.D. Wash. 2017); Ramos v. Chase Home Fin., 810 F.Supp.2d 1125, 1132 (D. Haw. 2011); Mangindin v. Washington Mut. Bank, 637 F.Supp.2d 700, 709 (N.D. Cal. 2009).  "An injunction is a remedy, not a separate claim or cause of action."  Jensen v. Quality Loan Serv. Corp., 702 F.Supp.2d 1183, 1201 (E.D. Cal. 2010).  While injunctive relief may be available as a remedy if a plaintiff prevails on a cause of action, it is not an independent claim; and the Court recommends that the motion to dismiss the claim for injunctive relief without leave to amend be granted.

**D.    Eleventh Amendment Immunity**

The State Defendants move to dismiss the official capacity claims and the claims against the DOJ and RCT in the first, second, third, fifth, sixth, seventh, tenth, and eleventh causes of action on the ground that the defendants are entitled to immunity under the Eleventh Amendment.  Plaintiffs argue that the Eleventh Amendment does not bar claims against the State Defendants.  To the extent that Plaintiffs argued at the August 15, 2018 hearing that the Eleventh Amendment does not bar claims where the individual actors were acting outside of their official

duties or beyond their authority, that is not the issue addressed by the current motion to dismiss.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." <u>Aholelei v. Dept. of Public Safety</u>, 488 F.3d 1144, 1147 (9th Cir. 2007). A suit brought against government officials in their official capacity is generally equivalent to a suit against the government itself. <u>McRorie v. Shimoda</u>, 795 F.2d 780, 783 (9th Cir. 1986); <u>Seven Up Pete Venture v. Schweitzer</u>, 523 F.3d 948, 952 (9th Cir. 2008). Therefore, officials may be held liable if " 'policy or custom' . . . played a part in the violation of federal law." <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991) (quoting <u>McRorie</u>, 795 F.2d at 783). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. <u>Clement v. Gomez</u>, 298 F.3d 898, 905 (9th Cir. 2002) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989); <u>see</u> <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>Waggy v. Spokane County Washington</u>, 594 F.3d 707, 713 (9th Cir. 2010). To prove liability for an action policy the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." <u>Waggy</u>, 594 F.3d at 713.

To the extent that Plaintiff seeks monetary damages against the entity defendants or the individual defendants in their official capacities, such claims are barred by the Eleventh Amendment. The Court recommends that Plaintiffs' claims for monetary damages against the State entities and the State Defendants acting in their official capacities be dismissed without leave to amend as barred by the Eleventh Amendment.[5]

### E. Failure to State a Claim

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. <u>Nurre v. Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir 2009); <u>Long</u>, 442 F.3d at 1185; <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th

---

[5] Plaintiffs argue that they are seeking injunctive relief which is not barred citing <u>Ex Parte Young</u>, 209 U.S. 123 (1908). However, Defendants have not moved to dismiss the claims for injunctive relief on the ground of Eleventh Amendment immunity, but only the claims for damages.

Cir. 2002).  To state a claim under section 1983, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  In a section 1983 action, the complaint must allege that every defendant acted with the requisite state of mind to violate underlying constitutional provision.  OSU Student Alliance v. Ray, 699 F.3d 1053, 1070 (9th Cir. 2012).  Section 1983 does not contain a state of mind requirement and the requisite state of mind depends upon the constitutional violation alleged.  OSU Student Alliance, at 1071.

### 1.  Supervisory Liability

The County Defendants contend that the complaint is devoid of any factual allegations by which Defendant Smittcamp would be liable in her individual capacity under section 1983.  Plaintiffs counter that Defendant Smittcamp's name is on the May 21, 2015 letter which shows that she endorsed it and partook it in its creation.  County Defendants reply that Plaintiffs' speculation that the letter is part of a generic template or policy of the County was not raised in the complaint, and is not supported by factual allegations in the complaint.

Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."  Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  Crowley, 734 F.3d at 977 (citation and internal quotation marks omitted).  Plaintiffs rely on the fact that Defendant Smittcamp's name is on the "leader head of that letter", (ECF No. 52 at 19), but even if Defendant Smittcamp's name is included on the letter it is insufficient for the Court to reasonably infer that Defendant Smittcamp personally participated in preparing the letter or endorsed it.  The letter itself is signed by Defendant Dupras.  (Compl. p. 121.)  Plaintiffs' complaint is devoid of any factual allegations demonstrating that Defendant Smittcamp was personally involved in any actions or decisions regarding the cease and desist letter.

Plaintiffs also argue that this appears to be a form letter which indicates that Defendant

Smittcamp must have known of the violations and that the letter was patently unconstitutional. However, even if the letter was a form letter, it is not unconstitutional on its face. The letter identifies the activity that has been found to violate California law, informs the violating party to cease and desist that specific illegal conduct, and provides the contact information of the issuing district attorney should the party have any questions and concerns.

Plaintiffs have failed to state a claim that Defendant Smittcamp is liable in her individual capacity under section 1983.

2.  Monell Claims

County Defendants also argue that the complaint does not contain any allegations that Defendant Smittcamp promulgated or implemented a constitutionally deficient policy that was the moving force behind the alleged constitutional deprivations.

As relevant to the County Defendants, Plaintiffs' complaint alleges that Fresno County, Defendant Dupras, and Defendant Smittcamp failed to actively or properly investigate allegations that Plaintiffs were conducting a raffle on the internet. (Compl. ¶ 24.) Defendant Dupras issued a cease and desist letter that was placed on the RCT website and is accessible to the public. (Id. ¶ 26, 28, 58.) Plaintiffs appealed the letter by contacting Defendant Dupras. (Id. ¶ 50.) The letter has not been removed from the RCT website. (Id. ¶ 36.) Fresno County violated Plaintiffs due process rights by determining that the drawing was a raffle rather than an equal opportunity drawing. (Id. ¶ 38.)

Plaintiffs allege that Defendant Dupras was acting in conformity with the policies and customs of Fresno County. (Id. ¶ 65.) County Defendants intended to chill Plaintiffs' First Amendment rights by issuing the cease and desist letter and was intended to shut down all donations in connection with WWSG's equal opportunity drawing. (Id. ¶ 152, 154.) The County Defendants acted with the specific intent to negatively alter or extinguish rights and property of Plaintiffs. (Id. ¶ 274.)

A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury

complained of through a policy or custom.  <u>Waggy</u>, 594 F.3d at 713.

Here, Plaintiffs generally allege that Defendant Dupras was acting consistent with a policy or practice of Fresno County and set forth numerous policies or customs that are alleged to be in place in Fresno County, the DOJ, and the RCT.  (Compl. 64.)  To state a claim "[i]t is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury.  A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference' " to his constitutional rights.  <u>Castro v. Cty. of Los Angeles</u>, 833 F.3d 1060, 1076 (9th Cir. 2016), cert. denied sub nom. <u>Los Angeles Cty., Cal. v. Castro</u>, 137 S. Ct. 831 (2017).  The deliberate indifference standard is satisfied where a plaintiff alleges facts available to the municipality's policymakers that "put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." <u>Castro</u>, 833 F.3d at 1076.

In this instance, Plaintiffs have merely stated that policies exist without alleging any facts by which the Court can reasonably infer that there is a policy or that the agencies policy makers were on actual or constructive notice that the policies would violate the Constitution.  Plaintiffs' conclusory allegation that a certain custom or policy exists is not entitled be accepted as true.  <u>Iqbal</u>, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cognizable claim.  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).

Plaintiffs' complaint sets forth a single incident in which a cease and desist letter was issued after the district attorney was informed that a charity was conducting a raffle in violation of state law.  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996).  Plaintiffs have failed to state a claim against Fresno County or Defendant Smittcamp, therefore the Court recommends that Defendants Fresno County and Smittcamp's motion to dismiss the claims against them be granted.

///

3.    Punitive Damages

Fresno County moves to dismiss the punitive damages claim without leave to amend arguing that punitive damages cannot be recovered against a municipality as a matter of law. Plaintiffs respond that as a matter of public policy the punitive damages claim should be allowed to proceed. County Defendants respond that Plaintiffs point to no authority supporting the argument that punitive damages can be recovered against the County and the Supreme Court has expressly held that a municipal entity cannot be held liable for damages under section 1983.

As a matter of law, a public entity cannot be sued for punitive damages under section 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Neveu v. City of Fresno, 392 F.Supp.2d 1159, 1183 (E.D. Cal. 2005). Additionally, pursuant to California Government Code section 818, "a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." As a public entity, Fresno County cannot be held liable for punitive damages under California law. United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc., 766 F.3d 1002, 1012 (9th Cir. 2014); State Pers. Bd. v. Fair Employment & Hous. Com., 39 Cal.3d 422, 434 (1985).

Accordingly, the Court recommends that Fresno County's motion to dismiss the punitive damages claims against Fresno County be granted.

4.    First Amendment Claims

State Defendants move to dismiss the First Amendment claims raised in the first, third and fifth causes of action.

a.    **Freedom of Speech/Freedom of Association**

Plaintiffs' first cause of action alleges that donor rights were violated when the State sought ticket entries for its car drawing in 2016 through audit letters. (Compl. ¶ 93.) Plaintiffs contend that merely asking for the tickets violated the First Amendment rights of WWSG, its directors, and its ticket entrants. (Id. ¶ 114.) State Defendants move to dismiss Plaintiffs' claims that the demand for tickets for the 2016 drawing violated their free association and speech rights on the ground that the raffle tickets were obtained as part of the investigation into illegal conduct

and that fraudulent charitable solicitation is not protected speech. Plaintiffs counter that the ticket entrants did not give their consent to disclosure of their private information and State Defendants have not met their burden of demonstrating that a legitimate governmental interest was served by demanding all ticket entries. Plaintiffs further argue that the request infringed upon First Amendment rights because it was not narrowly tailored. During the August 15, 2018 hearing, the Court questioned Plaintiffs' counsel to clarify the rights that were being asserted in this cause of action. Based on Plaintiffs' response, the Court finds that Plaintiffs are seeking to assert the First Amendment rights of the third parties.

For each form of relief sought in federal court, a plaintiff must establish standing. Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010), cert. denied, 131 S. Ct. 503 (2010). Standing raises both constitutional and prudential concerns incident to the federal court's exercise of jurisdiction. Coalition of Clergy, Lawyers, and Professionals v. Bush, 310 F.3d 1153, 1157 (9th Cir. 2002). A prudential principle of standing is that normally a plaintiff must assert his own legal rights rather than those of third parties. Oregon v. Legal Services Corp., 552 F.3d 965, 971 (9th Cir. 2009); Fleck and Associates, Inc. v. Phoenix, 471 F.3d 1100, 1104 (9th Cir. 2006.) In some circumstances, a litigant may seek relief for third persons, however, the litigant must demonstrate 1) the litigant suffered an injury in fact; 2) that there is a close relationship between the litigant and the individual who possesses the right that the litigant is asserting; and 3) there is a hindrance to the individual's ability to assert his own rights. Coalition of Clergy, Lawyers, and Professionals, 310 F.3d at 1163; Fleck and Associates, Inc., 471 F.3d at 1105 n.3; McCollum v. California Dep't of Corrections and Rehabilitation, 647 F.3d 870, 878 (9th Cir. 2011). Plaintiffs have not alleged any facts by which the Court could find that they have standing to raise the First Amendment rights of third parties in this action.

To the extent that that the cause of action is seeking to assert the rights of Plaintiffs, while solicitation of charitable contributions is protected speech, see Riley, 487 U.S. at 788, it is because such solicitation is "characteristically intertwined with informative and or perhaps persuasive speech" seeking support for a particular cause or view on economic, political or social issues, Vill. of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 632 (1980). The State

can impose reasonable regulations to "serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." Vill. of Schaumburg, 444 U.S. at 637.

Plaintiffs allege that Defendant Mossler and Harris violated their First Amendment rights to freedom of association and freedom of speech by demanding that Plaintiffs produce drawing tickets for the 2016 drawing in an audit letter. (Compl. ¶¶ 93, 110.) Plaintiffs contend that the donors were exercising their rights under the First Amendment by filing out the ticket entries and donating to the causes of WWSG. (Id. ¶ 96.) Plaintiffs allege that once Defendant Mossler took possession of the tickets she had a duty to safeguard and keep the information safe. (Id. ¶ 113.) If such information were to be lost, misplaced, or released to third parties it would be a breach of this duty. (Id.)

Although Plaintiffs allege that they have been irreparably harmed by the required disclosure of the ticket entries (Compl. ¶ 115), the complaint fails to allege what speech is being infringed upon by the request or to show how the audit request infringed upon Plaintiffs' freedom of association. The Court finds that Plaintiffs have failed to state a cognizable claim for infringement of their freedom of speech or freedom of association based on the the audit request seeking ticket entries.

**b.** **Preemption**

Plaintiffs' second cause of action alleges that 26 U.S.C. § 6104 preempts California officials from demanding that a 501(c)(3) organization disclose a copy of Schedule B containing the names and addresses of the organization's donors and the First Amendment preempts the state from requesting the drawing ticket entries. State Defendants move to dismiss Plaintiffs' second cause of action. At the August 15, 2018 hearing, Plaintiffs asserted that this is not a separate cause of action, but is further reason to find that the request for ticket entries violates the First Amendment.

Since Plaintiffs are not alleging that the State Defendants are attempting to obtain information regarding Plaintiffs' tax-exempt status or any Internal Revenue Service documents, it is unclear how section 6104 would preempt the disclosure of ticket entries in Plaintiffs'

possession. To the extent that it could apply, Section 6104 restricts the disclosure of certain Internal Revenue documents. Section 6104(a) addresses inspection of applications for tax exemption or notice of status. Section 6104(d) addresses inspection of certain annual returns, reports, applications for exemption and notices of status. The purpose of section 6104 was "to curtail loose disclosure practices by the IRS[,]" and nothing suggests that the regulatory scheme for the Internal Revenue Service was to be extended to any other entities. <u>Ctr. for Competitive Politics</u>, 784 F.3d at 1319. Courts have rejected the argument that section 6104 precludes a state from requesting Internal Revenue documents directly from 501(c)(3) organizations. <u>Ctr. For Competitive Politics v. Harris</u>, No. 2:14-CV-00636-MCE-DA, 2014 WL 2002244, at *3, 5 (E.D. Cal. May 14, 2014), aff'd, 784 F.3d 1307 (9th Cir. 2015).

The Ninth Circuit has held that section 6104 was intended to regulate the Internal Revenue Service and no other entity. <u>Ctr. for Competitive Politics</u>, 784 F.3d at 1319. Therefore, Plaintiffs' preemption claim fails.[6]

Defendants' motion to dismiss the first cause of action should be granted.

### c. <u>Retaliation</u>

Plaintiffs' third cause of action alleges retaliation in violation of the First Amendment against all defendants. All defendants move to dismiss the retaliation claim arguing that Plaintiffs have not stated a claim. County Defendants move to dismiss on the ground that Plaintiffs have not alleged facts to demonstrate that the cease and desist letter was issued to chill protected speech and there are no allegations of any other conduct after the letter was issued to chill protected speech. State Defendants move on the ground that the allegations of retaliation in the complaint are conclusory and vague. Plaintiffs counter that the reasonable inferences of the cease and desist letters is that they were aimed at shutting down all donations in connections with the drawing and Plaintiffs were retaliated against because they continued to solicit donations.

To state a retaliation claim under the First Amendment, a plaintiff must allege "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a

---

[6] To the extent that Plaintiffs allege that the First Amendment bars disclosure of the documents, the question of whether the request for disclosure would violate the First Amendment has been addressed <u>supra</u>.

person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016).

i.     Plaintiffs fail to state a claim for retaliation against Defendant Dupras

The complaint alleges that Defendant Dupras issued a cease and desist letter and failed to remove it from the RCT website after he spoke to Matthew G. Gregory and Matthew J. Gregory. The cease and desist order states that it was issued in response to receiving information that Plaintiffs were selling raffle tickets over the internet at https://raffle.winwithacobra.com/. (Compl. p. 121.)  Although Plaintiffs make the conclusory allegation that the cease and desist letter was issued to shut down all solicitations for their drawing, the letter itself only states that since they are not in compliance with California law, "you are advised to cease and desist the operation of this raffle immediately." (Compl. p. 121.)

The Court disagrees with Plaintiffs that the only reasonable inference is that the May 2015 cease and desist letter was issued to chill their protected speech.  The contents of the letter itself lead to the reasonable inference that the cease and desist letter was issued because Defendant Dupras had received information that Plaintiffs were soliciting raffle tickets over the internet.  The purpose of the letter was to warn Plaintiffs that conducting a raffle over the internet violated California law and provide them with the opportunity to discontinue any such illegal conduct prior to further action being taken against them.

Plaintiffs have failed to state a cognizable claim of retaliation against Defendant Dupras. County Defendants' motion to dismiss the retaliation claim against Defendant Dupras should be granted.

ii.     Plaintiffs have failed to state a retaliation claim against any State Defendant

State Defendants contend that Plaintiffs' allegations of retaliatory animus are conclusory and vague and Plaintiffs did not plead specific facts to show that the State Defendants acted with the requisite intent to retaliate against their protected conduct.  Therefore, State Defendants argue that Plaintiffs have failed to state a cognizable claim for retaliation.  Plaintiffs counter that the facts alleged demonstrate an absence of probable cause and that the State Defendants' conduct

was not justified.

Based upon review of the complaint, the Court finds that Plaintiffs have merely set forth the elements of the cause of action without alleging any facts to support that the State Defendants acted because of Plaintiffs' protected conduct. Plaintiffs remind this Court that they have been denied their day in Court to determine whether they were conducting an equal opportunity drawing or a raffle, however, they are currently receiving just that opportunity in the administrative proceedings and People v. WWSG.

Plaintiffs contend that there is an absence of probable cause for the issues taken by the State Defendants.[7] However, the factual allegations in the complaint lead to the reasonable inference that the actions taken by the State Defendants were because of the finding that Plaintiffs were continuing to solicit tickets on the internet in violation of the May 2015 cease and desist letter, and continuing to solicit charitable donations in violation of the August 16, 2016 cease and desist order issued by the RCT. Plaintiffs contend that they were retaliated against because they continued to fund raise in violation of the cease and desist orders. (Compl. 155.) However, the fact that Plaintiffs continued to solicit donations for drawing tickets after the cease and desist letter was issued does not lead to the inference of a retaliatory motive, but suggest that State Defendants had a reasonable belief that Plaintiffs had been warned that their conduct was prohibited by California law, were violating the May 2015 cease and desist letter, and it was for that reason that the actions complained of were taken.

Although Plaintiffs allege that they were never able to present their argument that they were conducting an equal opportunity drawing and not a raffle, the complaint itself shows that Plaintiffs submitted this argument in objections to the documents issued on numerous occasions. (Compl. ¶¶ 38, 44, 174, p. 217.) Plaintiffs' have failed to state a cognizable retaliation claim against any State Defendant. State Defendants' motion to dismiss the retaliation claims should

---

[7] Plaintiffs cite to no authority for the assertion that it is required that there be probable cause to support the issuance of a cease and desist order by the agency. While Plaintiffs allege that they are being charged with criminal conduct, the only allegations in the complaint is that all actions taken in this matter were civil in nature. Therefore, probable cause would not be required for the agency to act. The regulations themselves provide that cease and desist orders may be issued and penalties imposed upon finding that an entity or person who is subject to the Act has committed a violation. Cal Gov't Code §§ 12591.1(b), (c), (d), 12598(a), (e); Cal. Code Regs. tit. 11, § 999.6(a).

be granted.

5.     Fourth Amendment Claim

Plaintiffs' third cause of action alleges that Defendants Mossler, Harris, and the DOJ violated Plaintiffs' Fourth Amendment rights by seizing the drawing tickets. State Defendants argue that Plaintiffs have failed to state a claim for unreasonable search and seizure under the Fourth Amendment because Plaintiffs voluntarily turned over the drawing tickets and the request was not unreasonable as it was limited in scope to only the 2016 drawing entries. Plaintiffs contend that the ticket entrants did not consent to have their private information handed over to State Defendants and the State has failed to prove a legitimate government interest is served by demanding the ticket entries.

The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV. "To establish a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent." <u>Ctr. for Competitive Politics</u>, 296 F.Supp.3d at 1229 (citing <u>Rakas v. Illinois</u>, 439 U.S. 128, 143 (1978) and <u>United States v. Rubio</u>, 727 F.2d 786, 796–97 (9th Cir. 1983).)

While Plaintiffs argue that the ticket entrants have not consented to having their information turned over, the question here is whether Plaintiffs consented by turning over the tickets in response to the audit request. The complaint demonstrates that in response to the audit request, Plaintiffs mailed the ticket entries to the State. (Compl. ¶¶ 93, 94, pp. 202-07.) First, a party has no reasonable expectation of privacy in documents that he voluntarily provides to a third party. <u>Wang v. United States</u>, 947 F.2d 1400, 1403 (9th Cir. 1991); <u>see also</u> <u>United States v. Jacobsen</u>, 466 U.S. 109, 119 (1984) (The Fourth Amendment is not violated where a private party makes property freely available for inspection.). Although Plaintiffs could have objected to the audit request and sought intervention to prevent disclosure of the documents they did not do so. Plaintiffs voluntarily provided the tickets to the State in response to the audit request. Plaintiffs have no reasonable expectation of privacy in documents that they voluntarily disclosed.

Defendants also argue that Plaintiffs consented to the search by voluntarily producing the documents. "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances[.]' " Ohio v. Robinette, 519 U.S. 33, 40 (1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218 (1973)). Here, the complaint alleges that Defendant Mossler sent an audit request asking Plaintiffs to produce the drawing entries for the 2016 drawing. This is a narrowly tailored request that is relevant to the underlying investigation into whether Plaintiffs are conducting an illegal raffle. As alleged in the complaint, Plaintiffs boxed up the documents and mailed them to Defendant Mossler. Viewing the totality of the circumstance, the Court finds that Plaintiffs consented to the search of the records. Plaintiffs have failed to state a claim that Defendant Mossler's request for the drawing tickets violated the Fourth Amendment. State Defendants' motion to dismiss the Fourth Amendment claims should be granted without leave to amend.

### 6.   Fifth Amendment

Plaintiffs' sixth cause of action alleges a Fifth Amendment claim against all Defendants. State Defendants move to dismiss Plaintiffs Fifth Amendment claim on the grounds that no defendant is a federal actor. Plaintiff concedes that no federal actors are involved in this action.[8]

"[T]he Fifth Amendment's due process clause applies only to the federal government." Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008). Since all Defendants in this action are state or county employees the Fifth Amendment does not apply. State Defendants' motion to dismiss the Fifth Amendment claims should be granted without leave to amend.

/ / /

---

[8] Plaintiffs' complaint also alleges that Defendants took their property in violation of the Fifth Amendment. (Compl. ¶ 255.) The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation. The Takings Clause of the Fifth Amendment "limits the government's ability to confiscate property without paying for it," and "is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Vance v. Barrett, 345 F.3d 1083, 1089 (9th Cir. 2003) (internal quotations and citation omitted). However, there are no allegations that any of Plaintiffs' property has been taken by the State for a public purpose. While the State is seeking the appointment of a receiver and the involuntary dissolution of WWSG and CCERR, the state court action provides the due process required for such a deprivation of property. Further, despite the conclusory allegations of a taking, the State complaint seeks to obtain the assets, not for a public purpose, but so they can be used for the purpose for which they were given.

1          7.      Sixth Amendment

2          Plaintiffs' sixth cause of action alleges a Sixth Amendment claim against all Defendants.

3   State Defendants move to dismiss the Sixth Amendment claim on the grounds that it does not

4   govern in a civil case.  Plaintiffs contend that the Sixth Amendment claim should not be

5   dismissed because Plaintiffs have been accused of committing criminal acts in press conferences

6   and statements made to the press without receiving a speedy, public trial.

7          "[T]he protections provided by the Sixth Amendment are available only in 'criminal

8   prosecutions.' "  United States v. Ward, 448 U.S. 242, 248 (1980).  "[T]he Sixth Amendment

9   does not govern civil cases."  Turner v. Rogers, 564 U.S. 431, 441 (2011); see also Carty v.

10  Nelson, 426 F.3d 1064, 1073 (9th Cir. 2005), opinion amended on denial of reh'g, 431 F.3d 1185

11  (9th Cir. 2005) ("Sixth Amendment right to confrontation does not attach in civil commitment

12  proceedings."); United States v. $292,888.04 in U.S. Currency, 54 F.3d 564, 569 (9th Cir. 1995),

13  as amended (May 24, 1995) (Sixth Amendment right to counsel does not attach to civil forfeiture

14  proceedings).

15         Here, Plaintiffs are facing claims in the state action of soliciting charitable funds and

16  misuse of charitable funds in violation of California law.  While Plaintiffs argue that the

17  allegations against them imply that their conduct was criminal, the only case proceeding is the

18  civil action.  The complaint fails to state a claim for violation of the Sixth Amendment and State

19  Defendants' motion to dismiss the Sixth Amendment claims should be granted without leave to

20  amend.

21         8.      Ninth Amendment

22         Plaintiffs' sixth cause of action alleges a Ninth Amendment claim against all Defendants.

23  State Defendants move to dismiss the Ninth Amendment claims on the ground that it has never

24  been recognized as independently securing any constitutional right for purposes of pursuing a

25  civil rights claim.  Plaintiffs do not provide any contrary legal authority, but argue that the claims

26  fall within the Ninth Amendment.

27         The Ninth Amendment provides that "the enumeration in the Constitution, of certain

28  rights, shall not be construed to deny or disparage others retained by the people."  Strandberg v.

City of Helena, 791 F.2d 744, 748 (9th Cir. 1986).  While "[i]t has been argued that the ninth amendment protects rights not enunciated in the first eight amendments[,] "the ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim."  Strandberg, 791 F.2d at 748; accord Montana Caregivers Ass'n, LLC v. United States, 526 F. App'x 756, 758 (9th Cir. 2013) (unpublished);[9] see also San Diego Cty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1125 (9th Cir. 1996) (rejecting argument that Ninth Amendment encompasses right to bear firearms).  Then Ninth Amendment is simply a rule on how to read the constitution.  Montana Caregivers Ass'n, LLC v. United States, 841 F.Supp.2d 1147, 1150 (D. Mont. 2012), aff'd, 526 F. App'x 756 (9th Cir. 2013).  Causes of action based on the Ninth Amendment fail to state a legal claim.  Ralls v. Facebook, 221 F.Supp.3d 1237, 1245 (W.D. Wash. 2016).

State Defendant's motion to dismiss Plaintiffs' claims raised under the Ninth Amendment should be granted without leave to amend.

### 9.    Fourteenth Amendment Claims

Plaintiffs' sixth cause of action alleges a Fourteenth Amendment claim against all Defendants.  State Defendants argue that Plaintiffs' due process claim based on the appeal process fails to state a claim because Plaintiffs do not allege that they timely and properly availed themselves of the appeal process.  Plaintiffs counter that they have adequately alleged that the cease and desist orders were issued without an opportunity to be heard, they were denied appeal hearings that were timely requested, fines were imposed before notice of the cease and desist letters, they were denied the right have a determination about whether they were conducting a raffle or an equal opportunity drawing, and were deprived the right to solicit by any means.  County Defendants reply that Plaintiffs now are attempting to include familial integrity and their reputations to raise a substantive due process claim against the County Defendants that was not included in the complaint.  Further, County Defendants contend that the only property interest

---

[9] Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1.  Ninth Circuit Rule 36-3(b); see Animal Legal Def. Fund v. Veneman, 490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority").

1   implicated by the cease and desist order issued by Defendant Dupras was the right to conduct or

2   operate the drawing. County Defendants argue that Plaintiffs are attempting to hold them liable

3   for statements made by the State Defendants, but no such implications can be drawn from the

4   cease and desist letter issued by Defendant Dupras.

5       **a.      Procedural Due Process**

6       "Procedural due process imposes constraints on governmental decisions which deprive

7   individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of

8   the [ ] Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Defendants

9   "assume" that Plaintiffs would have a liberty or property interest in the DOJ investigation and

10  procedures, however, the property interest that Plaintiffs are seeking to assert is in the property

11  obtained by soliciting donations or in the the monies that they are required to pay due to the

12  imposition of fines. Clearly, money that has already been donated and is possessed by Plaintiffs

13  is property that is entitled to the protections of due process. Neither party has addressed whether

14  solicitation of charitable donations would be a property or liberty interest that would be entitled

15  to the protections of due process.

16      "[P]roperty interests protected by procedural due process extend well beyond actual

17  ownership of real estate, chattels, or money." Bd. of Regents of State Colleges v. Roth, 408 U.S.

18  564, 571–72 (1972). The property interest that due process protects can be either an actual

19  property right, . . . or an entitlement—an expectancy of obtaining some right or interest in the

20  future. Hillman Flying Serv., Inc. v. City of Roanoke, 652 F.Supp. 1142, 1148 (W.D. Va. 1987),

21  aff'd, 846 F.2d 71 (4th Cir. 1988), and aff'd sub nom. Hillman Flying Serv., Inc. v. Piedmont

22  Aviation, 846 F.2d 71 (4th Cir. 1988). "Due process protection does not, however, extend to all

23  expectations of future rights." Hillman Flying Serv., Inc., 652 F.Supp. at 1148. At the pleading

24  stage, the Court shall assume without deciding that Plaintiffs have a property or liberty interest in

25  soliciting donations that is protected by the Due Process Clause.

26      "An elementary and fundamental requirement of due process in any proceeding which is

27  to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise

28  interested parties of the pendency of the action and afford them an opportunity to present their

objections." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 12–13 (1978) (quoting Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950)). Ordinarily, due process requires the opportunity for " 'some kind of hearing' prior to the deprivation of a significant property interest[,]" but the Supreme Court has "recognized that where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination, government may act without providing additional 'advance procedural safeguards.' " Memphis Light, Gas & Water Div., 436 U.S. at 19. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

Here, Plaintiffs allege that they did not receive notice and an opportunity to appeal the determination made by the State Defendants that they were conducting an illegal raffle. However, the complaint demonstrates otherwise. The cease and desist letters, raffle registration denial and revocation due to violations of law-check and application return, and refusal to register/renew registration and automatic suspension all included notice of the appeal process. (Compl. pp. 128, 220-21, 223-25; ECF No. 50 pp. 8-9, 11-10, 45, 52-53.) Further, the Court finds that Plaintiffs' argument that the suspension was effective immediately and without the required notice is contradicted by the automatic suspension itself which specifically states that it was effective 30 days from the issuance of the notice. (Id. p. 128.) The documents themselves demonstrate that Plaintiffs were informed of the procedures by which they could appeal the finding that they were operating an illegal raffle and failure to comply with the cease and desist orders.[10]

Although Defendants argue that Plaintiffs did not properly and timely avail themselves of the appeal process, Plaintiffs allege that their objections were properly a request for a hearing which was never provided. Plaintiffs complaint alleges that objections were submitted in

[10] Plaintiffs are advised that pursuant to Rule 11 of the Federal Rules of Civil Procedure by signing the pleadings, they are certifying that the pleading is not being submitted for an improper purpose and the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3). If the Court determines that Rule 11 has been violated it may impose appropriate sanctions which could include dismissal of the action.

response to the following.

On September 12, 2016, WWSG mailed a letter, to the RCT stating there was a disagreement and a need for an appeal in response to the August 16, 2016 cease and desist order issued by Defendant Eller. (Compl. ¶¶ 38, 50, 174, pp. 219-21.) On September 12, 2016, Matthew G. Gregory sent a request for an appeal of Defendant Eller's letter regarding WWSG's raffle registration for the period of September 1, 2015 to August 31, 2016 and denying the application for raffle registration for the period of September 1, 2016 to August 31, 2017. (Compl. ¶ 38, pp. 223-25.)

Plaintiffs objected to the February 8, 2018 notice of refusal to register/renew registration and automatic suspension issued by Defendant Eller on February 20, 2018. (Compl. pp. 130-46.)

While Defendants argue that Plaintiffs were required to comply with the procedural requirements for administrative review, Plaintiffs have alleged that the objections to the documents met such requirements.[11] At the pleading stage, Plaintiffs have stated a claim against Defendant Eller based on the failure to provide a hearing on appeal for 1) the August 16, 2016 cease and desist order to WWSG; 2) the August 2016 revocation of WWSG's raffle registration for the period of September 1, 2015 to August 31, 2016 and denying application for raffle registration for September 1, 2016 to August 31, 2017; and 3) February 8, 2018 notice of refusal to register/renew registration and automatic suspension. Plaintiffs have stated a due process claim against Defendant Eller for failure to provide a hearing. See Duarte Nursery, Inc. v. U.S. Army Corps of Engineers, 17 F.Supp.3d 1013, 1024 (E.D. Cal. 2014) (cease and desist orders issued without opportunity to appeal stated due process claim).

Plaintiffs also contend that Defendant Mossler did not provide notice at least five days prior to imposing penalties in violation of section 12591.1 of the Government Code and exceeding the maximum allowed by the statute. (Compl. ¶ 38, pp. 166-67, 170-72.) State

---

[11] While the Court finds that Plaintiffs have stated a claim at the pleading stage, the parties can present evidence on the issue of whether the objections were sufficient to request a hearing. The Court notes that this appears to be the specific issue that the administrative judge decided in the proposed order. The Court declines to decide whether issue preclusion would bar this claim based on the administrative law judge finding that Plaintiffs failed to appeal as the administrative decision is not yet a final decision on the merits. The parties may address the issue of whether the findings of the administrative law judge have res judicata or issue preclusive effect in any subsequent motion to dismiss or motion for summary judgment.

Defendants have not addressed this specific allegation. Pursuant to section 12591.1, the maximum civil penalty for violating the Act with intent to deceive or defraud is ten thousand dollars. Cal. Gov't Code § 12591.1(a). The section also provides that:

> The Attorney General may impose a penalty on any person or entity, not to exceed one thousand dollars ($1,000) per act or omission, for each act or omission that constitutes a violation of this article or Chapter 4. . . . At least five days prior to imposing that penalty, the Attorney General shall provide notice to the person or entity that committed the violation by certified mail to the address of record at the Registry of Charitable Trusts. Penalties shall accrue, commencing on the fifth day after notice is given, at a rate of one hundred dollars ($100) per day for each day until that person or entity corrects that violation. Penalties shall stop accruing as of the date set forth in the written notice provided by the Attorney General that the violation or omission subject to penalties has been corrected or remedied.

Cal. Gov't Code § 12591.1(c).

"Certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). Once it is determined that the Due Process Clause applies there is still the question of what process is due and that answer is not found in state statutes. Loudermill, 470 U.S. at 541. "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Id. at 546. Neither of the parties have addressed whether the California regulations creates a process that is due to comply with the Fourteenth Amendment. The Court finds that Plaintiffs' claims regarding lack of notice and opportunity to respond should be allowed to proceed in this action.[12]

The complaint fails to allege facts state a claim for denial of due process as to any other correspondence from State Defendants or against any other named defendant.

**b.** **Stigma-Plus Claim**

Plaintiffs bring a claim against all defendants for defamation under section 1983. State Defendants argue that Plaintiffs have failed to satisfy the "stigma-plus" test to state a defamation claim under section 1983. Plaintiffs counter that State Defendants have conceded that they made defamatory statements and the complaint adequately alleges that they suffered deprivations such

---

[12] The parties should specifically address the issue of the process that would be due for the issuance of the penalties to comport with the requirements of the Due Process Clause in any future motion to dismiss or motion for summary judgment.

as loss of good will, loss of reputation in their professions, loss of business income, and other financial losses. State Defendants reply that they did not concede that any statements were defamatory and the majority of the statements sought to be attributed to Defendants are taken from online articles or other publications prepared by third parties.

In Paul v. Davis, the Supreme Court rejected the argument that the Due Process Clause protected the reputation of an individual. 424 U.S. 693, 706 (1976) ("the Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment"). "Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." Paul, 424 U.S at 712. Absent a change in status, "any harm or injury to that interest . . . inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law." Id.

"[T]here is no constitutional protection for the interest in reputation." WMX Techs., Inc. v. Miller, 197 F.3d 367, 373 (9th Cir. 1999). To state a claim under § 1983, the plaintiff "must show that the stigma was accompanied by some additional deprivation of liberty or property." Miller v. California, 355 F.3d 1172, 1178 (9th Cir. 2004). Courts refer to this as the "stigma-plus" test. Under the "stigma-plus" test, Plaintiffs must allege a loss of a recognizable property or liberty interest in conjunction with the allegation that they suffered injury to reputation. Miller, 355 F.3d at 1179; Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir.1991), rev'd on other grounds, 963 F.2d 1220, 1235 n.6 (9th Cir.1992)). Additionally, the "stigma-plus" test requires that the defamation be accompanied by an injury directly caused by the state, rather than an injury caused by the act of some third party in reaction to the State's defamatory statements. Mazzeo v. Gibbons, 649 F.Supp.2d 1182, 1197 (D. Nev. 2009); Douglas v. Oregonian Pub. Co., 465 F. App'x 714, 715 (9th Cir. 2012) (unpublished); Ooley v. Citrus Heights Police Dep't, 603 F. App'x 628, 629 (9th Cir. 2015) (unpublished). Under the test, a plaintiff must either show that "injury to reputation was inflicted in connection with a federally protected right" or that "injury to reputation caused the denial of a federally protected right." Herb Hallman Chevrolet, Inc. v.

Nash–Holmes, 169 F.3d 636, 645 (9th Cir. 1999).

"In order to state a due process claim, [the plaintiff] must allege that the defendants' statements were substantially false." Campanelli v. Bockrath, 100 F.3d 1476, 1484 (9th Cir. 1996). Here, Plaintiffs attempt to hold the defendants liable for defamation based on the reporting or reactions to statements made in third party reports or blog posts. In determining whether Plaintiffs have met the requirement that the statement was stigmatizing, the Court considers that statements actually attributable to the defendants.

If Plaintiffs sufficiently allege that a statement is defamatory, they must also allege the deprivation of a property or liberty interest to state a claim. To state a claim, Plaintiffs must allege the denial of "some more tangible interest [] such as employment," or the alteration of a right or status recognized by state law." Ulrich v. City & Cty. of San Francisco, 308 F.3d 968, 982 (9th Cir. 2002) (quoting Paul, 424 U.S. at 701). Plaintiffs allege that they have lost income; incurred attorney fees; lost the value of their goodwill and good name; and suffered reputational harm in their trades, professions or businesses. (Compl. ¶ 84.) Specifically, Plaintiff Gina Gregory alleges that the statements have impaired her ability to retain her certification as a PATH International certified instructor; have prevented Plaintiffs from soliciting donations and offering tickets in public; carrying out their charitable purposes; spreading awareness about PTSD, veteran's homelessness, and the plight of veterans. (Id. ¶ 86.)

Plaintiffs contend that the allegedly defamatory statements deprived them of goodwill in their business. But in a similar case, WMX Technologies, Inc., the Ninth Circuit held that a negative report from the State on the business did not deprive the plaintiff of any state right or status. 197 F.3d at 374. Similar to the case in WMX Technologies, Inc., while the statements may have damaged the reputation of Plaintiffs, and could have affected its business relations with others, this is not sufficient to state a claim for a violation of section 1983. (Id. at 375.) Plaintiffs have merely alleged a general loss of good will without identifying any specific loss that was caused by the alleged defamatory statements.

While Gina Gregory alleges that the statements have impaired her ability to retain her certification as a PATH instructor, the Ninth Circuit has held that "the 'plus' must be a

deprivation of liberty or property by the state that directly affects the plaintiff's rights." Miller, 355 F.3d at 1178; see also Eberhard v. California Highway Patrol, 73 F.Supp.3d 1122, 1131 (N.D. Cal. 2014) (finding the defamation and deprivation must have been committed by the same state actor). Here, Plaintiff Gina Gregory has not alleged any facts to suggest that the State acted to deprive her of her ability to retain her PATH certification, or to terminate her relationship with the facility that boarded her horses. To the extent that other business entities acted in response to the statements made by State employees it is insufficient to state a claim.

The allegations that Plaintiffs have been prevented from soliciting donations and offering tickets in public; carrying out their charitable purposes; spreading awareness about PTSD, veteran's homelessness, and the plight of veterans would be a sufficient change in status to meet the plus prong of the test.

i. Defendant Garcia

State Defendants argue that the only statement attributable to Defendant Garcia is that Plaintiff Gina Gregory is an attorney and, since this is true, it is not the basis for a defamation claim. Plaintiff alleges that what is defamatory is the inference that she was the attorney for WWSG and CCERR during the years prior to the filing of People v. WWSG. Plaintiffs argue that the reputational harm should be determined in light of the article, its contents, its headline, its images, and the overall message.

The complaint alleges that Defendant Garcia gave Plaintiff Gina Gregory's bar number to ratemyhorsepro.com which wrote a defamatory article about her and the other plaintiffs. (Compl. ¶ 209.) The complaint states that, by affirming her bar number and that she was an attorney, Defendant Garcia gave the false impression that Plaintiff Gina Gregory had represented WWSG and CCERR prior to April 17, 2017. (Id.) However, the article itself does not imply that Plaintiff Gina Garcia was representing Plaintiffs in this action. The article states "Walter Garcia press secretary for Attorney General Becerra confirms that Gina Danielle Gregory is also an attorney. She became licensed (bar number 297007 in 2014) according to the State Bar of California." (Id. p. 246.) Plaintiffs allegation is insufficient to state a claim that Defendant Garcia made a false and defamatory statement about Plaintiff Gina Garcia.

Although Plaintiffs make a conclusory allegation that Defendant Garcia provided other defamatory press statements to media outlets, the complaint is devoid of any factual allegations to support the claim. Plaintiffs fail to state a defamation claim against Defendant Garcia under section 1983.

        ii.     Defendant Becerra

Plaintiffs allege that Defendant Becerra made defamatory statements in press releases. (Compl. ¶ 207.) Defendants contend that the only written statement issued was the official press release after the filing of <u>People v. WWSG</u>. The press release states:

> Attorney General Xavier Becerra today filed a civil lawsuit seeking to recover hundreds of thousands of dollars from two California charities claiming to support veterans. The lawsuit alleges that the operators of Wounded Warriors Support Group (WWSG) and Central Coast Equine Rescue and Retirement (CCERR) run raffles purportedly to support veterans, but instead spend the donated proceeds for personal use, including shopping a Victoria's Secret, paying off personal credit card debt, and traveling, dining, traffic school, dressage equipment, and other personal expenses.
>
> The lawsuit seeks general damages, civil penalties, involuntary dissolution of both charities, appointment of a receiver to oversee dissolution and distribution of charitable assets, and an order preventing Matthew G. Gregory, his wife Danella Gregory, and their adult children Matthew J. Gregory and Gina D. Gregory - all of whom run WWSG and CCERR - from operating a charity in California.
>
> "Veterans and their families sacrifice immensely for our country. There is no place for sham charities that claim to support our veterans when in reality they're lining their own pockets," said Attorney General Becerra. "It's a breach of the public trust to deceive and exploit the goodwill of generous Americans. It's worse when you do so at the expense of our veterans. I will vigorously investigate and prosecute any charity falsely claiming to help our veterans."
>
> The Attorney General urges all donors to be cautious in purchasing raffle tickets or making donations to charities that use the term "veterans" in their name as this does not necessarily mean that veterans or their families will benefit from the donated funds.
>
> The Attorney General publishes tips to protect donors from becoming victims of misleading solicitation in appeals for Veteran Charities. The publication DONATION TIPS FOR SUPPORTING VETERANS is available on the Attorney General's website www.oag.ca.gov/charities under Resources and Tools, Registry Publications.

(Compl. p. 248.)

The factual assertions in the complaint stating that a lawsuit was filed and setting forth the allegations and charges are not false but accurately report the allegations in the complaint and

the relief sought in the state court action. Whether the remainder of the statement is defamatory is not properly decided on the pleading. Plaintiffs have sufficiently alleged that Defendant Becerra's statement was defamatory.

At the August 15, 2018 hearing, State Defendants identified two other press releases contained in Plaintiffs' complaint.

On May 3, 2017, a press release was issued addressing Defendant Becerra's first 100 days in office. (Compl. p. 255.) The press release states in relevant part "Attorney General Becerra is standing up for hard-working Californians. He's focused on protecting the rights of all Californians who face unfair treatment, whatever the threat. He is standing up for veterans, going to court to recover hundreds of thousands of dollars from California charities deceptively claiming to support veterans. He is defending LGBTQ people, protecting taxpayer dollars from being spent in states that discriminate against them. And he has successfully challenged the Trump Administration's constitutional overreach." (Id. p. 255.)

On November 28, 2017, a press release issued announcing a "Guide for Charities" had been released which stated

> Since taking office, Attorney General Becerra has been committed to protecting charitable assets and donors. He has filed a civil lawsuit seeking to recover hundreds of thousands of dollars from Wounded Warriors Support Group and Central Coast Equine Rescue and Retirement two California charities claiming to support veterans; announced a stipulated final judgment so that People's Choice Charities, a Los Angeles-based car donation charity accused of soliciting vehicle donations using false and misleading advertising. would be dissolved: and issued a Cease and Desist order that forced the closure of Saving Spot Rescue and Spot Rescue, two charities that were misleading people who wanted to help animals in need.

(Id. at 348.)

These press releases merely report action taken by the Attorney General during his time in office. Neither of these press statements contain "false" information such that they would be defamatory to support a section 1983 claim.

Even if the statements are found to be defamatory, Plaintiffs fail to identify any deprivation that would satisfy the "plus" to state a claim against Defendant Becerra under section 1983. At the time that Defendant Becerra made his statements, the RCT had already suspended

1  Plaintiffs registration, Plaintiffs were prohibited from selling drawing tickets, and the state court

2  action had been filed.  Plaintiffs have not alleged any facts to show that Defendant Becerra's

3  statements resulted in a change of their status.  Plaintiffs fail to state a cognizable claim against

4  Defendant Becerra based on the press statements.

5         iii.    Defendant Eller

6         State Defendants also argue that Plaintiffs have failed to allege false statements made by

7  Defendants Eller, Ibanez, Harris and Kim that caused reputational harm.  Plaintiffs counter that

8  Defendants Harris and Eller wrote the cease and desist letters, and Defendants Eller, Ibanez,

9  Kim, Becerra, and Mossler wrote the notices taking away Plaintiffs' registry rights.

10        While Plaintiffs allege that multiple defendants wrote the August 16, 2016; February 1,

11 2018; and April 1, 2018 notices, review of the letters themselves contradict the allegation.

12 Further, only the February 1, 2018 letter is set forth as a stigmatizing publication in the

13 complaint.  Plaintiffs appear to base their argument on the fact that the documents themselves are

14 legal pleadings or written on state letterhead and the pleading lists Defendants Becerra, Kim, and

15 Mossler as attorneys for the RCT.  (Compl. p. 123.)  However, the pleadings and other

16 documents are only signed by Defendant Eller.  (Id. p. 128.)  To the extent that other individuals'

17 names are set forth on the pleading or letterhead, it is insufficient to demonstrate personal

18 participation sufficient to hold them liable under section 1983 for the statements contained

19 within the documents.

20        Plaintiffs contend that the February 1, 2018 letter labeled or described them as " 'a group

21 of con artists,' criminals, scammers, 'sham' charities, and fraudsters who take advantage of the

22 'goodwill' of generous Americans."  (Compl. ¶ 206.)  The letter referenced as "Exhibit B" in the

23 complaint is the refusal to register/renew registration and automatic suspension issued in the

24 administrative proceeding no. CT0213442.  (Compl. pp. 123-28.)  However, there are no such

25 statements in the February 1, 2018 filing.

26        Plaintiffs also allege that the letter falsely states that Plaintiffs' ran illegal raffles before

27 being properly registered with the RCT and continued to conduct illegal raffles in violation of

28 cease and desist order.  These statements are included in the background section of the February

1, 2018 notice. (Id. pp. 124-26.) Plaintiffs' claim that the statements included in the letter are false because they were not conducting a raffle, their objections were sufficient to appeal the notices and orders issued, and the funds were not improperly used because of the debt owed to Plaintiffs by the charities. At the pleading stage, Plaintiffs have met the stigma prong of the test.

Plaintiffs further allege that these statements resulted in the February 1, 2018 notice of revocation of their charitable status. As the complaint alleges that there was a change in legal status based upon the allegedly false statements, Plaintiffs have stated a stigma-plus claim against Defendant Eller.

iv. Defendant Mossler

Plaintiffs allege that Defendant Mossler posted a link to a defamatory article on her Facebook page, (Compl. ¶ 208); told Cayetano Ridge Equestrian Center that the State was going to attach Plaintiff Gina Gregory's horses and trailers (id. ¶¶ 210, 232); and stated that that Matthew G. Gregory was evading process, (id. ¶¶ 211, 232).

As to the Facebook post and statements regarding evading process and potential attachment of Plaintiffs' horses and horse trailers, even accepting that such statements are false and defamatory, Plaintiffs have failed to allege that there was any deprivation by the State due to such statements. These statements, even if they harmed Plaintiffs reputation in the business community, would not be actionable under section 1983 as there are no allegations to support a deprivation of a liberty or property interest. Plaintiff has failed to state a defamation claim against Defendant Mossler.

v. Defendants Fresno County, Smittcamp, Dupras, Kim, Ibanez, RCT, Harris, and the DOJ

Plaintiff brings the stigma-plus claim against all defendants. However, as discussed above, Plaintiffs have failed to include allegations sufficient to link Defendants Kim, Ibanez, or Harris to any defamatory statements. Further, the complaint only alleges that Defendant Dupras issued the May 2015 cease and desist letter prohibiting Plaintiffs from conducting an illegal raffle. Since Plaintiffs' are prohibited by law from conducting an illegal raffle this would be insufficient to state a deprivation of a liberty or property interest. Finally, Plaintiffs policy and

procedure claim against State Defendants fails for the same reason Plaintiffs failed to state a Monell claim against the County Defendants. Plaintiffs allegations were the same for all defendants and there are no factual allegations alleged to show that a custom or policy existed at either the State or County that would violate Plaintiffs' federal rights. Plaintiffs have failed to allege any facts to state a policy or procedure claim against any defendant.

Plaintiffs' complaint fails to state a cognizable stigma-plus claim against Defendants Fresno County, Smittcamp, Dupras, Kim, Ibanez, RCT, Harris, and the DOJ.

### 10. Abuse of Process

Plaintiffs bring an abuse of process claim against Defendant Mossler alleging she illegally served process on Plaintiff Gina Gregory and made the statement that Matthew G. Gregory was evading service. Plaintiffs allege an abuse of process claim against Defendants Mosser, Ibanez, Kim, Becerra, Harris, and the DOJ claiming the state lawsuit was wrongfully instituted against Plaintiffs to cause them reputational harm.

Courts find that, to the extent that an abuse of process claim under section 1983 would exist, it would be governed by state law. Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994); Hart v. Mannina, 798 F.3d 578, 593 (7th Cir. 2015) Erikson v. Pawnee Cty. Bd. of Cty. Comm'rs, 263 F.3d 1151, 1155 n.5 (10th Cir. 2001). The essence of an abuse of process claim is "misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." Rusheen v. Cohen, 37 Cal.4th 1048, 1057 (2006). To prevail on an abuse of process claim under California law, "a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." Rusheen, 37 Cal.4th at 1057.

The Second Circuit has held that "[i]n order to state a [§ 1983] claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action . . . [and] that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Morales v. City of New York, 752 F.3d 234, 238 (2nd Cir. 2014) (quoting Savino v. City of New York, 331 F.3d 63, 77 (2d Cir.2003). To the extent that an abuse

of process claim would exist under section 1983, the plaintiff must allege facts to assert a constitutional violation. <u>Alvarez Castro v. Negron</u>, 475 F.Supp.2d 147, 152 (D.P.R. 2007).

Here, Plaintiffs allege that Defendant Mossler loudly stated "you are served" while serving Plaintiff Gina Gregory at the equestrian center where she was working with her horse and also said that Plaintiff Matthew Gregory was evading process. Neither of these allegations are sufficient to allege an improper purpose or that they were aimed to achieve a collateral purpose beyond the prosecution of the state action. These allegations are wholly insufficient to rise to the level of a constitutional violation.

Further, Plaintiffs allege that the state law action was wrongfully instituted against them. But the gravamen of an abuse of process claim "is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." <u>Heck v. Humphrey</u>, 512 U.S. 477, 486 n.5 (1994). Here, Plaintiffs make conclusory allegations that Defendants initiated the prosecution to retaliate against them or for political motives, but the allegations in the complaint are insufficient for the Court to reasonably infer that the prosecution of the action was initiated with such motivation.

Based on the allegations in the complaint, the Court finds that to the extent that an abuse of process claim would be recognized in the Ninth Circuit, Plaintiffs have failed to state a cognizable claim.

11.    <u>State Law Claim</u>

Plaintiffs fourth cause of action alleges a state law privacy claim in violation of Article 1 of the California Constitution against Defendants Mossler, Harris and the DOJ based on the confiscation of the drawing tickets. The complaint alleges that Plaintiffs have a legally protected privacy interest in the information contained on the RCT. State Defendants do not address whether Plaintiffs have stated a claim but assert that they are entitled to immunity under state law. County Defendants argue that Plaintiffs allegations are conclusory recitations of facts that are insufficient to amount to a serious invasion of a protected privacy interest or identify a reasonable expectation of privacy under the circumstances. Plaintiffs counter that the documents loaded to the RCT constitute a serious invasion of privacy.

"The California Constitution declares that privacy is an inalienable right of the people of California.  Cal. Const. Art. I, § 1.  This contains an explicit guarantee of the right of "privacy" which is broader and more protective in scope than that of the United States Constitution.  Am. Acad. of Pediatrics v. Lungren, 16 Cal.4th 307, 326 (1997); Leonel v. Am. Airlines, Inc., 400 F.3d 702, 711 (9th Cir. 2005), opinion amended on denial of reh'g, No. 03-15890, 2005 WL 976985 (9th Cir. Apr. 28, 2005).  To prevail on a state constitutional privacy claim, a plaintiff must establish "a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."  Hill v. Nat'l Collegiate Athletic Assn., 7 Cal.4th 1, 39-40 (1994); accord Leonel, 400 F.3d at 712. These elements are a threshold to "weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant."  Leonel, 400 F.3d at 712 (quoting Loder v. City of Glendale, 14 Cal.4th 846 (1997)).  The California Supreme Court has not considered whether violation of the privacy clause of California's constitution permits an action for damages.  Richardson-Tunnell v. Sch. Ins. Program for Employees, 157 Cal.App.4th 1056, 1066 (2007).

Plaintiffs generally assert that they have a privacy right in the information contained on the RCT without citing any legal authority to establish such a right.  However, the RCT is required to provide public access to reports filed with the Attorney General and certain documents filed with the Attorney General that must be open to public inspection.  Cal. Gov't Code § 12590.  To the extent that Plaintiffs allege a privacy right in documents filed with the RCT, the statute itself contradicts that Plaintiffs have a reasonable expectation of privacy under California law in the documents as the regulations themselves require that the documents be made available to the public.  Plaintiffs have failed to identify any privacy interest recognized under California nor does the complaint contain factual allegations to support a violation of any such rights.

### F.  Prosecutorial Immunity

The State and County Defendants also move to dismiss the complaint on the ground that they are entitled to absolute prosecutorial immunity.  Plaintiffs counter that Defendants are not

1  entitled to absolute immunity on the claims alleged in the complaint and have waived qualified

2  immunity by not raising it. County Defendants counter that no answer has been filed so there is

3  no basis to Plaintiffs argument that qualified immunity has been waived.

4      Prosecutors are immune from liability under 42 U.S.C. § 1983 for actions taken within

5  the scope of their prosecutorial duties. See Imbler v. Pachtman, 424 U.S. 409, 427 (1976); see

6  also Olsen v. Idaho State Bd. Of Medicine, 363 F.3d 916, 922 (9th Cir. 2004) ("Absolute

7  immunity is generally accorded to judges and prosecutors functioning in their official

8  capacities"). A prosecutor is duty bound to exercise his best judgment in deciding which suits to

9  bring and in conducting them in court, and subjecting the prosecutor to liability for such

10 decisions would result in frequent suits as a defendant will often transform his resentment at

11 being prosecuted into the allegation of improper and malicious actions by the prosecutor.

12 Imbler, 424 U.S. at 424-25; Lacey v. Maricopa Cty., 693 F.3d 896, 912 (9th Cir. 2012).

13 Harassment by unfounded litigation could cause a deflection of the prosecutor's energy from his

14 public duties and could lead the prosecutor to shade his decisions instead of exercising the

15 independent judgment required by his public trust. Van de Kamp v. Goldstein, 555 U.S. 335,

16 341 (2009). That concern justifies absolute prosecutorial immunity for actions that are

17 connected to the prosecutor's role in the judicial proceedings. Burns v. Reed, 500 U.S. 478, 494

18 (1991).

19      The Supreme Court has held that where a prosecutor acts within his authority "in

20 initiating a prosecution and in presenting the state's case," absolute immunity applies. Imbler,

21 424 U.S. at 431). In determining whether the prosecutor's actions are entitled to absolute

22 immunity, the court examines "the nature of the function performed, not the identity of the actor

23 who performed it." Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (quoting Forrester v. White,

24 484 U.S. 219, 229 (1988)). Absolute immunity protects the prosecutor for those functions that

25 are " 'intimately associated with the judicial phase of the criminal process,' in which the

26 prosecutor is acting as 'an officer of the court[;]" and "those functions in which the prosecutor

27 acts as an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a

28 prosecution and actions apart from the courtroom.' " Lacey, 693 F.3d at 912 (citations omitted).

"These actions need not relate to a particular trial and may even be administrative in nature, yet are connected to the trial process and 'necessarily require legal knowledge and the exercise of related discretion.' " Id. (quoting Van de Kamp, 555 U.S. at 344). "Functions for which absolute prosecutorial immunity have been granted include the lawyerly functions of organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out." Lacey, 693 F.3d at 913. "[A]bsolute immunity does not apply when a prosecutor 'gives advice to police during a criminal investigation,' 'makes statements to the press,' or 'acts as a complaining witness in support of a[n arrest] warrant application.' " Garmon v. Cty. of Los Angeles, 828 F.3d 837, 843 (9th Cir. 2016) (quoting Van de Kamp, 555 U.S. at 343).

The official seeking immunity bears the burden of demonstrating that absolute immunity is justified for the conduct in question. Burns, 500 U.S. at 486.

1.     County Defendants

Defendants Dupras and Smittcamp contend that they are entitled to absolute prosecutorial immunity for the issuance of the cease and desist letter. Plaintiffs argue that the letter clearly indicates that Defendant Dupras actions were investigatory in nature and since no prosecution was initiated he is not entitled to absolute immunity.

Absolute immunity protects a prosecutor for "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Lacey, 693 F.3d at 912. "These actions need not relate to a particular trial and may even be administrative in nature, yet are connected to the trial process and 'necessarily require legal knowledge and the exercise of related discretion.' " Id. (quoting Van de Kamp, 555 U.S. at 344). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). The doctrine of

absolute immunity protects prosecutors and agency attorneys for conduct that is "intimately associated with the judicial phases" of litigation. Fry v. Melaragno, 939 F.2d 832, 836-37 (9th Cir. 1991). However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley, 509 U.S. at 273.

Here, Plaintiffs seek to hold Defendant Dupras liable for issuing a cease and desist letter. According to the complaint, Defendant Dupras received information from the California Attorney General's Office that Plaintiffs were conducting an online raffle in violation of California law which prohibits raffles over the internet. (Compl. pp. 121-22.) Plaintiffs allege that Defendant Dupras' issued the cease and desist letter without investigating whether the State's allegations were true. In issuing the cease and desist letter, Defendant Dupras was acting as an advocate of the state to enforce the statutory requirements of the Act. However, the Court is unable to find, based on the allegations in the complaint, that Defendant Dupras actions were for the initiation of a prosecution rather than just administrative.

For those functions to which the prosecutor is not entitled to absolute immunity, he or she may be entitled to qualified immunity. Lacey, 693 F.3d at 915. The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (citations omitted).

To determine if a public official is entitled to qualified immunity the court uses a two-part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001) overruled in part by Pearson, 555 U.S. 223. The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. al-Kidd, 563 U.S. at 741. This does not require that the same factual situation must have been decided, but that existing precedent would establish the statutory or constitutional question beyond debate. Id.; Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir.

1 2011). "The linchpin of qualified immunity is the reasonableness of the official's conduct."

2 Rosenbaum v. Washoe County, 654 F.3d 1001, 1006 (9th Cir. 2011).

3       The inquiry as to whether the right was clearly established is "solely a question of law for

4 the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas

5 Metro. Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)). "Only when an officer's conduct

6 violates a clearly established constitutional right—when the officer should have known he was

7 violating the Constitution—does he forfeit qualified immunity." Lacey, 693 F.3d at 915.

8       Plaintiffs argue that Defendants Dupras and Smittcamp can easily lose qualified

9 immunity for violations of clearly established violations of constitutional rights. However,

10 Plaintiffs do not cite to any case law addressing the actual conduct that is at issue here. In this

11 instance, Defendant Dupras is alleged to have issued a cease and desist letter, and Defendant

12 Smittcamp is alleged to be liable in her supervisory position for training, supervision, and

13 policies of the County.

14       Here, a reasonable prosecutor would not be on notice that issuing the cease and desist

15 letter upon receiving notice that Plaintiffs were violating California law would violate Plaintiffs'

16 federal rights. Courts have held that "the existence of a statute or ordinance authorizing

17 particular conduct is a factor which militates in favor of the conclusion that a reasonable official

18 would find that conduct constitutional." Grossman v. City of Portland, 33 F.3d 1200, 1209

19 (1994). As alleged in the complaint, Defendant Dupras received information that Plaintiffs were

20 selling raffle tickets over the internet in violation of Penal Code section 320.5(f)(2)(A).[13] It is

21 only where the official should have known he was violating the Constitution that he forfeits

22 qualified immunity. Lacey, 693 F.3d at 915. Defendant Dupras would be entitled to rely on the

23 California Penal Code's prohibition against online raffles in issuing the cease and desist letter.

24 Accordingly, Defendant Dupras is entitled to qualified immunity for issuing the cease and desist

25 letter.

26       Similarly, prosecutors involved in the supervision or training of others enjoy absolute

27

28 [13] A raffle may not be operated or conducted in any manner over the Internet, nor may raffle tickets be sold, traded, or redeemed over the Internet.

immunity for those decisions that require legal knowledge and the exercise of related discretion. Van de Kamp, 555 U.S. at 344. Defendant Smittcamp is alleged to be liable based upon her supervisory position in the District Attorney's Office. The Court finds that Defendant Smittcamp is entitled to prosecutorial immunity for her supervision of Defendant Dupras based on the allegations presented here.

2. State Defendants

The State Defendants argue that Defendants Becerra, Harris, Ibanez, Kim, Mossler, Garcia, and Eller are entitled to absolute prosecutorial immunity as long as their actions are not wholly unrelated to or outside of their official duties. The State Defendants argue that Plaintiffs' claims rely on the theory that the government employees improperly deemed their drawings raffles, illegally fined Plaintiffs and improperly issued several cease and desist orders without proper due process, and made libelous and defamatory statements in the course of their investigation into Plaintiffs' management and solicitation of charitable donations. The State Defendants contend that Plaintiffs are suing them for duties that are directly related to their official duties which arose during the administrative or judicial proceedings and the claims should be dismissed without leave to amend.

Plaintiffs counter that the State Defendants are only entitled to absolute immunity for those actions that are sufficiently related to the judicial process. Plaintiffs contend that the defamatory press conferences, press releases, and statements to the press do not qualify for absolute immunity. Plaintiffs argue that none of the facts alleged in the complaint are closely tied to the judicial process and the State Defendants cannot claim absolute prosecutorial immunity.

Absolute prosecutorial immunity has been extended to government attorneys who initiate civil proceedings where the attorney performs functions analogous to those of a prosecutor. Butz v. Economou, 438 U.S. 478, 517 (1978); Demery v. Kupperman, 735 F.2d 1139, 1143 (9th Cir. 1984). "[A]bsolute prosecutorial immunity attaches to the actions of a prosecutor if those actions were performed as part of the prosecutor's preparation of his case, even if they can be characterized as 'investigative' or 'administrative.'" Demery, 735 F.2d at 1143.

In analyzing whether the individual defendants are entitled to prosecutorial immunity, the Court considers that allegations contained in the complaint. Generally, Plaintiffs' complaint alleges that the defendants wrongly determined that they were conducting a raffle without providing them with an opportunity to be heard. (Compl. ¶ 54.)

### a. Defendant Eller

Defendant Eller works as staff services and registrar for the RCT. (Compl. ¶ 19.) Defendant Eller submitted letters to the RCT which are posted on their database and are accessible to the public. (Id. ¶¶ 19, 32.) In an August 16, 2016 letter, Defendant Eller made a determination that the drawing that WWSG was conducting was a raffle and not an equal opportunity drawing. (Id. ¶ 169.) Defendant Eller ordered Plaintiffs to cease and desist all raffle activities and solicitation by any means. (Id.)

Defendant Eller wrote a February 1, 2018 letter to WWSG and was not admitted to the California Bar at the time nor is he currently admitted to the Bar. (Id. ¶ 36.) Although the letter was written by Defendant Eller it was sent by Defendants Becerra, Kim, and Mossler. (Id. ¶ 48.) The letter accused Plaintiffs of serious crimes, including violations of California Penal Code section 320.5 and states that Plaintiffs may not solicit assets or donations for charitable purposes and suspended their registration. (Id. ¶¶ 36, 40.) Plaintiffs sent a timely response contesting the allegations in the February 1, 2018 letter. (Id. ¶ 38.)

Defendants have set forth no argument to address why Defendant Eller would be entitled to absolute prosecutorial immunity. Based on the allegations in the complaint, it would appear that Defendant Eller was involved in the initial investigation into the allegations that Plaintiffs were operating in violation of the California regulations governing charitable organizations. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" Buckley, 509 U.S. at 273 (quoting Hampton v. Chicago, 484 F.2d 602, 608 (7th Cir. 1973)). While evidence at summary judgment might lead to a different conclusion, at this stage of the litigation, Defendants have not met their burden of demonstrating that Defendant Eller would be entitled to absolute prosecutorial immunity.

### b. Defendant Garcia

Defendant Garcia is the press secretary for Defendant Becerra and works at the Office of the Attorney General. (Compl. ¶ 13.) In that capacity he communicates with the press. (Id.) Defendant Garcia emailed allegedly defamatory press releases about Plaintiffs. (Id. ¶ 207.) Defendant Garcia provided Plaintiff Gina Gregory's state bar number to ratemyhorsepro.com which wrote a defamatory article about Gina and the other plaintiffs. (Id. ¶ 209.)

Defendant Garcia is not entitled to absolute prosecutorial immunity for statements made in press releases as statements made by the prosecutor during press conferences are only entitled to qualified immunity. Buckley, 509 U.S. at 278.

### c. Defendant Mossler

Defendant Mossler has been a deputy attorney general since 2011. (Compl. ¶ 14.) Mossler submitted letters to the RCT which are posted on their database and are accessible to the public. (Id. ¶¶ 28, 32.) On September 6, 2016, Defendant Mossler issued a notice of imposition of penalties stating that Plaintiffs' were in violation of the August 16, 2016 cease and desist order by continuing to solicit donations for its raffle activities. (Id. ¶ 184.) On December 8, 2016, Defendant Mossler issued a notice of imposition of penalties to WWSG. (Id. ¶ 195.) Defendant Mossler cashed the check from WWSG paying the $3,000.00 in penalties. (Id. ¶ 263.)

On April 17, 2017, Defendant Mossler filed a lawsuit against Plaintiffs in Alameda Superior Court. (Id. ¶ 47.) Defendant Mossler demanded that Plaintiffs produce tickets from a 2016 car drawing through state audit letters on July 27, 2016. (Id. ¶ 93.) Plaintiffs sent Defendant Mossler a request to have ticket entries returned on March 12, 2018, and have received no response. (Id. ¶ 76.)

On August 16, 2016, Defendant Mossler sent WWSG a letter ordering them to cease and desist from raffle activities and solicitation. (Id. ¶ 153.) Defendant Mossler imposed sanctions of $1,000.00 per day in a December 8, 2016 letter even though Plaintiffs took down all fundraising materials and stopped selling tickets on day four of the event when agents visited their booth, converting to a neutral booth. (Id. ¶ 152.)

Defendant Mossler made statements about Plaintiffs to PATH International, Linda Nehse,

and other governmental agencies and licensing bodies causing harm to Plaintiffs.  (Id. ¶ 88.) Plaintiff Gina Gregory has been denied the rights to use PATH International stock photos and believes that such statements played a role in her being audited by PATH International in 2018 and having difficulty in renewing her PATH International Certified Instructor status.  (Id. ¶ 88.)

Defendant Mossler posted to her Facebook account a link to an article stating that her "veteran's charity scam case got picked up by CBS in Phoenix."  (Id. ¶ 208.)

Around April 29, 2017, Defendant Mossler had Plaintiff Gina Gregory served at Cayetano Ridge Equestrian Center where Gina Gregory's horses resided.  (Id. ¶ 293.)  Defendant Mossler shoved the process into the stall stating you are served loud enough for others to hear. (Id.)  Plaintiffs believe that Defendant Mossler told Cayetano Ridge Equestrian Center that the state was going to attach Plaintiff Gina Gregory's horses and horse trailers.  (Id. ¶ 210.) Defendant Mossler told Gina Gregory loudly enough for others to hear that Plaintiff Matthew G. Gregory was evading process.  (Id. ¶ 211.)

To the extent that Plaintiffs claims are based on the cease and desist letters, audit requests, filing the civil action, or statements made during the litigation, these are lawyerly functions of organizing and analyzing evidence and law, including the internal decisions and processes that determine how those functions will be carried out" for which a prosecutor is entitled to absolute judicial immunity.  Lacey, 693 F.3d at 913.  Plaintiffs argue that these activities are not tied to the judicial process, but determining whether Plaintiffs are in violation of state law and the decision to file a suit are specifically the types of prosecutorial activities that have been found to warrant absolute prosecutorial immunity.  "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley, 509 U.S. at 273.  "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."  Id.  "Investigative functions carried out pursuant to the preparation of a prosecutor's case also enjoy absolute immunity."  Ybarra v. Reno Thunderbird Mobile Home Vill., 723 F.2d 675, 679 (9th Cir. 1984) (quoting Imbler, 424

U.S. at 431 n.33).

Even if the decision that Plaintiffs were conducting an illegal raffle is incorrect, the prosecutor is still entitled to absolute judicial immunity. Whether a prosecutor is entitled to absolute immunity "focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." Buckley, 509 U.S. at 271. This result is necessary because "if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the [] law." Imbler, 424 U.S. at 425.

However, Plaintiffs allege that the notices imposing penalties were issued without an opportunity to be heard. Prosecutorial immunity applies to actions that are performed as part of the prosecutor's preparation of his case, even if they can be characterized as 'investigative' or 'administrative.' " Demery, 735 F.2d at 1143. The imposition of penalties for violating the cease and desist order is not action "intimately associated with the judicial phases" of litigation. Fry, 939 F.2d at 836-37. Therefore, the Court finds that Defendant Mossler is not entitled to absolute immunity for issuing notices imposing penalties.

Plaintiffs also seek to hold Defendant Mossler liable for posting a link on her Facebook page to an article about the prosecution of the case. This would clearly not be action taken in her role as an advocate for the state nor would it be related to the court action such that immunity would apply were the allegation be found to state a federal claim. Defendant Mossler is not entitled to prosecutorial immunity for posting information on her Facebook page.

### d. Defendants Kim and Ibanez

Plaintiffs allege that Defendant Kim is a supervising deputy attorney general at the DOJ and Office of the Attorney General. (Compl. ¶ 18.) Defendant Ibanez works at the Office of the Attorney General in Los Angeles, California. (Compl. ¶ 17.) On April 17, 2017, Defendants Kim and Ibanez filed a lawsuit against Plaintiffs in Alameda Superior Court. (Id. ¶ 47.) As discussed above, filing a lawsuit is the type of conduct for which a prosecutor is entitled to absolute prosecutorial immunity. Defendants Kim and Ibanez are entitled to absolute prosecutorial immunity for filing a lawsuit against Plaintiffs.

### e.    Defendant Harris

Defendant Harris was the Attorney General of California from 2011 to 2017.  (Compl. ¶ 12.)  In that capacity she administered the Act and supervised Defendant Mossler.  (Id.) Plaintiffs' allegations regarding Defendant Harris are based on her supervision of Defendant Mossler.  Defendant Harris is entitled to absolute prosecutorial immunity for administering the Act and her supervision of Defendant Mossler.  Van de Kamp, 555 U.S. at 344.

### f.    Defendant Becerra

Plaintiffs allege that Defendant Becerra made false, defamatory, and abusive statements to the press in press releases.  (Compl. ¶ 46.)  These statements were emailed to various media companies.  (Id.)  Some of these statements include factual assertions that Plaintiffs have committed crimes.  (Id.)  On April 17, 2017, Defendant Becerra filed a lawsuit against Plaintiffs in Alameda Superior Court.  (Id. ¶ 47.)  Around April 17, 2017, Defendant Becerra sent a press release stating that Plaintiffs were known or suspected criminals.  (Id. ¶ 59.)

Defendant Becerra is entitled to absolute prosecutorial immunity for filing the civil suit against Plaintiffs.  Buckley, 509 U.S. at 273.  However, statements made by the prosecutor during press conferences are only entitled to qualified immunity.  Id. at 278.  An agency official is entitled to qualified immunity for issuing a press release that is within the scope of his authority, even if issued with malice.  Butz, 438 U.S. at 488.

### g.    Qualified Immunity

State Defendants also contend that they are entitled to qualified immunity for requesting the ticket entries, the alleged violations of due process, and publications and communications. Plaintiffs argue generally that the claims alleged in the complaint all assert clearly defined rights.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow, 457 U.S. at 818. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.'

" Grossman, 33 F.3d at 1208 (quoting Anderson v. Creighton, 483 U.S. 635 (1987)).  The claim of qualified immunity is defeated where "in light of pre-existing law" at the time the official acted, the unlawfulness of the official's conduct is apparent.  Grossman, 33 F.3d at 1208.  Courts have held that "the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional."  Id. at 1209.

When confronted with a claim for qualified immunity the court considers, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show that the [official's] conduct violated a constitutional right."  Brosseau v. Haugen, 543 U.S. 194, 197 (2004).  This inquiry is to be taken in light of the specific context of the case and not as a broad general proposition.  Brosseau, 543 U.S. at 198.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  Id. at 199 (quoting Saucier, 533 U.S. at 202).  It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate."  Stanton v. Sims, 571 U.S. 3, 6 (2013) (quoting al-Kidd, 563 U.S. 731.

i.      Ticket Entries

To the extent that Defendant Mossler is not entitled to absolute immunity for requesting the ticket entries, Defendants contend that they are entitled to qualified immunity for requesting the ticket entries.  Defendants argue that, even assuming that the tickets could reasonably be equated to the Schedule B at issue in Americans for Prosperity Found. v. Harris, 182 F.Supp.3d 1049 (2016), as Plaintiffs allege in the complaint, the law was not clearly established that the Government's request for a charities Schedule B was unconstitutional, and courts have held that it is not.  Plaintiffs assert that since the request for production of the ticket entries came after Americans for Prosperity Found., was decided a reasonable prosecutor would know that requesting the entries would violate Plaintiffs and the donor's privacy rights.  As Defendants are arguing that it is unclear whether the right at issue was clearly established, the Court shall

consider the second prong of the inquiry first.  Pearson, 555 U.S. at 236.

The Court considers whether it was clearly established that requesting the drawing ticket entries would violate a constitutional right at the time that Defendant Mossler served the audit letter on July 27, 2016.  (Compl. ¶ 93.)  While the parties are relying on Americans for Prosperity Found. and similar cases, these cases all address the requirement that a charitable organization submit its Schedule B annually to the DOJ.  None of these cases address the issue here, which is whether a prosecutor would know that requesting relevant donor information during an investigation into specific conduct by the charity that is alleged to violate the Act would violate First Amendment privacy rights.

In Center for Competitive Politics, the Ninth Circuit held that "compelled disclosure, without any additional harmful state action, can infringe First Amendment rights when that disclosure leads to private discrimination against those whose identities may be disclosed."  784 F.3d at 1313.  The Court also found that "no case has ever held or implied that a disclosure requirement in and of itself constitutes First Amendment injury."  Id. at 1316.  The Court found that the disclosure requirement bears a substantial relationship to a sufficiently important government interest and found that the disclosure requirement passed the facial challenge.  Id. at 1317.  The Court left open the possibility that the disclosure of their donor information "will subject them to threats, harassment, or reprisals from either Government officials or private parties" that would warrant relief on an as-applied challenge."  Id.

Plaintiffs rely on Americans for Prosperity Found. in which the district court found that the Attorney General's Schedule B disclosure requirement was unconstitutional as applied to Americans for Prosperity Foundation.  182 F.Supp.3d at 1052.  The charity challenged the California state law requirement that charitable organizations file their Schedule B which includes the names and addresses of all individuals who donated more than $5,000 to the charity during the tax year.  Id.  The case was on remand from the Ninth Circuit which had already determined that the Attorney General's nonpublic Schedule B disclosure regime was not facially unconstitutional.  Id. (citing Center for Competitive Politics v. Harris, 784 F.3d 1307, 1317 (9th Cir.2015).  In Americans for Prosperity Found., the plaintiff was challenging the general

requirement that the charity submit their Schedule B annually to the state. Id. The charity had never submitted their Schedule B since they had been registered. After the court conducted an evidentiary hearing, it found that the lack of compliance went unnoticed because the Attorney General did not use the Schedule B in its day to day business. Id. Following the evidentiary hearing, the court held that the Foundation had prevailed on the as-applied challenge. Id. at 1047. However, this does not, as Plaintiffs argue, clearly establish that any request for donor information would violate the privacy rights of the charitable organization or its donors.

In Center for Competitive Politics v. Harris, 784 F.3d 1307, the Ninth Circuit held that the as applied challenge to compelled disclosure could "succeed if such disclosure of a contributors' names would subject the entity 'to threats, harassment, or reprisals from either Governmental officials or private parties.' " Ctr. for Competitive Politics, 296 F.Supp.3d at 1226. Here, Plaintiffs allege that the State Defendants made a request for limited and specific documents, donor tickets for 2016, during an audit to determine if Plaintiffs were illegally conducting a raffle. The fact that the State Defendants will use the donor information in prosecuting an action against Plaintiffs is not the type of harm that would be protected by the First Amendment.

Compelled disclosure can infringe on First Amendment rights when the disclosure requirement itself is a form of harassment that is intended to chill protected expression. Ctr. for Competitive Politics, 784 F.3d at 1313. While Plaintiffs make such conclusory allegations, there are no facts alleged in the complaint to raise such an inference. As alleged in the complaint Plaintiffs were soliciting donations over the internet and at various events after which a ticket was drawn in which the winner would receive a car. The County and State issued cease and desist notices, to which Plaintiffs responded that they were not conducting a raffle, but were offering an equal opportunity drawing. In an audit request, Plaintiffs were required to submit the tickets for the 2016 raffle. Plaintiffs admitted at the August 16, 2018 hearing that no case addressing whether an audit request in such circumstances would violate any federal right. The Court finds that it is not clearly established that requesting donor information would violate privacy rights guaranteed by the First Amendment on the facts alleged. The State Defendants are

1 entitled to qualified immunity for requesting the ticket entries into the drawing.

2       ii.     Due Process

3       The State Defendants argue that they are entitled to qualified immunity from all claims

4 arising from the cease and desist orders, penalties imposed or threatened, and administrative

5 appeals because the actions were taken pursuant to the statutory and regulatory schemes

6 established by the California legislature.

7       In determining whether the conduct of a state official is within his or her authority, the

8 proper test for determining "scope of authority is whether the prosecutor performed a kind of act

9 not 'manifestly or palpably beyond his authority', but rather 'having more or less connection

10 with the general matters committed to his control or supervision.' " Ybarra, 723 F.2d at 678

11 (citations omitted). Generally, government officials are performing discretionary functions they

12 are entitled to qualified immunity, "shielding them from civil damages liability as long as their

13 actions could reasonably have been thought consistent with the rights they are alleged to have

14 violated." Anderson, 483 U.S. at 638. "[W]hether an official protected by qualified immunity

15 may be held personally liable for an allegedly unlawful official action generally turns on the

16 'objective legal reasonableness' of the action. . . assessed in light of the legal rules that were

17 'clearly established' at the time it was taken[.]" Id. at 639 (quoting Harlow, 457 U.S. at 818,

18 819).

19       Plaintiffs contend that Defendant Eller made a determination that they were conducting a

20 raffle and issued a cease and desist letter on August 16, 2016. (Compl. ¶ 169, pp. 223-24.)

21 Plaintiffs state that the cease and desist order was issued without notice or an opportunity to be

22 heard, but Plaintiffs have no right to solicit donations in violation of state law. As discussed,

23 California has set forth specific regulations and statutes that govern charitable organizations and

24 solicitation. To the extent that Plaintiffs are contending that Defendant Eller was required to

25 provide notice prior to issuing the cease and desist letter, the Court finds that there is no clearly

26 established right to solicit charitable funds in violation of the Act.

27       Pursuant to section 12591.1 of the California Government Code, the Attorney General

28 may issue cease and desist orders when it is found that a person or entity has "engaged in an act

prohibited pursuant to Section 12599.6." Cal. Gov't Code § 12591.1(b)(4). Section 12599.6(f) prohibits "[o]perating in violation of, or failing to comply with, any of the requirements of this act or regulations or orders of the Attorney General, or soliciting contributions after registration with the Attorney General's Registry of Charitable Trusts has expired or has been suspended or revoked." Cal. Gov't Code § 12599.6(f)(1).

Plaintiffs' complaint is that Defendant Eller improperly determined that they were conducting a raffle in violation of California law. But such allegations are the reason that government officials, such as Defendant Eller, are entitled to qualified immunity when they make such determinations within the scope of their authority. Once Defendant Eller determined that Plaintiffs were violating the May 2015 cease and desist letter and continuing to solicit funds in violation of California law, he was statutorily authorized to issue the cease and desist order. It would not be clear in such a situation that issuing the cease and desist order would violate Plaintiffs' rights.

On February 8, 2018, Defendant Eller issued a notice of refusal to register/renew registration and automatic suspension. (Compl. pp. 123-128.) Upon finding that an entity or person who is subject to the Act has committed a violation, the Attorney General may issue cease and desist orders, impose monetary penalties, suspend or revoke registration, or file an enforcement action. Cal Gov't Code §§ 12591.1(b), (c), (d), 12598(a), (e); Cal. Code Regs. tit. 11, § 999.6(a). Similarly, Defendant Eller was statutorily authorized to issue the notice of refusal to register or renew WWSG and CCERR's charitable status and revoke their registration.

The Court finds that Defendant Eller is entitled to qualified immunity for issuing the cease and desist letters and notice of refusal to register/renew registration and automatic suspension. However, it was clearly established that Plaintiffs would be entitled to a hearing to challenge the RCT findings and they allege that they requested a hearing and it was not provided. Defendant Eller would not be entitled to qualified immunity for any failure to provide a hearing once it had been requested.

iii.    Publications and Communications

Defendants contend that they acted in compliance with the Act which requires the DOJ to

maintain and make public documents filed and prepared by the DOJ concerning charitable organizations. Since the conduct alleged here arose from the enforcement of those statutes, and the statutes are not obviously unconstitutional, Defendants argue that they are entitled to qualified immunity. Plaintiffs counter that the statements on the RCT website are obviously unconstitutional and it was clearly established at the time that the documents were placed on the RCT website.

Plaintiffs seek to hold the defendants liable for posting documents on the RCT website. However, the Act requires that "[s]ubject to reasonable rules and regulations adopted by the Attorney General, the register, copies of instruments, and the reports filed with the Attorney General shall be open to public inspection. The Attorney General shall withhold from public inspection any instrument so filed whose content is not exclusively for charitable purposes." Cal. Gov't Code § 12590. Here, Plaintiffs are alleging that their rights were violated by documents issued by the RCT and Fresno County because they contain allegedly defamatory statements. However, these are the specific types of documents which would fall within the requirement that they be open to public inspection. The regulation is not unconstitutional on its face and the Court finds that Defendants would be entitled to qualified immunity for posting the documents on the public website as directed by the statute.

### G. State Law Immunity

Defendants allege that various state laws also provide immunity in this action. Plaintiff counters that Defendants have only raised such immunities for the state law causes of action and that the acts are not discretionary in nature and not entitled to immunity.

### 1. California Government Code Section 820.2

Section 820.2 of the California Government Code provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." "In determining whether discretionary act immunity applies with regard to the acts of a public employee, courts must consider whether the acts or omissions of the particular employee resulted from the exercise of discretion within the meaning of section 820.2." Barner v. Leeds, 24

Cal.4th 676, 684 (2000). The <u>Barner</u> court explained that under section 820.2,

> "[i]mmunity is reserved for those 'basic policy decisions [which have] . . . been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.' Such 'areas of quasi-legislative policy-making . . . are sufficiently sensitive' to call for judicial abstention from interference that 'might even in the first instance affect the coordinate body's decision-making process.' " On the other hand, there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated. The scope of the discretionary act immunity "should be no greater than is required to give legislative and executive policymakers sufficient breathing space in which to perform their vital policymaking functions."

<u>Barner</u>, 24 Cal.4th at 685 (internal citations omitted). In determining whether an act is discretionary, California's courts distinguish between the employee's operational and policy decisions. <u>Id.</u> "[A]lthough a basic policy decision may be discretionary and thus warrant governmental immunity, subsequent operational actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence." <u>Id.</u> at 687. Thus section 820.2 provides immunity for policy and planning decisions, but not for the operational duties that merely implement the initial decision. <u>Id.</u> at 688.

The initial decisions to investigate and prosecute Plaintiffs are the type of discretionary decisions that are entitled to immunity under section 820.2. <u>See</u> <u>Kemmerer v. Cty. of Fresno</u>, 200 Cal.App.3d 1426, 1438 (1988) (decision to implement disciplinary proceedings and the discipline to impose is entitled to immunity under section 820.2); <u>Christina C. v. Cty. of Orange</u>, 220 Cal.App.4th 1371, 1381 (2013), as modified (Oct. 29, 2013) (social workers entitled to discretionary act immunity for child removal and placement decisions); <u>but see</u> <u>Barner</u>, 24 Cal.4th at 679 (once decision is made to provide legal representation the actions implementing that decision do not qualify for immunity under section 820.2). Once a public employee makes the initial decision, as here to investigate or prosecute the alleged violations, "he or she is not immune for the negligent performance of professional duties that do not amount to policy or planning decisions." <u>Barner</u>, 24 Cal.4th at 686.

Therefore, Defendants are entitled to immunity under section 820.2 for the decision to investigate or prosecute the alleged violations of the Act or the California Penal Code, but the decisions on how the investigation or prosecution proceeded are not discretionary acts within the

meaning section 820.2.

2.    California Government Code Section 821.6

Section 821.6 of the California Government Code provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  Section 821.6 is broadly construed "in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits."  Doe v. State, 8 Cal.App.5th 832, 844 (2017), review denied (June 14, 2017) (citations omitted).  "Investigations are considered to be part of judicial and administrative proceedings for purposes of section 821.6 immunity."  Richardson-Tunnell, 157 Cal.App.4th at 1062.

Although California courts have found that immunity under section 812.6 extends to provide immunity for other claims, Javor v. Taggart, 98 Cal.App.4th 795, 808 (2002), as modified (May 23, 2002); Doe, 8 Cal. App.5th at 844; Citizens Capital Corp. v. Spohn, 133 Cal.App.3d 887, 889 (1982), the Ninth Circuit has held that the California Supreme would limit such immunity to malicious prosecution claims, Garmon, 828 F.3d at 847.  The Court is bound by the Ninth Circuit's holding in Garmon, and finds that section 812.6 does not immunize the defendants in this action as Plaintiffs have not brought an action alleging malicious prosecution.

3.    California Civil Code Section 47

Defendants contend that section 47 of the California Civil Code precludes Plaintiffs from proceeding with the state law claims because any publication related to their solicitation activities and management of the charitable donations was made in an official proceeding authorized by law.

California's litigation privilege is codified in Civil Code section 47.  "California law recognizes two types of privileged communications—communications which are absolutely privileged and communications which are qualifiedly or conditionally privileged.  If absolutely privileged, there is no liability even if the defamatory communication is made with actual malice. If the privilege is only conditional or qualified, a finding of malice will prevent the

communication from being found privileged." <u>Kashian v. Harriman</u>, 98 Cal. App. 4th 892, 912

(2002) (quoting <u>Cruey v. Gannett Co.</u>, 64 Cal.App.4th 356, 367 (1998)).

As relevant here, Section 47 provides that a privileged communication is one made in the proper discharge of an official duty during a legislative proceeding, judicial proceeding, any other official proceeding authorized by law, or in the initiation or course of any proceeding authorized by law." Cal. Civ. Code § 47(a)(b). To effectuate its purpose, the litigation privilege is absolute in nature. <u>Silberg v. Anderson</u>, 50 Cal.3d 205, 215 (1990), as modified (Mar. 12, 1990); <u>Hagberg v. California Fed. Bank</u>, 32 Cal.4th 39, 360 (2004). Originally applied to the tort of defamation, it is now applicable to any communication, whether or not it is a publication, and all torts except malicious prosecution. <u>Rusheen</u>, 37 Cal.4th at 1057.

In a situation similar to that alleged here, the California Supreme Court held that the press statement by the attorney general was entitled to the absolute privilege provided by section 47(a). <u>Kilgore v. Younger</u>, 30 Cal.3d 770, 779 (1982). Similar to the attorney general in <u>Kilgore</u>, Defendant Becerra was speaking in his official capacity as Attorney General in issuing the press releases and warning donors to use caution in making charitable donations. Here, Defendant Becerra was serving a policy making role when he released the statements which addressed the suit filed against Plaintiffs and the attorney general's decision to pursue action against organizations that were believed to be falsely claiming to help veterans. As Defendant Becerra was discharging his official duty in issuing the press release, he is entitled to absolute immunity for all state claims raised in the complaint. <u>Kilgore</u>, 30 Cal.3d at 779; <u>see also</u> <u>Copp v. Paxton</u>, 45 Cal.App.4th 829, 840 (1996) (immunity under section 47 has been applied to agency directors properly discharging their official duties).

The litigation privilege also applies to any publication required or permitted by law in the course of the judicial proceedings to achieve the objects of the litigation, including publications outside the courtroom where no function of the court or its officers are involved. <u>Rusheen</u>, 37 Cal.4th at 1057. The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." <u>Id.</u>

(citing Silberg, 50 Cal. 3d at 212). The privilege applies regardless of the whether the communication was made with malice or intent to harm and does not depend on the publisher's "motives, morals, ethics or intent." Kashian, 98 Cal.App.4th at 913 (quoting Wise v. Thrifty Payless, Inc., 83 Cal.App.4th 1296, 1302 (2000)). Therefore, absolute immunity from tort liability applies to communications with some relation to judicial proceedings, including statements before and after court proceedings. Rusheen, 37 Cal.4th at 1057. However, the litigation privilege does not apply to republication to nonparticipants or litigating in the press. Kashian, 98 Cal.App.4th at 920; see also Rothman v. Jackson, 49 Cal.App.4th 1134, 1148 (1996) (to satisfy the requirement that the statement be in furtherance of litigation, it must function intrinsically to advance a litigant's case).

Section 47 also provide privilege for "a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) of anything said in the course thereof, or (E) of a verified charge or complaint made by any person to a public official, upon which complaint a warrant has been issued." Cal. Civ. Code § 47(d). When the fair report privilege applies, "the reported statements are 'absolutely privileged regardless of the defendants' motive for reporting' them." Healthsmart Pac., Inc. v. Kabateck, 7 Cal.App.5th 416, 431 (2016), as modified (Jan. 10, 2017). The fair report privilege protects a defendant from liability for a fair and accurate report of judicial proceedings, even if the statement is known to be false. McClatchy Newspapers, Inc. v. Superior Court, 189 Cal.App.3d 961, 974 (1987). Every word of the report need not be justified for the report to be fair and accurate, but the substance must be accurately conveyed. McClatchy Newspapers, Inc., 189 Cal.App.3d at 975. There is a degree of flexibility in deciding what is an accurate report. Id. While the fair report privilege is generally invoked by media defendants, it also protects parties who provide information to the media. Healthsmart Pac., Inc., 7 Cal.App.5th at 431.

Section 47(b) is also applied to statements made in preparation of litigation or to investigate the feasibility of filing a lawsuit. Hagberg, 32 Cal.4th at 361. "By the terms of the statute, statements that are made in quasi-judicial proceedings, or 'any other official proceeding authorized by law' (§ 47(b)), are privileged to the same extent as statements made in the course

of a judicial proceeding.  By analogy to cases extending the litigation privilege to statements made outside the courtroom, many cases have held that the official proceeding privilege applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing."  Id. at 362.  Governmental investigations have been found to be official proceedings authorized by law that fall within section 47(b).  Braun v. Bureau of State Audits, 67 Cal.App.4th 1382, 1389 (1998) (collecting cases).

To the extent that Plaintiffs are seeking to hold Defendants liable for statements made in the pleadings filed in the administrative or court proceedings, these statements would be covered by the litigation privilege and Defendants are entitled to immunity.  Defendants also assert that the reports were through the RCT website and are therefore entitled to protection because they are in a proceeding authorized by law.  Here, Plaintiffs seek to hold the defendants liable for documents filed on the RCT website.  However, the DOJ is authorized by law to conduct such investigations.  Cal. Code Regs. tit. 11, §§ 425, 426.  These are official documents which recount the findings after an investigation by the RCT into alleged illegal raffle activity.  The Court finds that these documents would be entitled to absolute immunity under section 47(b).

**H.    Failure to Comply with California Government Claims Act**

The State Defendants also allege that Plaintiff has not complied with the California Government Claims Act for claims that occurred before August 20, 2017.  The County Defendants contend that Plaintiffs did not comply with the California Government Claims Act because there was no claim filed with the County of Fresno and the claims that were filed with the State were untimely.

Arguing supplemental jurisdiction, Plaintiffs contend that there is only a single state law claim and that there is no requirement that they have filed any claims pursuant to the Government Tort Claims Act.  However, Defendants are moving to dismiss the state court claim, and not the federal claims, for failure to comply with the Government Claims Act.  (ECF No. 21-1 at 27 ("the Court should dismiss all state-law claims arising from events or alleged misconduct that occurred before August 20, 2017, because Plaintiffs failed to comply with the claim-presentation requirements of the California Government Claims Act"); ECF No. 25-1 at 25

("Due to their failure to comply with the claims presentation requirements of the California Government Claims Act, Plaintiffs state law claims against County Defendants should be dismissed.").)

Plaintiffs also allege that, for the same reasons the statute of limitations should be extended, the time to present claims would be extended. However, the issue here is not the limitations period for filing a claim, but whether Plaintiffs complied with the claim presentation deadlines of the California Government Claims Act.

The Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; Bodde, 32 Cal.4th at 1244. "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a compliant to general demurrer for failure to state a cause of action." Id. at 1239.

The purpose of the California Government Claims Act is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." Stockett v. Assoc. of California Water Agencies Joint Powers Insurance Authority, 34 Cal.4th 441, 446 (2004) (quoting City of San Jose v. Superior Court, 12 Cal.3d 447, 455 (1974)). "[T]he claim must state the 'date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted[,]' provide a '[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim[,]", and state the amount of the claim if it is less than $10,000, or, if the claim exceeds $10,000, the dollar amount cannot be stated but the claim must indicate whether the claim would be a limited civil case." Connelly v. Cty. of Fresno, 146 Cal.App.4th 29, 37 (2006) (quoting Cal. Gov't Code § 910). The claim does not need to contain

the detail and specificity required of a complaint filed in court, but it must fairly describe what the defendant is alleged to have done so the entity can investigate and evaluate the claims. Stockett, 34 Cal.4th at 446.

Plaintiffs argue that the right of privacy cause of action was filed in substantial compliance with the Government Claims Act. "Where a claimant has attempted to comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial compliance may validate the claim 'if it substantially complies with all of the statutory requirements . . . even though it is technically deficient in one or more particulars.' " Garber v. City of Clovis, 698 F.Supp.2d 1204, 1214–15 (E.D. Cal. 2010) (quoting Connelly, 146 Cal.App.4th at 38). To determine if a plaintiff is in substantial compliance for purposes of the Government Claims Act, California courts consider: "Is there some compliance with all of the statutory requirements; and, if so, is this compliance sufficient to constitute substantial compliance?" Garber, 698 F.Supp.2d at 1215 (quoting City of San Jose, 12 Cal.3d at 456–57). "The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation. Connelly, 146 Cal.App.4th at 38; Garber, 698 F.Supp.2d at 1215.

Here, Plaintiffs do not argue that they attempted to comply with California's requirements but timely filed with the wrong agency, but appear to argue that the claim forms they submitted on February 20, 2018 were timely. However, the claim forms would only be timely for those claims that accrued within the prior six months. If an injured party fails to present a timely claim, the party can present a written application to the public entity for leave to present the claim. Cal. Gov't Code § 911.4(a). The application must be presented within a reasonable time, not to exceed one year after the accrual of the cause of action, and must state the reason for the delay in submitting the claim. Cal. Gov't Code § 911.4(b). If the agency denies the application to present a late claim, the party may petition to the court for an order of relief. Cal. Gov't Code § 946.6(a). The "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." Bodde, 32 Cal.4th at 1239.

Plaintiffs also appear to be arguing that the objections they submitted in response to the cease and desist orders and letters imposing sanctions were sufficient to meet the claim presentation requirement. Under the Government Tort Claim Act a claim that is defective in that it fails to comply substantially with Government Code sections 910 and 910.2 is a "claim as presented" where it 'nonetheless puts the public entity on notice that the claimant is attempting to file a valid claim and that litigation will result if it is not paid or otherwise resolved.' " All. Fin. v. City & Cty. of San Francisco, 64 Cal.App.4th 635, 643 (1998). "A document will be deemed a 'claim as presented' 'if it discloses the existence of a 'claim' which, if not satisfactorily resolved, will result in a lawsuit against the entity.' " All. Fin., 64 Cal.App.4th at 643–44.

Plaintiffs do not point to any specific objections prior to February 20, 2018, that would satisfy the claim presentation requirement and upon review of the documents the Court finds that they are not sufficient to meet the claims presentation requirements. Generally, Plaintiffs merely contested that they were running a raffle or the findings in the notice of imposition of penalties, or requested an apology and return of the drawing entries. (ECF No. 1 at 164, 180, 207-08, 217, 227, 332.) Plaintiff's objections were not sufficient to the public entity on notice that the claimants were attempting to file a valid claim and that litigation would result if it was not paid or otherwise resolved. Therefore, they were not a "claim as presented."

Here, Plaintiffs have included three requests for relief from the requirement that they submit a timely claims form. (ECF Nos. 1-1, 1-2, 1-3.) To the extent that Plaintiffs seek for this Court to consider the requests, "[t]he proper court for filing the petition is *a superior court* that would be a proper court for the trial of an action on the cause of action to which the claim relates." Cal. Gov't Code § 946.6(a) (emphasis added). The federal court is not the proper court to hear Plaintiffs' section 946.6 petitions. Hernandez v. McClanahan, 996 F.Supp. 975, 978 (N.D. Cal. 1998).[14] "Although the Ninth Circuit has not interpreted § 946.6, most California

_____

[14] The Court notes that in Perez v. City of Escondido, 165 F.Supp.2d 1111 (S.D. Cal. 2001), the court found that the federal court could exercise jurisdiction to consider the petition for relief. However, the Perez court considered the language of the statute at the time which stated "[t]he proper court for filing the petition is a court which would be a competent court for the trial of an action on the cause of action to which the claim relates and which is located in a county or judicial district which would be a proper place for the trial of the action. . . . Perez, 165 F.Supp.2d at

District Courts interpret § 946.6(a) as meaning that only state superior courts, and not federal district courts, may grant relief from Government Code § 945.4." Hill v. City of Clovis, No. 1:11-CV-1391 AWI SMS, 2012 WL 787609, at *12 (E.D. Cal. Mar. 9, 2012), on reconsideration in part sub nom. Hill v. Clovis Police Dep't, No. 1:11-CV-1391 AWI SMS, 2012 WL 1833880 (E.D. Cal. May 18, 2012) (collecting cases); Medina v. Lopez, No. 1:14-CV-01850-GSA PC, 2015 WL 1405284, at *3 (E.D. Cal. Mar. 26, 2015); Dasenbrock v. Enenmoh, No. 111CV01884DADGSAPC, 2017 WL 1351109, at *2 (E.D. Cal. Jan. 20, 2017); San Diego Branch of Nat'l Ass'n for the Advancement of Colored People v. Cty. of San Diego, No. 16-CV-2575-JLS (BGS), 2017 WL 5194579, at *2 (S.D. Cal. Nov. 9, 2017). Since the language of section 946.6(a) states that the proper court is the superior court, the Court agrees with the majority of courts that have found that the proper court to consider Plaintiffs' petitions for relief from California Government Code, section 945.4 is the California superior court. This court does not have the authority to grant Plaintiffs' petitions for relief under section 946(a).

### 1. State Defendants

Plaintiffs Matthew G. Gregory, Matthew J. Gregory, Danella Gregory, and WWSG submitted government claim forms dated February 20, 2018, which were received on February 28, 2018. (ECF Nos. 22-6, 22-7, 22-8, 22-9.) On April 23, 2018, the claims that were timely were denied and the application for leave to present a late claim was still under review. (ECF No. 1 at 187, 189, 191; ECF No. 22-9 at 1.) On March 30, 2018, the requests for leave to file a late claim form were denied. (ECF No. 1 at 193-94, 196-97, 199-00.)

The Court finds that Plaintiffs' failed to comply with the Government Claims Act for any state law claims that accrued prior to August 20, 2017. As Plaintiffs did not present a timely claim pursuant to the Government Claims Act the state law claims are barred. Bodde, 32 Cal.4th at 1239. The Court recommends that the state law claims accruing before August 20, 2017, be dismissed without leave to amend.

/ / /

---

1113. In 2002, the statute was amended making the language identifying the proper court more specific. Hill, 2012 WL 787609, at *12.

2. <u>County Defendants</u>

The County Defendants submit evidence that there was no claim form or application to submit a late claim form presented to Fresno County based on the allegations alleged in the complaint. (Decl. of Connie Yee, ECF No. 25-3.) Thus, Plaintiffs cannot bring a state law claim against any County Defendant. <u>Bodde</u>, 32 Cal.4th at 1239. Plaintiffs' state law claims against the County Defendants should be dismissed for failure to comply with the Government Claims Act.

**I.      Statute of Limitations**

The State Defendants contend that Plaintiffs' claims that arose prior to April 16, 2016, are barred by the statute of limitations which would be two years in this action. The County Defendants argue that the claims against them in this action arose from the May 21, 2015 cease and desist letter sent by Defendant Dupras and the allegations in the complaint demonstrate that Plaintiffs were aware of the letter at the time it was sent, continued to check the RCT for several months after asking to have it removed. Since the complaint was not filed within the two-year limitations period, the County Defendants seek to have the claims alleged against them dismissed with prejudice.

Plaintiffs agree that the statute of limitations is two years for the claims raised in this action, but argue that the claims based on the May 21, 2015 letter and its existence in the RCT, the August 2016 letters, and the penalties in the September and December 2016 letters are not barred because the February and April 2018 letters revived the issues. Further, Plaintiffs argue that Danella Gregory and Gina Gregory were not aware of the existence of the letter and would not have thought to check the RCT website.

State Defendants reply that the Court need not consider Plaintiffs' arguments which are frivolous and contrary to the law. County Defendants respond that it is clear from Plaintiffs' reply that they were aware of the existence of the letter, that it was included in the RCT website, and that they believe it would be unreasonable to rely on Defendant Dupras alleged promise to remove the letter.

Section 1983 does not contain a statute of limitations. <u>Butler v. Nat'l Cmty. Renaissance</u>

of California, 766 F.3d 1191, 1198 (9th Cir. 2014).  Absent a federal limitations period, federal courts " 'apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law.' "  Butler, 766 F.3d at 1198 (quoting Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007)).

Under California law, the limitations period for a personal injury claim is two years.  Cal. Civ. Proc. Code § 335.1.  The accrual of a cause of action under section 1983 is a question of federal law that is not resolved by reference to state law.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  Under federal law an action accrues when a plaintiff knows or has reason to know of the injury that is the basis of the action.  Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001); Bradford v. Scherschligt, 803 F.3d 382, 387 (9th Cir. 2015).  The Ninth Circuit has "interpreted the question of what we mean by injury with some flexibility, and held that a claim accrues not just when the plaintiff experiences the injury, but when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury."  Bonneau v. Centennial Sch. Dist. No. 28J, 666 F.3d 577, 580 (9th Cir. 2012) (quoting Lukovsky v. City & Cnty. of San Francisco, 535 F.3d 1044, 1050 (9th Cir.2008)) (internal punctuation omitted).

The proper focus in determining the accrual date is upon the time of the discriminatory acts, and not the time that the consequences of the acts became the most painful.  Knox, 260 F.3d at 1013.  The statute of limitations runs from when the operative decision is made, not when the decision is carried out.  RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1059 (9th Cir. 2002).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  RK Ventures, Inc., 307 F.3d at 1061.  The federal court also borrows state tolling that is closely related to the borrowed statute of limitations.  Bonneau, 666 F.3d at 580.

1.    Claims Alleged Against the County Defendants are Barred by the Statute of Limitations

All claims against the County Defendants are based on Plaintiffs allegation that a letter sent by Defendant Dupras, dated May 21, 2015, was uploaded onto the RCT's database.

84

(Compl. ¶ 26, p. 121.)  While Plaintiffs state that they only recently became aware that the letter is still on the RCT database, the cause of action accrued when the plaintiffs knew or had reason to know of the injury that is the basis of the action.  Knox, 260 F.3d at 1013.  Here, Matthew J. Gregory and Matthew G. Gregory had actual notice of the letter and that it was on the RCT website shortly after it was issued.  Matthew J. Gregory continued to check the website for two months after asking Defendant Dupras to remove the letter and would have been aware that the letter remained on the website at the latest in July 2015.  While Danella Gregory asserts that she did not find out about the letter until January 2018, as secretary, officer, and director of WWSG and CCERR she should have been informed by the other corporate officers, her husband and son, regarding the cease and desist letter.  In this instance, it is clear that the corporation was on notice of the May 21, 2015 cease and desist letter through its officers and the limitations period began to run based on such notice.

Plaintiff Gina Gregory argues that she had no knowledge that WWSG and CCERR were 501(c)(3) nonprofit organization or of the letter or that it was on the RCT website and would not have known to check that it was on the RCT website in 2015.  However, "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983).  To have standing in federal court, the plaintiff must allege facts to show that she has " 'such a personal stake in the outcome of the controversy' as to warrant [her] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf."  Thomas v. Mundell, 572 F.3d 756, 760 (9th Cir. 2009) (quoting Warth v. Seldin, 442 U.S. 490, 498 (1975)).  "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Maya v. Centrex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (citations omitted).

Here, the May 2015 cease and desist letter was addressed to the corporation and the

officers of the corporation. Plaintiff has never been an officer of the corporation (Decl. of Gina D. Gregory ¶ 2, ECF No. 22-5), and her familial relationship to the corporate officers does not provide her with standing to bring a claim based on the cease and desist letter. Further, Plaintiff cannot demonstrate that she suffered any harm that is fairly traceable to the 2015 letter. At the time the letter was issued, Plaintiff had recently graduated from law school and there are no facts alleged in the complaint or elsewhere that she had any involvement in WWSG and CCERR. The basis of Plaintiff Gina Gregory's claims is the harm due to the quasi-criminal action and statements regarding the family's misuse of the charitable funds which occurred much later, after the State investigated the claims and determined that the organizations were illegally operating a raffle and misusing the funds raised. As Plaintiff has failed to demonstrate that she has standing to bring suit based on the 2015 cease and desist letter, her lack of knowledge regarding the letter or its presence on the RCT website is irrelevant to the statute of limitations issue.

Without citing to any legal authority, Plaintiffs also argue that the February 2018 letter revived all issues surrounding the May 2015 letter. "A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured." Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 237 (9th Cir. 1987). In alleging a continuing violation, the plaintiff must allege an overt act by the defendant to restart the statute of limitations and the limitations period runs from the last overt act. Pace Indus., Inc., 813 F.2d at 237. "Two elements are necessary for an act to restart the statute of limitations period: '(1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff.' " Kotev v. First Colony Life Ins. Co., 927 F.Supp. 1316, 1319 (C.D. Cal. 1996) (quoting Pace Indus., Inc., 813 F.2d at 238). Here, citing the May 21, 2015 cease and desist letter was merely a reaffirmation of a previous act. Also, the only overt acts alleged by County Defendants occurred in 2015 when the cease and desist letter was issued and when Defendant Dupras allegedly agreed to remove it from the RCT website. Plaintiffs' have failed to allege any facts to show that County or State Defendants took overt acts that would constitute a continuing violation to delay the running of the statute of limitations for the May 2015 letter.

Further, California's "single-publication rule limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication." <u>Roberts v. McAfee, Inc.</u>, 660 F.3d 1156, 1166 (9th Cir. 2011). Under the single publication law, publication occurs on the first general distribution of the publication to the public. <u>Roberts</u>, 660 F.3d at 1167; <u>Canatella</u>, 486 F.3d at 1133. The rule applies to information published on websites. <u>Roberts</u>, 660 F.3d at 1167.

The Ninth Circuit has applied California's single publication law logic "to hold that once that standard is met, a single publication gives rise to only one cause of action." <u>Canatella</u>, 486 F.3d at 1133. The 2015 letter was published to the public when it was posted on the RCT website and the statute of limitations would begin to run at that time. <u>Id.</u> at 1134. Further, the February 1, 2018 letter merely set forth the background of the reasons for the suspension which noted the May 2015 cease and desist order. (ECF No. 1 at 123-29.) The decision to include the May 2015 cease and desist letter in the February 1, 2018 letter would be "mere continuing impact from alleged past violations that is not actionable as a new cause of action." <u>Canatella</u>, 486 F.3d at 1136 (internal punctuation omitted). Even publishing the same information on a different section of the website does not give rise to a new cause of action. <u>Id.</u> at 1135.

Plaintiffs knew or should have known that the letter remained on the RCT website by July 2015 at the latest. Thus, any action based on the letter was required to be filed prior to August of 2017. Plaintiff's filed this action on April 16, 2018, more than eight months after the limitations period had run. The Court finds that the claims against County Defendants based on the May 21, 2015 cease and desist letter are barred by the statute of limitations and recommends that the claims based on the issuance of the letter and posting of the letter on the RCT website be dismissed with prejudice.

    2.    Claims Against State Defendants

The State Defendants argue that the allegations in the complaint show that Plaintiffs were aware of the posting of the May 2015 "defamatory letter" and the due process rights to adequate notice and opportunity to be heard. The State Defendants seek dismissal of all claims arising prior to April 16, 2016 without leave to amend as barred by the statute of limitations.

For the reasons discussed in addressing the County Defendants' motion to dismiss on the ground of statute of limitations, all claims against the State Defendants based on the May 2015 cease and desist letter are barred by the statute of limitations and should be dismissed with prejudice.

Defendants generally argue that all claims arising from events or alleged misconduct that occurred prior to April 16, 2016 is barred by the statute of limitations. However, the Court is unable to make a finding on the grounds of the statute of limitations without any specific event or act to consider. Therefore, the Court finds that Defendants have not demonstrated that the statute of limitations would bar claims arising from all events or alleged misconduct that occurred prior to April 16, 2016. California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1406 (9th Cir. 1995) ("A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred.")

### J. Leave to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Here, the Court finds that Plaintiffs should be granted an opportunity to file an amended complaint to cure the deficiencies in those claims for which the defendants are not entitled to absolute or qualified immunity. If Plaintiffs were to file an amended complaint at this time, it could result in unnecessary litigation and should the state court matter be decided in Plaintiffs' favor they would need to file another amended complaint. Since this action is to be stayed pending resolution of the State court action, the Court finds that it would be in the interest of conserving the resources of the Court and the parties to delay the filing of the amended complaint until the stay is lifted.

Defendants request that if leave to amend is granted the Court provide a reasonable page limitation given the length of the current complaint. Plaintiffs are advised that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007)).  Plaintiffs complaint does not comply with Rule 8.  It is 118 pages in length and contains few factual allegations, being largely composed of repetitive argument and conclusory statements that are not entitled to a presumption of truth.

The Court finds due to the number of claims and defendants that are being dismissed without leave to amend, twenty-five pages is a reasonable page limitation for any amended complaint in this action.  Therefore, if Plaintiffs choose to file an amended complaint it shall not exceed twenty-five pages and any amended complaint that fails to comply with this page limitation should be stricken from the record.

Plaintiffs are further advised that in deciding whether the complaint states a claim, all factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996).  This requires factual content for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability.  Id.  Further, while the court is to accept all "well pleaded factual allegations" in the complaint as true, id. at 679, it is not bound to accept as true labels, conclusions, formulaic recitations of the elements of a cause of action or legal conclusions couched as factual allegations, Twombly, 550 U.S. at 555.  Finally, conclusory allegations in the complaint are not entitled to the presumption of truth.  Iqbal, 556 U.S. at 681.

Additionally, Plaintiffs have included approximately 230 pages of exhibits with the complaint.  As the well pled factual allegations in the complaint are accepted as true, it is generally unnecessary for a plaintiff to submit exhibits in support of the allegations in a complaint.  Any exhibits that are attached to the complaint must be incorporated by reference.  Fed. R. Civ. Pro. 10(c).

## VI.

## FINDINGS AND RECOMMENDATIONS

The Court finds that Plaintiffs have stated a claim against Defendant Eller based upon the failure to provide a hearing; and against Defendant Mossler for issuing penalties without notice

in violation of the Fourteenth Amendment, but that Defendants' motions to dismiss should be granted in all other respects.

Based on the foregoing, IT IS HERBY RECOMMENDED that:

1. The County Defendants' motion to dismiss, filed July 3, 2018, be GRANTED on the ground that Plaintiffs' have failed to state a cognizable claim against Defendants Fresno County, Lisa Smittcamp, and Jeffrey Dupras;

2. The claims against the County Defendants be DISMISSED with prejudice as barred by the statute of limitations;

3. The State Defendants' motion to dismiss, filed June 27, 2018, be GRANTED IN PART AND DENIED IN PART as follows:

    a. State Defendants' motion for the Court to abstain under <u>Younger</u> be GRANTED and this action be STAYED until the completion of the state proceedings in <u>People v. WWSG</u>, No. RG17856929 (Alameda Superior Court);

    b. State Defendants' motion to dismiss the eighth cause of action for injunctive relief as barred by the Anti-Injunction Act be DENIED;

    c. County Defendants motion to dismiss the cause of action for injunctive relief without leave to amend as it is not an independent cause of action be GRANTED;

    d. The claims for damages against the Department of Justice and Registry of Charitable Trusts and State Defendants in their official capacities be DISMISSED WITHOUT LEAVE TO AMEND as barred by the Eleventh Amendment;

    e. The freedom of speech, freedom of association, and retaliation claims in violation of the First Amendment be DISMISSED for failure to state a claim;

    f. Plaintiffs' claims alleging violations of the Fourth, Fifth, Sixth, and Ninth Amendments be DISMISSED WITHOUT LEAVE TO AMEND for

failure to state a claim;

g.    State Defendant's motion to dismiss the Fourteenth Amendment due process claims against Defendant Eller based upon the failure to provide a hearing; and against Defendant Mossler for issuing penalties without notice be DENIED;

h.    Plaintiffs' stigma-plus claim against Defendant Eller be DISMISSED WITHOUT LEAVE TO AMEND on the ground that he is entitled to qualified immunity for the documents issued and posting them on the Registry of Charitable Trusts website;

i.    State Defendants' motion to dismiss be GRANTED as to all remaining Fourteenth Amendment claims for failure to state a claim;

j.    State Defendants' motion to dismiss the abuse of process claims under section 1983 be GRANTED for failure to state a claim;

k.    Plaintiffs' state law privacy claim be DISMISSED for failure to state a claim;

l.    Defendants Kim, Ibanez, Harris, Becerra, Garcia be DISMISSED from this action on the ground that they are entitled to absolute prosecutorial immunity or qualified immunity for the actions alleged in the complaint;

m.    State Defendants motion to dismiss all state law claims accruing before August 20, 2017 be GRANTED;

n.    All causes of action based on the May 2015 cease and desist letter be DISMISSED WITH PREJUDICE as barred by the statute of limitations;

4.    Plaintiffs be granted the opportunity to file an amended complaint or notify the Court that they are willing to proceed on the cognizable claims once the stay of this action is lifted; and

5.    Any amended complaint shall not exceed **twenty-five (25) pages** in length. This page limit includes any exhibits incorporated by reference.

IT IS FURTHER ORDERED that any objections to this findings and recommendations

may not exceed **twenty-five (25) pages** in length.  Any response to a party's objections may not exceed **fifteen (15) pages** in length.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 6, 2018**

UNITED STATES MAGISTRATE JUDGE