# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW G. GREGORY, et al., | Case No. 1:18-cv-00524-LJO-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT |
| v. | |
| FRESNO COUNTY, et al., | |
| Defendants. | (ECF Nos. 80, 81, 82, 83, 86) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court is California Department of Justice ("DOJ"), Registry of Charitable Trusts ("RCT"), Xavier Becerra, David Eller, Walter Garcia, Kamala Harris, Tanya M. Ibanez, Elizabeth S. Kim, and Julianne Mossler's (collectively "State Defendants") motion to dismiss Matthew G. Gregory, Danella J. Gregory, Gina D. Gregory, Matthew J. Gregory, Wounded Warriors Support Group ("WWSG"), and Central Coast Equine Rescue & Retirement ("CCERR") (collectively "Plaintiffs") first amended complaint.

The Court heard oral argument on May 29, 2019. Counsel Gina Gregory appeared for Plaintiffs. Counsel Diana Esquivel appeared for Defendants. Having considered the moving, opposition, and reply papers, the declarations and exhibits attached thereto, arguments presented at the May 29, 2019 hearing, as well as the Court's file, the Court issues the following findings and recommendations.

# I.

## PROCEDURAL HISTORY

On April 16, 2018, Plaintiffs filed this civil rights action pursuant to 42 U.S.C. § 1983 against Fresno County, Lisa Smittcamp, and Jeffrey Dupras (collectively "County Defendants"), and State Defendants.

On June 27, 2018, State Defendants filed a motion to dismiss and request for judicial notice. (ECF Nos. 21 and 22.) On July 3, 2018, County Defendants filed a motion to dismiss. (ECF No. 25.) The motions to dismiss were referred to the undersigned for the preparation of findings and recommendations. (ECF Nos. 23, 26.) On September 6, 2018, findings and recommendations were filed recommending granting the County Defendants motion to dismiss and granting in part the State Defendants motion to dismiss. (ECF No. 62.) After receiving an extension of time, Plaintiffs filed objections to the findings and recommendations on October 4, 2018. (ECF No. 66.)

On November 9, 2018, the district judge issued an order to show cause regarding the res judicata effect of a state jury verdict that had been entered against Plaintiffs. (ECF No. 70.) The parties filed responses to the order to show cause. (ECF Nos. 71, 72, 73.) On December 13, 2018, an order adopting in part the findings and recommendations was filed. (ECF No. 74.) The County Defendants' motion to dismiss was granted, the State Defendants' motion to dismiss was granted in part, and the matter was stayed pending the finality of the State Court action. (Id.) On February 11, 2019, the stay of this action was lifted, judgment was entered on behalf of the County Defendants, and Plaintiffs were granted leave to file a first amended complaint. (ECF No. 76.)

On March 26, 2019, Plaintiffs filed a first amended complaint against Julianne Mossler and David Eller (hereafter "Defendants"). (ECF No. 77.) On April 23, 2019, Defendants filed a motion to dismiss and request for judicial notice. (ECF Nos. 80, 81.) Plaintiffs filed an opposition and objections to the motion to dismiss on May 7, 2019. (ECF Nos. 82, 83.) On May 8, 2019, the matter was referred to the undersigned. (ECF No. 84.) On May 22, 2019, Defendants filed a reply to Plaintiffs' opposition and objections. (ECF No. 86.)

A hearing was held on the motion to dismiss on May 29, 2019, and the matter was submitted. (ECF No. 91.) On May 29, 2019 and May 31, 2019, Plaintiffs filed supplemental briefing and supplemental authority addressing the motion to dismiss. (ECF Nos. 92, 93, 94, 95.) On June 3, 2019, Plaintiffs' supplemental briefs were stricken from the record. (ECF No. 97.)

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued

litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief.  Starr, 652 F.3d at 1216.  "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)).

## III.

## FIRST AMENDED COMPLAINT ALLEGATIONS

Plaintiff Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory are all officers of the CCERR and WWSG which were registered 501(c)(3) non-profit organizations until December 2018.  (First Am. Compl. ("FAC") ¶¶ 3-5.)  CCERR was established to rescue horses and educate the public about animal abuse and neglect and WWSG was established to educate the public about post traumatic stress disorder and veteran's issues.  (FAC ¶ 3.)  Gina D. Gregory is the daughter of Matthew G. Gregory and Danella Gregory and was admitted to the State Bar of California on June 5, 2014.  (FAC ¶ 6.)  Gina Gregory became a certified instructor with Professional Association of Therapeutic Horsemanship in 2015, teaching therapeutic riding lessons to U.S. veterans in the Bay Area.  (Id.)

WWSG ran a contest that had thousands of free ticket entries and the contest clearly stated that "no purchase was necessary" and it was "void where prohibited."  (FAC ¶ 16.)  Defendants made the determination that WWSG ran a non-exempt raffle rather than an exempt raffle, lottery, or sweepstakes.  (Id.)  On April 17, 2017, Defendant Mossler filed an lawsuit in Alameda County Superior Court, People v. WWSG et al., No. RG 17856929, without conducting a reasonable investigation.  (FAC ¶ 21.)

Defendant Eller issued a cease and desist letter on August 16, 2016.  (FAC ¶ 25.)  The letter stated that it would take place immediately and that a request for a hearing would not stay the order.  (FAC ¶ 25.)  WWSG sent two timely responses to the cease and desist order dated August 16, 2016 and objected to all sanction letters, dated September 6, 2016 and December 8, 2016.  (FAC ¶ 17.)  The letters stated the basis for WWSG's objections, but no hearings were scheduled.  (Id.)

Plaintiffs bring two causes of action: 1) against Defendant Eller for violations of due process for the failure to provide a hearing; and 2) against Defendant Mossler for due process violations for imposing penalties without adequate notice and an opportunity to be heard.

## A. First Cause of Action

Defendant Eller issued the August 16, 2016 cease and desist letter and other August 16, 2016 correspondence addressed to WWSG referencing "Raffle Registration Denial & Revocation Due to Violation Due to Violations of Law - Check and Application Return." (FAC ¶ 36.) Defendant Eller determined that the drawing that WWSG was conducting was an illegal raffle in violation of California Penal Code § 320.5 without providing Plaintiffs with an opportunity to be heard. (Id.) The letter also stated that WWSG was in violation of section 320.5 for selling tickets online. (Id.) Defendant Eller ordered WWSG to "cease and desist from all raffle activities and solicitations by any means." (FAC ¶ 37.) The order applied to WWSG and all persons or entities working on their behalf. (Id.) Defendant Eller labeled the raffle illegal and demanded a financial report for the raffle under threat to impose a penalty of up to $1,000. (FAC ¶ 38.) In the August 16, 2016 cease and desist letter, Defendant Eller stated that the "Appeal and Request for a Hearing" form must be filed out and returned to request a hearing. (FAC ¶ 40.)

Matthew G. Gregory sent a letter with the required information to request a hearing within the thirty-day time frame required by California Government Code section 999.6(c)(1). (FAC ¶ 41.) The administrative law judge held that the letter was not a request for an appeal. (Id.) Matthew G. Gregory's September 12, 2016 letter addressed both the cease and desist letter and the September 6, 2016 imposition of penalties letter. (Id.) The letter contained the name, address, and registration number of WWSG and stated, "Our contest is not a 'raffle,' but an opportunity drawing, hence we should not be subjected to these rules. Contest tickets can be obtained for free in our drawing." (Id.) No hearing was scheduled. (FAC ¶ 42.)

A non-refundable deposit of $1,707.75 had been paid for an exhibitor booth on November 18-27, 2016 at the Los Angeles Auto Show of 2016. (FAC ¶ 43.) WWSG paid $1,895 in non-refundable deposits for events that had to be cancelled due to the August 16, 2016

cease and desist letter. (Id.) WWSG made the following deposits: $725 for the 2017 Pismo Beach Car Show, $500 for the 2017 Bar and Nightclub Show, $500 for the 2017 World Ag Expo Tulare, $100 for the 2016 Fairfield Budweiser Car Show, $30 for the 2016 Oakhurst Car Show, and $40 for the 2016 ClovisFest Festival. (Id.)

The officer-director Plaintiffs held promissory notes for loans made to WWSG and CCERR and are owed approximately $682,755 for their loans to WWSG and CCERR. (FAC ¶ 44.) The August 26, 2016 cease and desist letter revoked WWSG's raffle registration for the entire year of 2016. (FAC ¶ 45.)

A February 1, 2018 letter signed by Defendant Eller was uploaded to the RCT notifying that WWSG's registration had been refused and was automatically suspended and that WWSG could not conduct business in California, including soliciting charitable assets or donations. (FAC ¶ 46.) The letter was not mailed until February 8, 2018. (Id.)

## B.      Second Cause of Action

The February 1, 2018 letter, stated that the notice of imposition of penalty letters dated September 6, 2016 and December 6, 2016 are valid and enforceable. (FAC ¶ 53.) In the September and December 2016 letters, Defendant Mossler imposed penalties on WWSG for attending events. (FAC ¶ 54.) The letters imposed fines for events that occurred less than five days the cease and desist letter dated August 16, 2016. (Id.) The August 16, 2016 cease and desist letter went into effect before it was received by WWSG and WWSG was fined for attending events prior to receiving the cease and desist letter. (FAC ¶ 55.) Matthew G. Gregory received the letter on August 22, 2016, but WWSG was fined for attending an event on August 26, 2016, therefore receiving only four days-notice of the imposition of fines. (Id.) WWSG had paid for vendor space at the August 26, 2016 show and would not have been able to receive a full refund of the deposit. (Id.)

Defendant Mossler's September 6, 2016 letter stated that a $3,000 penalty was imposed for:

> 1) Friday, August 26, 2016, at the Good Guys Rod and Custom Association's 30th West Coast Nationals car show at the Alameda County Fairgrounds in Pleasanton; 2) As of September 6, 2016 WWSG continues to sell raffle tickets for

its January 1, 2017, drawing to win a CSX 4000 Shelby Cobra Continuation Series Cobra; and 3) As of September 6, 2016 WWSG continues to sell raffle tickets for its July 9, 2017, drawing to win a 2015 Shelby Mustang GT-350. (FAC ¶ 56.) WWSG sent a $3,000 penalty check that was cashed. (Id.)

Defendant Mossler sent a notice of imposition of penalties dated December 8, 2016 imposing penalties of $17,000 including $3,000 that was incurred without five-days' notice. (FAC ¶ 57.) The notice included fines for attending events on August 18-21, 2016, prior to receipt of the August 16, 2016 cease and desist order. (Id.) On January 4, 2017, Matthew G. Gregory sent a letter to Mossler requesting an appeal and notifying her that WWSG had been fined for events it did not attend. (FAC ¶ 58.)

The September 16, 2016 letter stated that penalties would continue to accrue at a rate of $100.00 per day until the violations are corrected. (FAC ¶ 61.) As of September 6, 2016, WWSG's donation website's shopping carts were fully disabled so that no one could make donations over the internet. (FAC ¶ 61.) On September 12, 2016, at approximately 10:00 a.m., in response to the letter, Matthew J. Gregory took down the entire website. (Id.) Matthew J. Gregory wrote a letter to Mossler explaining that he took down the entire website and expressing his confusion, but he never received a response. (Id.) After the website was taken down, calls were received questioning whether the car would be given away on the drawing date. (FAC ¶ 62.)

The September 6, 2016 penalty letter does not mention any opportunity to be heard. (FAC ¶ 63.) The letter stated that further penalties would be imposed if WWSG and its officers-directors did not timely remit payment of the penalty. (Id.) The letter imposed penalties of $100 per day for violations related to the sale of raffle tickets through WWSG's website. (Id.)

Plaintiffs are seeking monetary damages and declaratory relief.

## IV.

## REQUEST FOR JUDICIAL NOTICE

Along with their motion to dismiss, Defendants have requested that the Court take judicial notice of the following documents.

1. November 6, 2018 decision, with proposed decision, in administrative matter of

In re Wounded Warriors Support Group, case no. CT0213442/OAH No. 2018050074.

2. November 6, 2018 decision, with proposed decision, in the administrative matter of In re Central Coast Equine Rescue and Retirement, case no. CT0183312/OAH No. 2018050071.

3. November 6, 2018 Judgment on Verdict in People v. WWSG (Alameda County Superior Court No. RG17856929).

4. August 16, 2016 Cease and Desist Order issued to WWSG.

5. August 16, 2016 Raffle Registration Denial & Revocation Due to Violations of Law notice to WWSG.

6. September 6, 2016 Notice of Imposition of Penalties to WWSG.

7. December 8, 2016 Notice of Imposition of Penalties to WWSG.

8. February 8, 2018 Notice of Refusal to Register/Renew Registration and Automatic Suspension to WWSG.

Plaintiffs object to the Court taking judicial notice of all documents on grounds that shall be addressed below.

As a general rule, the court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion. United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011). There are two exceptions to this rule, when the complaint necessarily relies on the documents or where the court takes judicial notice of documents. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The incorporation by reference doctrine allows material that is attached to the complaint to be considered, as well as "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." Corinthian Colleges, 655 F.3d at 999. Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

/ / /

### A.     Records of Administrative Proceedings

The first two items are records of administrative proceedings regarding the current matter. Plaintiffs object to the Court taking judicial notice of these documents on the ground that the Court may not take judicial notice of the contents for the truth of the matter asserted. The Court may properly take judicial notice of administrative rules and records of administrative agencies. Barron v. Reich, 13 F.3d 1370 (9th Cir. 1994) (handbook of Wage and Hour Division); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279 (9th Cir. 1986), abrogated on other grounds by Astoria Federal Savings & Loan Ass'n v. Solimino, 501 U.S. 104 (1991) (administrative board decision); DCIPA, LLC v. Lucile Slater Packard Children's Hosp., 866 F.Supp.2d 1042, 1047-48 (D. Or. Oct. 20, 2011) (administrative rules); Jensen v. County of Sonoma, 2008 WL 5048203, at *3 (N.D. Cal. Nov. 25, 2008) (administrative decision and order). On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426–27 (3d Cir. 1999). Plaintiffs objection on this ground is overruled.

### B.     State Court Records

Defendants seek for the Court to take judicial notice of the Judgment on Verdict in People v. WWSG. Again, Plaintiffs object on the ground that the Court cannot take judicial notice of the facts contained within for the truth of the matter asserted. Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee, 250 F.3d at 689 (public records); White v. Martel, 601 F.3d 882, 885 (9th Cir. 2010) (court records); Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (court records). The Court may take judicial notice of the state court opinion for the existence of the opinion which is not subject to reasonable dispute. Lee, 250 F.3d at 690. Plaintiffs' objection on this ground is overruled.

### C.     Agency Records

The remaining documents for which judicial notice is sought are the notices and cease

and desist order referred to in Plaintiffs' first amended complaint. Defendants seek to admit these documents because they were attached to Plaintiffs' complaint. Plaintiffs object on the ground that the documents are offered for the truth of the matters asserted and that the conclusions within are not properly subject to judicial notice.

The incorporation by reference doctrine allows the court to consider documents that are extensively referred to in the complaint or that form the basis of the plaintiff's claims. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018) (citing Ritchie Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010)). Here, the documents which Defendants seek to have considered on the motion to dismiss have been incorporated by reference into the first amended complaint and form the basis of the claims. Specifically, Plaintiffs are alleging that the cease and desist order, penalty notices, and revocation of their charitable corporation status violated their due process rights by failing to provide notice and an opportunity to be heard. Plaintiffs' objection to the documents on this ground is overruled.

### D. Authenticity

Plaintiffs challenge the authenticity of the documents on the ground that the court documents are not certified or file stamped, none of the documents contain stamps to show that they are authentic, and there are no declarations or affidavits to authenticate the agency documents. Defendants argue that the documents were referenced to and attached to Plaintiffs' original complaint, are located on Defendant RCT's website, and are located on the Alameda Superior Court website and contain file stamps indicating their authenticity.

Plaintiffs object on the grounds of authenticity, citing California Evidence Code section 452(d). However, this is a federal action and the Federal Rules of Evidence apply to federal actions in federal court. Fed. R. Evid. 1101; Perrignon v. Bergen Brunswig Corp., 77 F.R.D. 455, 458 (N.D. Cal. 1978) (federal law governs where it is a purely federal question); see also Wray v. Gregory, 61 F.3d 1414, 1417 (9th Cir. 1995) (even in diversity cases the Federal Rules of Evidence ordinarily govern). Here, authenticity is governed by Rule 901 of the Federal Rules of Evidence. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the

proponent claims it is." Fed. R. Evid. 901(a).  Therefore, before evidence can be admitted the proponent must lay a foundation by evidence sufficient to find that item is what it is purported to be.  Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1182 (9th Cir. 1988).

A document can be authenticated by its distinctive characteristics, such as "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4).

First, Defendants have submitted two decisions by the administrative law judge as Exhibits A and B.  "Public records and government documents are generally considered not to be subject to reasonable dispute. . . .  This includes public records and government documents available from reliable sources on the Internet."  Paralyzed Veterans of Am. v. McPherson, No. C064670SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (quoting United States ex rel. Dingle v. BioPort Corp., 270 F.Supp.2d 968, 972 (W.D.Mich. 2003)).  Courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein.  Daniels –Hall v. National Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010).  Plaintiffs have not disputed the accuracy of the documents listed on the RCT website.

The decisions of the administrative law judge are located on the RCT website as Miscellaneous Documents, "Admin Decision Refusal to Renew Registration".  See http://rct.doj.ca.gov/Verification/Web/Search.aspx?facility=Y (search organization, Wounded Warriors Support Group and Central Coast Equine Rescue & Retirement).  The documents are signed by Antonette Cordero, Chief, Division of Legal Affairs and reflect the caption and case numbers of the administrative action.  After reviewing and comparing the documents submitted by Defendants in the request for judicial notice and those documents on the RCT websites and the Court finds that the documents have sufficient distinctive characteristics and are the same documents located on the RCT website.  In these circumstances the requirement of authentication is met.

Defendants submit the complaint for appointment of a receiver, involuntary dissolution, permanent injunction, damages and penalties, and judgment on the verdict in People v. WWSG,

Case No. RG17856929.  (Exhibits C and D.)  Both of these documents contain a file stamp and signature from the Clerk of the Superior Court of the Alameda Superior Court.  They also contain the caption and case number for the state court action.  Plaintiffs' included as an exhibit to their original complaint a copy of the first page of the state court complaint noting "Civil Complaint Uploaded to Registry of Charitable Trusts Website."  (ECF No. 1 at 342.)  The document is located on the RCT website and the Alameda County Superior Court website.  See http://rct.doj.ca.gov/Verification/Web/Search.aspx?facility=Y (enter Wounded Warriors Support Group, select registration type Raffle Registration, then Complaint).  The Court finds that the documents have sufficient distinctive characteristics and are the same document located on the RCT website.  In these circumstances the requirement of authentication is met.

Finally, Defendants seek to admit the August 16, 2016 cease and desist order and raffle registration denial & revocation due to violations of law-check and application return; September 6, 2016 notice of imposition of penalties; December 8, 2016 notice of imposition of penalties; and February 8, 2018 notice of: refusal to register/renew registration and automatic suspension. (Exhibits E-I.)  These documents were all referenced in and attached to Plaintiffs' original complaint.[1]  (See ECF No. 1 at 123-29 (Notice of: 1) Refusal to Register/Renew Registration 2) Automatic Suspension); 166-67, 229-30 (September 6, 2016 Notice of Imposition of Penalties); 170-73, 233-36 (December 8, 2016 Notice of Imposition of Penalties); 219-21 (August 16, 2016 Cease and Desist Order); 223-25 (August 16, 2016 Raffle Registration Denial & Revocation Due to Violations of Law - Check and Application Return).)  Plaintiffs contend that these are not the

---

[1] To the extent that Plaintiffs challenge the authenticity of the documents submitted for judicial notice which are the same documents Plaintiffs attached to their complaint filed April 16, 2018, there can be no reasonable dispute that these documents are authentic.  Plaintiffs are advised that under Rule 11 of the Federal Rules of Civil Procedure , by presenting a pleading, written motion, or other paper to the Court he is certifying that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."  Fed. R. Civ. Proc. 11(b).  Rule 11 provides for the imposition of sanctions when the Court finds that the Rule has been violated.  While the Court declines to make a finding that Plaintiffs arguments are made in bad faith at this time, Plaintiffs are advised that in the future arguments and assertions made without proper basis may be sanctioned as being made in bad faith.

same documents because their exhibits contained additional pages. However, the authenticity of the letters themselves are not subject to reasonable dispute.

These documents are also the same documents that are located on the RCT website as Correspondence from Registry, and on the raffle page as 2016 Raffle Revocation and 2017 Raffle Denial Letter, Raffle Cease and Desist order. <u>See</u> http://rct.doj.ca.gov/Verification/Web/Details.aspx?result=8a995753-a27b-475e-b463-4d9496b1d29e and http://rct.doj.ca.gov/Verification/Web/Search.aspx?facility=Y (enter Wounded Warriors Support Group, select registration type Raffle Registration).

Plaintiffs' objections on the grounds of authentication are overruled.

**E.     Miscellaneous Objections**

The Court has considered and overrules Plaintiffs' remaining objections to the documents. The Court grants Defendants' request for judicial notice.

**V.**

**DISCUSSION**

**A.     Arguments of the Parties**

Defendants move to dismiss Plaintiffs' first amended complaint on the grounds that 1) the due process claims are barred by the doctrine of issue preclusion; 2) Plaintiffs have failed to allege sufficient facts to state a due process claim; 3) Plaintiffs cannot state a due process claim against Defendants Eller and Mossler in their official capacities; and 4) Plaintiffs have not alleged any facts to state a claim against the DOJ, RCT, Becerra, Garcia, Harris, Ibanez, and Kim.

Defendants argue that the administrative law judge made a finding that Plaintiffs were adequately informed of the right to appeal and how to appeal and that despite this information, WWSG took no action that could reasonably have been construed as an appeal. The ALJ found that none of the letters sent by Matthew G. Gregory contained the basis for an appeal and were not reasonably understood to constitute an appeal. The administrative law judge concluded that WWSG failed to take the necessary steps to exercise its right to a formal administrative hearing before an administrative law judge on the cease and desist order and September and December

penalty orders.  The administrative law judge found that the findings that WWSG operated an illegal raffle were final and binding.  Finally, the administrative law judge found that there was sufficient basis to support the February 8, 2018 suspension and refusal to renew WWSG's registration.  Defendants contend that all elements to support collateral estoppel are present and Plaintiffs have not stated a claim based on the August 16, 2016 revocation letter.

Defendants also argue that the first amended complaint does not include sufficient facts to state a due process claim on behalf of CCERR, Matthew G. Gregory, Danella Gregory, Matthew J. Gregory, or Gina Gregory.  Defendants contend that the allegations only pertain to WWSG and that the other plaintiffs have failed to show that they have a protected property or liberty interest in any of the adverse action taken against WWSG.  Defendants also argue that WWSG has failed to state a claim arising from the August 16, 2016 revocation letter because there are no facts alleged to demonstrate that WWSG had a protected liberty interest in maintaining its raffle registration for the September 1, 2016 to August 31, 2017 period.  Defendants contend that Plaintiffs' allegation that the letter revoked WWSG's charitable organization registration for the September 1, 2016 to August 31, 2016 period is unreasonable and irrational as the letter itself states it applies to the upcoming raffle period.

Defendants state that the Eleventh Amendment bars Plaintiffs' claims against Defendants Eller and Mossler in their official capacity.  Defendants note that these official capacity claims were previously dismissed without leave to amend and request that the Court enforce its prior order and dismiss the official capacity claims without leave to amend.

Finally, Defendants argue that the first amended complaint does not allege any claims against any defendant other than Eller and Mossler and request that the DOJ, RCT, Becerra, Garcia, Harris, Ibanez, and Kim be dismissed from this lawsuit.

Plaintiffs counter that none of the claims asserted in the first amended complaint against Defendants Mossler and Eller are barred by issue preclusion.  Plaintiffs contend that the administrative law judge stated that she was not deciding any constitutional issues and that the first amended complaint clearly states a claim that Defendant Mossler did not provide five days' notice prior to imposing penalties on WWSG and that Defendant Eller failed to provide a

14

hearing.

Plaintiffs contend that Defendant Eller served the notice of refusal to renew registration and automatic suspension on February 8, 2018, but that it went into effect on February 1, 2018. Plaintiffs argue that the notice deprived them of their rights before notice had occurred and violated the Fourteenth Amendment. Plaintiffs argue that other rights were deprived prior to notice and an opportunity to be heard, such as "the taking of the right to "solicitations by any means' prior to providing notice and an opportunity to be heard, demanding financial reports for the drawings held by WWSG and CCERR; failure to provide a hearing after receiving Matthew G. Gregory's September 12, 1026 [sic] letter; forcing WWSG to not attend multiple events that it had paid deposits and up-front, nonrefundable fees, ahead of time to attend, resulting in an unlawful taking of monetary property without adequate notice and an opportunity to be heard; retroactively revoking raffle registration status of WWSG and CCERR on August 16, 2016 after most of the 2016 raffle year was over with; putting the Cease and Desist Order of August 16, 2016 into effect prior to providing adequate notice and opportunity to be heard; and causing the charities inability to repay promissory notes to Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory." (Pls.' Memo. of P&A in Opp. to Defs.' Mot. to Dismiss the First Am. Compl., 6, ECF No. 82.)

Plaintiffs counter that the first amended complaint contains sufficient facts to state a claim by all Plaintiffs. First, Plaintiffs argue that Danella Gregory, Matthew G. Gregory, and Matthew J. Gregory were officers and directors ("Officer-Director Defendants") of both WWSG and CCERR. Plaintiffs contend that a deprivation of the rights of CCERR and WWSG is a deprivation of the rights of each of its officer directors as well as anyone acting on behalf of the organization. Plaintiffs state that Defendants Eller and Mossler are being sued in their official capacities for declaratory relief.

Plaintiffs state that the jury in <u>People v. WWSG</u> returned a verdict that made a characterization as to the drawings but did not decide the Fourteenth Amendment issues. Further, Plaintiffs contend that the administrative law judge did not decide whether due process rights were violated. Plaintiffs argue that although the administrative law judge found that

WWSG had not perfected its appeal for any of the three actions taken by the RCT, she did not make a Fourteenth Amendment finding. Plaintiffs contend that the ALJ did not decide that the raffles were in violation of the Penal Code. The issue of the legality of the raffle was at issue in People v. WWSG, and Plaintiffs presented evidence that multiple individuals obtained free tickets for the drawing.

Plaintiffs contend that whether they received notice and an opportunity to be heard has not been decided by any tribunal. Plaintiffs argue that they were not required to request an appeal to the administrative law judge who could not decide the Fourteenth Amendment issues. Plaintiffs assert that the characterization of the drawings as nonexempt raffles as opposed to any other type of contest was illegal in violation of the Fourteenth Amendment because that determination could only be made by an adjudicator such as the court, not a mere investigator. Plaintiffs argue that Defendants arguments totally miss the fact that the claims alleged in the first amended complaint are due process claims.

Plaintiffs argue that Defendants have not established any authority that state investigators have the authority to determine that the drawing was a non-exempt raffle rather than another type of legal contest. Any appeal taken in connection with raffle activities must be brought under Penal Code section 320.5(j) and civil penalties for violations with intent to deceive or defraud any charity or individual cannot exceed $10,000. Further, Plaintiffs argue that Defendants have presented no authority as to whether the term "mailing" in section 12591.1(e) is effective upon being placed in the mail or upon receipt. Plaintiffs argue that this is irrelevant because the August 22, 2016 letter failed to provide five days' notice regardless of when you start counting.

Defendants reply that Plaintiffs' argument that the due process claims have not been previously adjudicated misses that the issues themselves have been decided. Defendants contend that Plaintiffs have been provided with the base requirement of due process that they had an opportunity to be heard at a reasonable time and in a reasonable manner. Defendants argue that the hearing afforded Plaintiffs can be before or after the deprivation. Defendants contend that the administrative law judge's finding that Plaintiffs did not avail themselves of the appeals process is dispositive of their due process claims.

Defendants further argue that Plaintiffs ignore longstanding precedent regarding corporate autonomy and that corporate officers are distinct from the corporate enterprise. Defendants contend that the director, officers, and guarantors of the corporation have no individual right of action against third parties for damages that result indirectly to the individual because of injury to the corporation.

Defendants contend that Plaintiffs' argument regarding the official capacity claims is made in bad faith and the objections to the request for judicial notice are frivolous and made in bad faith.

**B.    Issue Preclusion**

Generally, the preclusive effect of a prior judgment is referred to as res judicata. <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008); <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 321 (9th Cir. 1988). Res judicata includes both claim preclusion and issue preclusion. <u>Americana Fabrics, Inc. v. L & L Textiles, Inc.</u>, 754 F.2d 1524, 1529 (9th Cir. 1985); <u>Robi</u>, 838 F.2d at 321. Claim preclusion treats a judgment that has been previously entered as the full measure of relief between the same parties on the same claim or cause of action and prevents relitigation for all grounds of recovery or defenses that were previously available to the parties regardless of whether they were asserted or decided in the prior proceeding. <u>Americana Fabrics, Inc.</u>, 754 F.2d at 1529; <u>Robi</u>, 838 F.2d at 321-22; <u>Wojciechowski v. Kohlberg Ventures, LLC</u>, __ F.3d ___, 2019 WL 2017365, at *2 (9th Cir. May 8, 2019). Issue preclusion prevents relitigation, even on a different claim, of all "issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." <u>Robi</u>, 838 F.2d at 322 (quoting <u>Segal v. American Tel. & Tel. Co.</u>, 606 F.2d 842, 845 (9th Cir.1979)); <u>Americana Fabrics, Inc.</u>, 754 F.2d at 1529; <u>White v. City of Pasadena</u>, 671 F.3d 918, 926 (9th Cir. 2012). The preclusive effect of a prior state judgment applies to a subsequent federal § 1983 suit. <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 83 n.6, 85 (1984); <u>Allen v. McCurry</u>, 449 U.S. 90, 97-105 (1980).

Defendants argue that the first five elements of issue preclusion are met and Plaintiffs cannot reasonably dispute that the second to fifth elements have been satisfied. Defendants assert that the issues are the same in that the ALJ concluded that WWSG was adequately

informed of the right to appeal and how to appeal the administrative actions; despite the notice, WWSG took no action that would reasonably be construed as an appeal; WWSG failed to take the necessary steps to exercise its rights to appeal before an administrative law judge on the cease and desist orders and penalty orders; and there was sufficient basis to support the February 8, 2018 suspension and refusal to renew WWSG's registration; and the jury determined that WWSG, CCERR, Matthew G. Gregory, and Matthew J. Gregory operated illegal raffles. Plaintiffs do not address the second through fifth elements, but argue that issue preclusion does not preclude their claims because the issue of whether due process was provided has not been litigated.

It is well settled that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra, 465 U.S. at 81 (1984). "California applies the 'primary rights' theory to claim preclusion "under which the invasion of one primary right gives rise to a single cause of action." Robi, 838 F.2d at 324. Whether the due process claim involves the same primary right as the prior actions determines the scope of the cause of action which bears on claim preclusion. Castillo v. City of Los Angeles, 92 Cal.App.4th 477, 486 (2001). Here, Defendants are not arguing that claim preclusion applies, but are contending that certain issues have previously been decided and these decisions have preclusive effect in this action. Specifically, Defendants contend that the state court action decided the issue of whether the contest was a non-exempt raffle and the administrative proceeding determined that Plaintiffs were provided with notice of the right to appeal, how to appeal the administrative actions, and that their letters did not constitute an appeal. Plaintiffs do not address the issues, but argue that their Fourteenth Amendment claims have not previously been decided.

It is well established that "the determination of a question directly involved in one action is conclusive as to that question in a second suit." B & B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct. 1293, 1302 (2015) (quoting Cromwell v. County of Sac, 94 U.S. 351, 354 (1877)); see also Pike v. Hester, 891 F.3d 1131, 1138 (9th Cir. 2018) ("Issue preclusion, or collateral estoppel, precludes relitigation of an issue already litigated and determined in a previous

proceeding between the same parties."). "[T]he issue-preclusion principle means that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " Bravo-Fernandez v. United States, 137 S. Ct. 352, 356 (2016) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970). Once an issue has been decided by a court it is "forever settled between the parties[.]" B & B Hardware, Inc., 135 S. Ct. at 1303.

"[T]he general rule is that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " B & B Hardware, Inc., 135 S. Ct. at 1303 (quoting Restatement (Second) of Judgments § 27, p. 250 (1980)). "A federal court applying issue preclusion 'must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered.' " Pike, 891 F.3d at 1138 (quoting Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 993 (9th Cir. 2001)); Migra, 465 U.S.at 81; see also 28 U.S.C. § 1738 (State judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.").

Issue preclusion also applies to administrative agency decisions and "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." B & B Hardware, Inc., 135 S. Ct at 1303 (citations omitted); Astoria Fed. Sav. & Loan Ass'n, 501 U.S. at 107. The Supreme Court has held that the right to a jury trial does not negate the effect of an issue preclusive judgment, even when that judgment is entered by a juryless tribunal. Id. In determining if issue preclusion applies to agency decisions, the court applies the relevant state-law test to determine if the decision meets the state's criteria necessary to give preclusive effect to the agency decision. Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006). California recognizes the preclusive effect of administrative proceedings in a subsequent court action between the same parties. Murray v.

Alaska Airlines, Inc., 50 Cal.4th 860, 879 (2010); Castillo, 92 Cal.App.4th at 481. However, California does "not give preclusive effect to judgments rendered in proceedings that fail to comply with the minimum standards of due process." White, 671 F.3d at 926 (quoting Clements v. Airport Auth. of Washoe County, 69 F.3d 321, 328 (9th Cir.1995)).

Under California law, for issue preclusion to apply "(1) 'the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding'; (2) the issue to be precluded 'must have been actually litigated in the former proceeding'; (3) the issue to be precluded 'must have been necessarily decided in the former proceeding'; (4) 'the decision in the former proceeding must be final and on the merits'; (5) 'the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding'; and (6) application of issue preclusion must be consistent with the public policies of 'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.' " White, 671 F.3d at 927 (quoting Lucido v. Superior Court, 51 Cal.3d 335 (1990)); accord Castillo, 92 Cal.App.4th at 481-483. The party seeking to rely on issue preclusion has the burden to show that each element of issue preclusion has been met. Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1050 (9th Cir. 2008).

1.    Issue Preclusive Effect of State Court Judgment

On April 17, 2017, a lawsuit was filed against Plaintiffs and Gregory Motorsports in Alameda County Superior Court, People v. WWSG, No. RG17856929. (FAC ¶ 20.) Following a jury trial, a verdict was returned and judgment was entered in People v. WWSG, et al., No. RG17856929 (Alameda Sup. Ct. Nov. 6, 2018). (ECF No. 81 at 20-24.) To determine if the judgment is entitled to preclusive effect on the issue of whether WWSG operated a non-exempt raffle, the Court considers the factors identified in White, 671 F.3d at 927.

a.    The Issue of Whether the Raffle was Non-Exempt is Identical

First, the Court considers if the issue litigated was identical to that raised in this action. White, 671 F.3d at 927. In the Ninth Circuit, the following factors are considered in determining whether the issues are identical:

///

(1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
(2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
(3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
(4) how closely related are the claims involved in the two proceedings?

Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904, 912 (9th Cir. 1997); accord Ghalehtak v. Fay Servicing, LLC, 304 F.Supp.3d 877, 887 (N.D. Cal. 2018), aff'd, No. 18-15722, 2019 WL 1375768 (9th Cir. Mar. 19, 2019).  These factors are not mechanically applied.  Ghalehtak, 304 F.Supp.3d at 887.

In the state court proceeding the jury was determining, in addition to other issues, whether the contests conducted by Plaintiffs were non-exempt raffles in violation of California's regulations.  The complaint filed in the state court alleged that WWSG had been conducting illegal raffles since 2011 as its main source of revenue.  (ECF No. 81 at 29.)  WWSG advertised that the raffle proceeds would be used to support veterans through a therapeutic equestrian program, but no such program existed.  (Id.)  It was alleged that the Gregory family members were fiduciaries and were legally required to put the interests of the charitable beneficiaries ahead of their own interests but the Gregory family diverted the charitable assets and used the moneys for their own benefit.  (Id. at 30.)

The complaint alleged that in August 2016, the RCT issued a cease and desist order to WWSG on the grounds that it was not eligible to operate a raffle in California under Penal Code section 320.5, subdivision (c) and was operating an illegal raffle on the internet in violation of Penal Code section 320.5, subdivision (f)(2).  (ECF No. 81 at 35.)  Also, in August 2016, the RCT issued cease and desist letters to CCERR and WWSG revoking their raffle registering for the period from September 1, 2015 to August 31, 2016 and denying their raffle applications for the year beginning September 1, 2016.  (Id.)  WWSG created a new website and continued selling raffle tickets online at www.wounded-warriors.org and the Gregory family continued selling raffle tickets in-person at car shows throughout California, Arizona and Nevada.  (Id. at 36.)  In an attempt to circumvent the cease and desist order, WWSG held the raffle drawing on

January 1, 2017, in Chandler, Arizona.  (Id.)

Specifically, in the breach of fiduciary duty claim against Plaintiffs Matthew G. Gregory, Danella J. Gregory, Matthew J. Gregory, and Gina D. Gregory, it is alleged that WWSG operated in violation of cease and desist orders and the revocation of the raffle permit.

> 54.  In August 2016, the Registry issued a cease and desist order to WWSG for selling raffle tickets over the internet in violation of Penal Code section 320.5, subdivision (f)(2).

> 55.  The cease and desist orders instructed the organizations and all persons and entities associated with them to "stop all raffle activities and solicitations by any means. '  Although WWSG briefly took down its website and stopped selling raffle tickets online, defendants continued to solicit raffle ticket sales at car shows throughout California.  These violations of the Registry's cease and desist order by defendants caused WWSG to incur penalties of $20,000.00.

> 56.  Despite having its' raffle application denied, WWSG created a new website where it offers raffle tickets for sale online, including in California, but lists its address at a UPS Store in Arizona.  It then conducted its raffle drawing on January 1, 2017, in Chandler, Arizona.  WWSG is still registered as an active California nonprofit public benefit corporation, and subject to the laws of the State of California and orders issued by the Attorney General.  The actions described in this section violate the Registry's cease and desist orders, and Corporations Code section 5231, 12 subdivision (a).

(ECF No. 81 at 41.)

The cause of action for operating an illegal raffle alleged

> 92.  In every year it conducted a raffle, WWSG violated Penal Code section 320.5, subdivision (a)(4)(A) because its expenses exceeded revenue, and none of the revenue generated was used to support a beneficial or charitable purpose.

> 93.  On information and belief, since 2011, WWSG has illegally sold raffle tickets, and conducted its annual raffle over the internet in violation of Penal Code section 320.5, subdivision (f)(2).

> 94.  Further, in August 2016, the Registry revoked and denied raffle permits for CCERR and WWSG.  At the same time, the Registry issued cease and desist orders to both organizations directing them to stop all raffle activities and solicitations by any means.  But defendants continued to sell raffle tickets, including over the internet, and conduct raffle activities, including a raffle drawing on January l , 2017, without a permit and in violation of the Registry's cease and desist order.

(Id. at 48.)

The cause of action alleging failure to comply with regulations and orders of the Attorney General alleged, "Defendants' actions as described in this Complaint violated Government Code section 12599.6, subdivision (f)(l) by operating CCERR and WWSG without registering as a

charity, by operating WWSG without registering for raffles, soliciting raffle ticket sales and engaging in raffle activities in violation of the cease and desist orders, and by engaging in raffle activities after revocation of raffle registration and denial of raffle permits. (Id. at 49.) The jury determined that WWSG had conducted non-exempt raffles in violation of the Attorney General's regulations and orders three times. (ECF No. 81 at 21.)

Additionally, as discussed in the findings and recommendations, filed September 6, 2019, the state court action and administrative proceedings are based on the same facts underlying this action. (ECF No. 62 at 19-28.) Both the state court proceedings and the instant action involve the same contests conducted by WWSG. The evidence and argument advanced in the state court proceeding in determining if the contests were a non-exempt raffle under California law, as relevant to the allegations raised in this action, would be the same in both proceedings. The discovery and pretrial preparation in the state court action to adjudicate whether the contests were a non-exempt raffle would reasonably be expected to involve the same evidence, same arguments, and same legal issue. In fact, Plaintiffs were attempting to use this action to require Defendants to return the raffle tickets that were obtained during discovery in the state court action. (ECF No. 62 15 27.) Finally, Plaintiffs' claims in this action allege that the defendants improperly determined that they were conducting a non-exempt raffle and whether the raffle was non-exempt is the issue that the state court has already decided. The issue of whether the contest was a non-exempt raffle is identical in both the state court and instant actions.

b.    **The Remaining Factors Weigh in Favor of Applying Issue Preclusion to State Court Judgment**

Although Plaintiffs do not contest Defendants' statement that there is no reasonable argument that elements two through five have been met, the Court shall briefly address each element. Here, the state court matter went to a jury trial after which the jury entered a verdict finding that Matthew G. Gregory and Matthew J. Gregory operated illegal non-exempt raffles in the State of California six times; CCERR conducted a non-exempt raffle in violation of the Attorney General's regulations and order one time; and WWSG conducted non-exempt raffles in violation of the Attorney General's regulations and Orders three times. (ECF No. 81 at 21.) The

finding that WWSG conducted non-exempt raffles in violation of the Attorney General's orders necessarily decided that the contest in 2016 was a non-exempt raffle.  The issue of whether the contests were a non-exempt raffle was actually litigated and was on the merits in the prior proceeding.

The California Rules of Court provide that

> Unless a statute or rules 8.108, 8.702, or 8.712 provide otherwise, a notice of appeal must be filed on or before the earliest of:
> (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled "Notice of Entry" of judgment or a filed-endorsed copy of the judgment, showing the date either was served;
> (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled "Notice of Entry" of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or
> (C) 180 days after entry of judgment.

Cal. R. Ct. 8.104(a)(1).  Here, judgment was entered in the jury trial on November 6, 2018.  The latest date that Plaintiffs would have to file a notice of appeal was May 6, 2019.  The date has passed and Plaintiffs have not filed a notice of appeal in the state court action.  See https://publicrecords.alameda.courts.ca.gov/PRS/Case/CaseDetails/UkcxNzg1NjkyOQ%3d%3d (last visited May 20, 2019).  The judgment in the state court action is final.[2]

Plaintiffs in this action are the same defendants against whom judgment was entered in the state court action.  Defendants in this action are in privity with the State of California as the RCT is the department within the State of California that regulates nonprofit organizations; and the DOJ, of which Defendant Mossler was the prosecuting attorney in the state court action, is charged with enforcing the state regulations governing charitable organizations and raffles.

Applying issue preclusion serves the public policies underlying the doctrine in this instance.  Giving preclusive effect to the state court judgment promotes judicial economy by minimizing repetitive litigation as it is clear that the issue of whether the contest was a non-exempt raffle has already been litigated and decided in the state court.  Applying issue preclusion protects the defendants from vexatious litigation on an issue that has already been fully litigated in the state court.  Finally, giving preclusive effect to the state court judgment minimizes the

---

[2] To the extent that Plaintiffs are arguing that the state verdict was wrong, their remedy was to file an appeal of the verdict in state court.  Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003).

possibility of inconsistent judgments that undermine the integrity of the judicial system, and provide repose and finality.

After consideration of the above factors and the public policy issues, the Court finds that issue preclusion applies in this instance.  It is recommended that the issue of whether the contests were a non-exempt raffle has been decided in the state court and that this issue be determined as conclusive between these parties.

2.    Issue Preclusive Effect of Administrative Proceeding

**a.    Whether the administrative proceedings possessed the requisite judicial character to receive preclusive effect in these proceedings**

WWSG received an adverse decision from the administrative law judge on their application for renewal of their charitable organization registration.   (ECF No. 81 at 11.) Defendants argue that issue preclusion should apply to the administrative law judge's decision. "[A] state administrative determination of a disputed issue of fact is entitled to preclusive effect provided that the state administrative agency acted in a judicial capacity and had an adequate opportunity to litigate."  Mack, 798 F.2d at 1283.  As the Supreme Court stated,

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality.  "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."  United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).  Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.  To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).  The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, see University of Tennessee v. Elliott, 478 U.S. 788, 798, 106 S.Ct. 3220, 3225–26, 92 L.Ed.2d 635 (1986), which acts in a judicial capacity.

Astoria Fed. Sav. & Loan Ass'n, 501 U.S. at 107–08.

For a prior administrative proceeding to receive issue preclusive effect, whether upheld on review or not reviewed, the administrative agency must "act[ ] in a judicial capacity and

resolve[ ] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." White, 671 F.3d at 927. Courts apply issue preclusion to both issues of fact and issues of law decided in an administrative proceeding. Eilrich v. Remas, 839 F.2d 630, 634 n.2 (9th Cir. 1988); Guild Wineries & Distilleries v. Whitehall Co., 853 F.2d 755, 758 (9th Cir. 1988); Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994), as amended (Dec. 27, 1994).

In determining whether the agency is acting in a judicial capacity, California courts consider a number of factors, including whether:

> (1) the administrative hearing was conducted in a judicial-like adversary proceeding; (2) the proceeding required witnesses to testify under oath; (3) the agency determination involved the adjudicatory application of rules to a single set of facts; (4) the proceedings were conducted before an impartial hearing officer; (5) the parties had the right to subpoena witnesses and present documentary evidence; and (6) the administrative agency maintained a verbatim record of the proceedings.

White, 671 F.3d at 928 (quoting Imen v. Glassford, 247 Cal.Rptr. 514, 518 (1988)). Additionally, the court may consider " 'whether the hearing officer's decision was adjudicatory and in writing with a statement of reasons,' and whether the hearing officer's decision was adopted by the director of the agency 'with the potential for later judicial review.' " White, 671 F.3d at 928 (quoting Imen, 247 Cal.Rptr. at 518).

The Court notified the parties that they were required to address at the May 29, 2019 hearing whether the factors identified in White could be decided on a motion to dismiss or if it would require the presentation of evidence outside the complaint such that it would require a motion for summary judgment to be filed. At the May 29, 2019 hearing, Plaintiffs argued that this was the improper stage of the proceedings to decide the issue and Defendants cited Arnett v. Office of Admin. Hearings, 49 Cal.App.4th 332 (1996) in support of the argument that the factors are addressed in the statutes governing hearings under the Administrative Procedures Act ("APA").

Plaintiffs argue that the Court cannot decide issue preclusion on a motion to dismiss. However, as discussed above, the Court can take judicial notice of documents and consider those documents that are relied on in the complaint on a motion to dismiss. Therefore, issue preclusion

can be decided in a motion to dismiss if Defendants have provided documents of which the Court can take judicial notice or that have been incorporated by reference in the first amended complaint.  See White, 671 F.3d at 926, 929-931 (affirming the district court's finding that issue preclusion applied on a motion to dismiss); Fairbank v. Underwood, 986 F. Supp. 2d 1222, 1231 n.5 (D. Or. 2013) ("A district court may consider the affirmative defenses of claim or issue preclusion on a Rule 12(b)(6) motion to dismiss.").  The Court asked the parties to address whether the factors identified in White can be decided on a motion to dismiss or require documents outside the complaint.

Defendants argue that the factors to be considered are set forth in the statutory text of the APA, and cite to Arnett, in which the court discussed the administrative hearing process under California law.

> Under the Administrative Procedure Act (APA) (see Gov. Code, § 11370), the Office of Administrative Hearings serves as a "centralized office, responsible for the conduct of administrative hearings." (1 Ogden, Cal. Public Agency Practice (1996) The ALJ and Decisionmaking, § 36.02[1] [a], p. 36-4; see also Gov. Code, §§ 11370.2-11370.3.)  The director of that office appoints and maintains a staff of administrative law judges to conduct proceedings under the APA. . . . When assigned to conduct a hearing, the administrative law judge "shall be deemed an employee of the office and not of the agency to which he or she is assigned." (Gov. Code, § 11370.3.)

Arnett, 49 Cal.App.4th at 338 n.2.

Under the Supervision of Trustee and Fundraisers for Charitable Purposes Act, Cal. Gov't Code §§ 12580, et seq, WWSG had the right to contest revocation of their charitable organization status in an administrative hearing conducted pursuant to the APA.  Cal. Gov't Code,§ 12591(e); Cal. Code Regs. tit. 11, § 999.6(c).   The procedures that apply to administrative proceedings are set forth in the APA, Cal. Gov't Code §§ 11500, et seq.

The California Government Code establishes that the administrative law judge is acting in a judicial capacity.  WWSG was provided with rights under the APA: including the right to be represented by an attorney; the right to conduct discovery; the right to subpoena, call, examine and cross-examine witnesses; the right to introduce documentary evidence; and the right to make oral or written argument, present defenses, and to receive a written decision.  Gov't Code §§ 11506, 11507.6, 11507.7, 11509, 11511, 11512, 11513, 11514, 11518.  Testimony at

the hearing was given under oath. Cal. Gov't Code § 11513(a). The proceedings are reported by stenographic reporter, or upon the consent of the parties, are reported electronically. Cal. Gov't Code § 11512. WWSG had the right to seek judicial review of the administrative law judges decision. Cal. Gov't Code § 11523.

At the May 29, 2019 hearing, Plaintiffs cited Humpheries v. County of Los Angeles, 554 F.3d 1170 (2008) reversed on other grounds by Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29 (2010)), to support their argument that the hearing officer is not impartial because he is selected by the Attorney General. In Humpheries, parents were falsely accused of child abuse and were included in California's Child Abuse Central Index ("CACI"). 554 F.3d at 1175. The criminal court dismissed the criminal charges against them and after the parents filed a petition they were found to be factually innocent of the charges. Id. A juvenile dependency petition was dismissed with all counts being found untrue. Id. The parents sought to have their names removed from the CACI, but there was no procedure for them to have their names removed from the list of suspected child abusers. Id. Where the CACI erroneously lists an individual as a child abuser, he has three options to have his name removed from the list: 1) informally persuade the investigator who submitted his name in the first place to remove his name; 2) wait until someone consults the CACI and then rely on their independent conclusion regarding the quality of the evidence disclosed; or 3) once an agency makes an adverse decision based on the CACI report, some individuals can appeal the decision in court. Id. at 1196.

In addressing the first option, that the individual may informally persuade the investigator to remove their name from CACI, the court stated, "The Due Process Clause does not impose the separation of powers on the state or local governments. But the Due Process Clause may demand a separation of functions." Humpheries, 554 F.3d at 1197 (internal citations omitted). Plaintiffs rely on this language to argue that the DOJ investigators could not determine that they had conducted a non-exempt raffle and that the administrative law judge was not impartial because he was appointed by the Attorney General. However, Humpheries goes on to state,

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a

presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias of prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

Id. at 1197.

Plaintiffs argue that like the plaintiffs in Humphries their only recourse was to write a letter to the investigator who had determined that they were conducting an illegal raffle. However, the instant case is not similar to the situation in Humpheries.  In Humpheries, the only way to have a name removed from the CACI was to convince the investigator who submitted the name to remove it.   Here, the investigators who initially determined that Plaintiffs were conducting a non-exempt raffle were not the same individuals who adjudicated the findings. Although the investigators made the finding that Plaintiffs were conducting an illegal raffle after conducting their investigation, Plaintiffs had the ability to challenge the finding by filing an administrative appeal of the determination which would afford them a hearing before an administrative law judge.  Therefore, the Court finds that there was a separation of functions sufficient to comply with due process.

Further, there is no merit to Plaintiffs' argument that the administrative law judge was not impartial because she was appointed by the Attorney General to adjudicate complaints. Administrative law judges are not appointed by the agency but are appointed and assigned to the agency by the Director of the Department of General Services of the Administrative Hearings and are not employees of the agency to which they are assigned.  Cal. Gov't Code §§ 11370.3, 11502.  The Court finds that the proceedings were conducted by an impartial hearing officer.

The administrative law judge's decision applied the adjudicatory application of rules to a single set of facts.  The administrative law judge considered that WWSG was authorized to conduct a raffle in 2015-2016, had been issued a cease and desist order for operating an illegal raffle in violation of the California Penal Code and had been issued fines for violating the cease and desist order, and found that WWSG had failed to present evidence to support a finding that it would be in the public interest to renew its registration as a California nonprofit benefit corporation for charitable purposes.  (ECF No. 81 at 6-12.)  The administrative law judge issued

her decision in writing setting forth her statement of reasons for the decision which has been adopted by the agency.  (Id. at 5-12.)

The administrative proceedings had the required judicial character to be given preclusive effect in this action.

### b.    Whether issue preclusion should apply

Here, Defendants seek to apply issue preclusion to the administrative law judge's decision that WWSG did not appeal the revocation and denial of their raffle registration and the imposition of fines.[3]

The issue to be decided in this action is the identical issue that was decided by the administrative law judge.  Plaintiffs contend here that the documents they submitted in response to the denial and revocation of their raffle permit and notice of imposition of fines were sufficient to constitute an appeal of the actions and the agency violated due process by failing to provide them with a hearing.

The administrative law judge made the following factual findings:

> 5.  On August 16, 2016, the Registry issued a Cease and Desist Order against WWSG pursuant to Government Code section 12591.1.  The Cease and Desist Order alleged that WWSG was not eligible to operate a raffle in California under Penal Code section 320.5, subdivision (c), and was operating an illegal raffle on the internet in violation of Penal Code section 320.5, subdivision (f)(2).  The Cease and Desist Order directed WWSG to cease and desist "from all raffles and solicitations by any means" effective immediately.  The Cease and Desist Order notified WWSG of its right to appeal in writing within 30 days, and that the Cease and Desist Order would remain in effect until the hearing was resolved.  WWSG was also notified that if it did not appeal, the right to challenge the Cease and Desist Order would be waived and the order would remain in effect until withdrawn by the Attorney General.  WWSG did not file an appeal from the Cease and Desist Order.
> 6.  On September 6, 2016, the Registry issued a Notice of Imposition of Penalties (September Penalty Order) against WWSG in the amount of $3,000.  The September Penalty Order alleged that WWSG had violated the August Cease and Desist Order by continuing to solicit donations for its raffle activities at two events and on the internet.  WWSG was notified that failing to pay the full amount of the penalty within 30 days would subject it to additional penalties and further legal action.  WWSG paid the full amount of the penalty by check dated September 26, 2016.  WWSG did not file an appeal from the September Penalty

---

[3] To the extent that Defendants seek to impose issue preclusion to the administrative law judge's finding that the agency determination that the raffle was non-exempt, the decision was not based on the merits but was due to the finding that Plaintiffs had not appealed the decision and therefore it had become final.  (ECF No. 81.)  Accordingly, the administrative law judge's determination that the raffle was not non-exempt is not entitled to preclusive effect in this action.

Order.

7. On December 8, 2016, the Registry issued a second Notice of Imposition of Penalties (December Penalty Order) against WWSG in the amount of $17,000. The December Penalty Order alleged that WWSG had continued to violate the August Cease and Desist Order by continuing to solicit donations for its raffle activities at various locations in California and on 17 dates from August 18 through November 27, 2016. WWSG was notified that failing to pay the full amount of the penalty within 30 days would subject it to additional penalties and further legal action. WWSG did not file an appeal from the December Penalty Order. WWSG has not paid this penalty.

. . .

10. WWSG corresponded with the Registry after each of the administrative actions set forth above. In each letter WWSG complained about the agency's actions, and provided an explanation of its conduct either before or after the agency's action. But none of the letters constituted an appeal. None of the letters uses the word appeal or any similar word. None of the letters contains a written statement of the basis of the appeal. The agency reasonably did not understand the correspondence to constitute an appeal, and for that reason did not provide WWSG with an administrative hearing in any of the three matters.

(ECF No. 81 at 7-8.)

At the administrative hearing, Plaintiffs argued that RCT "illegally deprived it of an administrative hearing on each of the three administrative actions, rendering the Registry's administrative actions invalid." (ECF No. 81 at 10.) The ALJ made the following findings of law.

The evidence fails to establish that WWSG filed an appeal from any of the three administrative actions, and for that reason, WWSG was not entitled to an administrative hearing. (Findings 6, 7, 8, and 10.)

The rules for perfecting an appeal from an administrative action are set forth in Government Code section 12591.1 , and, section 999.6, subdivision (c). The appeal must be in writing, but no particular form need be used. The appeal must include the name and entity affiliation, address and telephone number of the person appealing, the registration number (if any), and a statement of the basis of appeal. And the appeal must be filed within 30 calendar days of the date of the written notice. The regulation provides clear notice that failing to act within 30 days of written notice of the Attorney General's action waives the right to appeal and the notice becomes the final order of the Attorney General.

The evidence presented by WWSG shows that it corresponded with the Registry after each of the Registry's actions, but nothing in the correspondence would lead an ordinarily prudent person to believe that WWSG was seeking to appeal from the agency's action. While use of a specific form is not required, there must be some indication that the party is seeking an appeal. WWSG has failed to establish that it timely perfected an appeal from any of the three actions taken against it by the Registry. Because WWSG did not appeal any of the Registry's actions, they became final by operation of law. (Cal. Code Regs., tit. 11, § 999.6, subd. (c).) WWSG was not deprived of an administrative hearing to which it was entitled.

(ECF No. 81 at 10.)

These findings, that Plaintiffs did not file an appeal of the revocation and denial of the raffle registration and imposition of fines, are the same issue that Plaintiffs seek to litigate in this matter and were necessary to the administrative law judge's decision. The administrative action involved the same parties to this action for the reasons discussed supra at B.1.b. The agency has adopted the administrative law judge's decision.[4] Finally, allowing Plaintiffs to relitigate this issue in the instant matter would be contrary to the public policy concerns underlying the issue preclusion doctrine, given that the issue has been fully litigated and decided against Plaintiffs on the merits

Applying California's principles of issue preclusion, the Court finds issue preclusion applies to the administrative law judge's findings and that Plaintiffs should be precluded from arguing that they filed an appeal of the denial and revocation of their raffle permit and the notice of imposition of fines and were denied a hearing.

### C. Whether Plaintiffs Matthew G. Gregory, Danella J. Gregory, Gina D. Gregory, Matthew J. Gregory, and CCERR Have Alleged a Cognizable Claim

Defendants argue that the first amended complaint fails to contain any factual allegations to demonstrate that their actions violated the due process rights of Plaintiffs Matthew G. Gregory, Danella J. Gregory, Gina D. Gregory, Matthew J. Gregory, or CCERR. Defendants contend that there are no allegations that any of these Plaintiffs were the subject of adverse administrative action and the administrative actions in the first amended complaint only pertain to WWSG. Defendants assert that Plaintiffs Matthew G. Gregory, Danella J. Gregory, Gina D. Gregory, Matthew J. Gregory, and CCERR have not alleged a protected liberty or property interest or that they have standing to challenge the actions alleged in the first amended

---

[4] Although the administrative decision has not been subjected to judicial review, the Supreme Court held in University of Tennessee v. Elliott, 478 U.S. 788 (1986), that while congress intended to provide Title VII plaintiffs with a trial de novo in federal court even where the grievance had been subject to an unreviewed administrative decision, Congress did not express an intent to remove actions under section 1983 form the common law rules of issue preclusion. Guild Wineries & Distilleries v. Whitehall Co., 853 F.2d 755, 758 n.5 (9th Cir. 1988); Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994), as amended (Dec. 27, 1994); Peterson v. State of California Dep't of Corr. & Rehab., 451 F.Supp.2d 1092, 1105 (E.D. Cal. 2006). Therefore, the administrative law judge's decision is entitled to preclusive effect even though it has not been subject to review by the state court.

complaint.

Plaintiffs counter that Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory were all directors and officers of both WWSG and CCERR. Plaintiffs argue that a deprivation of the rights of WWSG and CCERR is also a deprivation of the rights of its officers and directors. Plaintiffs contend that the right to act on behalf of WWSG and CCERR belongs to its officers and directors as well as to anyone acting on behalf of WWSG and CCERR.

Defendants reply that Plaintiffs ignore long standing precedent recognizing corporate autonomy. Defendants argue that an officer or director of a corporation has no individual right of action against third parties for actions that damage the corporation and a guarantor of the corporations debt does not have standing to bring an action where the only harm suffered is derivative of the harm the corporation suffered.

A threshold question in every federal action is whether the plaintiff has standing to bring a particular cause of action. EMI Ltd. v. Bennett, 738 F.2d 994, 996 (9th Cir. 1984). Standing requires that the plaintiff have a personal stake in the litigation by alleging a distinct and palpable injury to himself. EMI Ltd., 738 F.2d at 996. To have constitutional standing to bring suit, a "plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125 (2014); accord DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).

      1.     Plaintiffs Gina Gregory and CCERR

In the first amended complaint, the actions alleged are the revocation and denial of WWSG's raffle permit, revocation of WWSG's charitable organization status, and the imposition of fines against WWSG for conducting an illegal raffle in violation of the cease and desist orders. The first amended complaint is devoid of any factual allegations to demonstrate that the defendants took any action implicating the protected rights of Gina Gregory or CCERR. The conduct that is challenged is directed at WWSG. To the extent that Gina Gregory appears to be arguing that she was volunteering for WWSG and therefore has standing to challenge the

1   deprivations of WWSG, volunteering for the organization is insufficient to allege an interest

2   protected by the Fourteenth Amendment.  Hyland v. Wonder, 972 F.2d 1129, 1141 (9th Cir.

3   1992) (volunteer status does not amount to a constitutionally protected property interest).

4   Plaintiffs Gina Gregory and CCERR have failed to state a cognizable claim in this action and

5   Defendants motion to dismiss Gina Gregory and CCERR as plaintiffs in this action should be

6   granted.

7          2.      Plaintiffs Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory

8          Plaintiffs Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory argue that

9   they have standing to bring this suit on behalf of WWSG as they are directors and officers of the

10  corporation and they hold promissory notes for loans made to WWSG.

11         Plaintiffs Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory allege that

12  because they are officers and directors of the corporation, a deprivation of the corporations rights

13  are also a deprivation of their individual rights.  However, Plaintiffs cite no legal authority to

14  support such an argument.[5]

15         The individual plaintiffs assert that they are being deprived of their rights to free speech

16  under the First Amendment by being deprived of the ability to solicit funds for WWSG.

17  However, Plaintiffs have only brought due process claims in this action.  Plaintiffs contend that

18  they were required to be provided with due process before being deprived of their rights under

19  the First Amendment.  However, "where a particular amendment provides an explicit textual

20  source of constitutional protection against a particular sort of government behavior, that

21  Amendment, not the more generalized notion of substantive due process, must be the guide for

22  analyzing a plaintiff's claims."  Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations,

23  internal quotations, and brackets omitted) overruled on other grounds by Unitherm Food

24  Systems, Inc. V. Swift –Eckrick, Inc., 546 U.S. 394 (2006); County of Sacramento v. Lewis, 523

25  U.S. 833, 842 (1998).  Any allegations that Plaintiffs were deprived of their right to freedom of

26

27  _____
    [5] Under California law, a corporation must generally bring an action itself for an injury to the corporation.  Corr.
28  USA v. Dawe, 504 F. Supp. 2d 924, 931 (E.D. Cal. 2007); Sutter v. Gen. Petroleum Corp., 28 Cal.2d 525, 530
    (1946).

speech is covered by the First Amendment and is not cognizable as a due process claim.

At the May 29, 2019 hearing, Plaintiffs Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory argued that they have a property interest in the good will of WWSG that is protectable under the Fourteenth Amendment. California recognizes business good will as a property interest. WMX Techs., Inc. v. Miller, 197 F.3d 367, 374 (9th Cir. 1999); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989). Under the Business and Professional Code, "[t]he good will of a business is property and is transferable." Cal. Bus. & Prof. Code § 14102. "Similar protection afforded business goodwill under Florida law has been deemed sufficient to give rise to due process protection." Soranno's Gasco, Inc., 874 F.2d at 1317 (citing Marrero v. City of Hialeah, 625 F.2d 499, 514–15 (5th Cir.1980), cert. denied, 450 U.S. 913 (1981)). While an owner of a corporation cannot be deprived of the good will of the company without due process of law, Soranno's Gasco, Inc., 874 F.2d at 1316, Plaintiffs have not alleged that they are owners of WWSG but that they are officers and directors of the corporation (FAC ¶¶ 3-5).[6] Therefore, the officer director Plaintiffs have failed to allege standing to bring a claim for loss of good will of the corporation.

As the Seventh Circuit explained in Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago, investors and guarantors gain and lose with the corporation. 877 F.2d 1333, 1335 (7th Cir. 1989). When the corporation is damaged and receives an award for its injuries, the money placed back into the corporation restores the investors and guarantors to their former position. Mid-State Fertilizer Co., 877 F.2d at 1335. "A big chunk of the law concerning corporate derivative litigation consists in separating 'direct' injury (which the investor may redress through independent suit) from 'derivative' injury (which the investor may redress only through litigation in the name of the corporation)." Id.

> When the injury is derivative, recovery by the indirectly-injured person is a form of double counting. "Corporation" is but a collective noun for real people— investors, employees, suppliers with contract rights, and others. A blow that costs "the firm" $100 injures one or more of those persons. If, however, we allow the

---

[6] Further, as discussed below, to the extent that Plaintiffs Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory could amend their complaint to allege that they are owners of the corporation, WWSG received the process that was due to revoke the charitable organization status.

corporation to litigate in its own name and collect the whole sum (as we do), we must exclude attempts by the participants in the venture to recover for their individual injuries.

Mid-State Fertilizer Co., 877 F.2d at 1335-36. Similarly, the Ninth Circuit has found that shareholders or guarantors of the corporation do not have standing to sue where the harm is derivative of the harm to the corporation. Sparling v. Hoffman Construction Co., Inc., 864 F.2d 635, 640 (9th Cir.1988).

In Carter v. Berger, the Seventh Circuit held that it is well established that an indirectly injured party cannot sue, "[i]f a wrong committed against a firm causes it to become bankrupt and discharge its employees or discontinue its purchases, the injured employees and suppliers may not sue." 777 F.2d 1173, 1175 (7th Cir. 1985). They may suffer when the firm incurs a loss, but only the firm can vindicate the rights at issue. Carter, 777 F.2d at 1175. "Only the directly affected party, not those who feel the repercussions, gets a hearing under the Due Process Clause." Id. (quoting O'Bannon v. Town Court Nursing Center, 447 U.S. 773 (1980)).

A shareholder does have standing to bring a suit where he or she has been "injured directly and independently from the corporation." RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1057 (9th Cir. 2002) (quoting Shell Petroleum, N.V. v. Graves, 570 F.Supp. 58, 63 (N.D. Cal.), aff'd, 709 F.2d 593 (9th Cir. 1983). The same action can result in injury to the corporation and the individual shareholders. RK Ventures, Inc., 307 F.3d at 1057. In RK Ventures, the plaintiffs were owners of a corporation through which they owned a nightclub that they claimed they had been forced to sell due to the racially discriminatory enforcement of a municipal ordinance. Id. at 1050-51. The plaintiffs brought suit on their own behalf and on behalf of the corporation against the city alleging enforcement of the ordinance in violation of the Fourteenth Amendment, violation of their free speech rights under the First Amendment, seeking damages and declaratory relief. Id. at 1054.

The court found that the plaintiffs had stated a claim against the city in their own right for violation of the First Amendment and the Equal Protection Clause because they were the direct target of the discrimination due to their association with members of the protected class. Id. at 1055. Defendants argued that the plaintiffs did not have standing because as shareholders they

could not bring claims on behalf of the corporation.  Id. at 1157.  The court found that because the owners alleged personal injury in addition to the compensation for the corporation and had sought damages on their own behalf for intentional infliction of emotional distress and defamation, as well as claims for violations of their First and Fourteenth Amendment rights as individuals, they had standing to state a claim.  Id.

Similarly, in Soranno's Gasco, Inc., the plaintiffs were the officers and sole shareholders of a corporation that was in the business of selling and distributing petroleum products. Soranno's Gasco, Inc., 874 F.2d at 1312.  After regulations were implemented requiring the use of vapor recovery devices, Mr. Soranno publicly criticized the agencies over various aspects of the regulations and initiated litigation challenging the regulations.  Id.  The defendant sent a letter to the corporation's customers informing them that the corporations permits had been suspended and the corporation could not legally deliver gasoline.  Id. at 1313.  The letter also informed the customers that their own permits could be subject to suspension if they continued to receive deliveries from the corporation.  Id.  The owners brought suit on behalf of themselves and the corporation for violation of due process and retaliation seeking damages for loss of profits and for mental and emotional distress as well as injunctive relief.  Id.

The appellate court found that the plaintiffs had stated a claim that the suspension of the permit was in retaliation for Mr. Soranno's protected speech and for filing the lawsuit. Soranno's Gasco, Inc., 874 F.2d at 1314.  The court also found that the plaintiffs had a property interest in the goodwill of their business that could not be deprived without due process.  Id. at 1316-17.  The appellate court found that the plaintiffs had failed to state a claim based upon the suspension of their permit on the ground that the public administration in swift administrative action justifies summary suspension with post-deprivation hearings.  Id. at 1317.

Defendants argued that the plaintiffs did not have standing to bring claims but the appellate court held that the claim that the county retaliated against Mr. Soranno for exercising his first amendment rights alleged a direct and personal injury to Mr. Soranno and not the corporation.  Id. at 1319.  Further, the plaintiffs alleged that they had suffered mental and emotional distress due to the defendant's actions and the fact that the conduct was the same

conduct that injured the corporation did not preclude the claim.  Id.

In this action, the only claims brought in the first amended complaint are for due process violations due to the revocation of WWSG's raffle permit, the imposition of fines, and revocation of WWSG's charitable corporation status for which Plaintiffs are seeking monetary damages and a declaration that their due process rights were violated.  These allegations allege injury to the corporation, not direct injury to any other named plaintiff.  Unlike the plaintiffs in RK Ventures, Inc. and Soranno's Gasco, Inc., there are no claims asserted in the first amended complaint alleging a direct injury to the directors or officers.

In Grubbs v. Bailes, 445 F.3d 1275 (10th Cir. 2006), the president and shareholder of a corporation brought a claim against the county alleging a violation of equal protection and false arrest.  445 F.3d at 1277.  The corporation had been formed to acquire and hold lakeside land for the use of the shareholders and the plaintiff was granted possessory rights to the property and had been "leased" a cabin site for his personal use and had joint use of the remaining common areas Id.  Plaintiff had complained about trespassers in the common areas and when local law enforcement did not act, he took matters into his own hands.  Id.  Armed with a pistol, the plaintiff confronted several individuals that he believed were trespassing on the property.  Id. The individuals complained and the plaintiff was charged with felony pointing firearms.  Id. at 1278.  The case was dismissed prior to trial and the plaintiff brought an action challenging his arrest and alleging that law enforcement's failure to enforce the property rights of the corporation and its members denied him equal protection of the law.  Id.

The court considered the long-standing rule that "generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." Grubbs, 445 F.3d at 1280.  They also considered the exception that allows a shareholder with a direct and personal interest in the cause of action to bring suit even when the corporations rights are also implicated.  Id.  In considering the claim that law enforcement's response to trespassing on the property was inadequate, the court found "[i]f plaintiff's only connection with the property had been his ownership of MLC stock, so that any injury to him was solely a function

of injury to the corporation's property holding, such a purely derivative interest would fall within the scope of the prudential prohibition on shareholder standing. Plaintiff, however, has a distinct legally recognized interest in the property." Id. The plaintiff had a possessory interest in the property because he had an individual leasehold in a particular cabin site and a joint interest in the common areas. Id.

Here, unlike the plaintiff in Grubbs, the officer director Plaintiffs have set forth no possessory interest separate from that of the corporation. Plaintiffs have not asserted that they have any interest aside from the monies that they have loaned or advanced to the corporation. Plaintiffs assert that they have been directly injured because they have direct interest in being reimbursed for their out of pocket expenses and to recoup funds which was hindered by the actions alleged in the first amended complaint. But it is not sufficient to allege a personal economic injury resulting from the wrong to the corporation. Soranno's Gasco, Inc., 874 F.2d at 1318.

Although Plaintiffs Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory are directors and officers and hold promissory notes for WWSG, they are in the position of investors or employees who depend on the success of the corporation and they have no direct injury due to the revocation of the charitable organization status. Lui Ciro, Inc. v. Ciro, Inc., 895 F.Supp. 1365, 1381 (D. Haw. 1995). The direct injury is to the corporation who is able to sue on its own behalf and Plaintiffs' asserted injuries are derivative of those of WWSG. If WWSG were to prevail in this action, then Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory would be placed back in the same position they were in and could seek repayment of the loans and funds advanced from WWSG.

For these reasons, the Court finds that Plaintiffs Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory lack individual standing to bring a due process claim in this action. It is recommended that Defendants motion to dismiss Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory as plaintiffs in this action be granted.

**D.      Due Process Claims**

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations

of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972). A liberty or property interest protected by the Fourteenth Amendment may arise "from an expectation or interest created by state laws or policies." Marsh v. Cty. of San Diego, 680 F.3d 1148, 1155 (9th Cir. 2012) (quoting Wilkinson, 545 U.S. at 221. Once the state has created a protected interest, it cannot be taken way without due process. Marsh, 680 F.3d at 1155.

Not every state law creates an interest protected by the Fourteenth Amendment. Marsh, 680 F.3d at 1155. In order for the interest to fall within the protections of due process, the state law must contain "(1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met.' " Id. (quoting James v. Rowlands, 606 F.3d 646, 656 (9th Cir. 2010); and Bonin v. Calderon, 59 F.3d 815, 842 (9th Cir. 1995)). To contain the requisite "substantive predicates," the state law must provide more than mere procedure; "it must protect some substantive end." Marsh, 680 F.3d at 1156 (quoting Bonin, 59 F.3d at 842).

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 12–13 (1978) (quoting Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950)). Ordinarily, due process requires the opportunity for " 'some kind of hearing' prior to the deprivation of a significant property interest[,]" but the Supreme Court has "recognized that where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination, government may act without providing additional 'advance procedural

safeguards.' " <u>Memphis Light, Gas & Water Div.</u>, 436 U.S. at 19. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334 (1976) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)).

    1.    <u>Whether Plaintiffs Have Alleged an Interest Protected by the Fourteenth Amendment</u>

Plaintiffs allege that no notice or opportunity to be heard was provided prior to their being ordered to stop conducting the raffle and selling tickets over the internet. "A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." <u>Portman v. Cty. of Santa Clara</u>, 995 F.2d 898, 904 (9th Cir. 1993). The Constitution does not create substantive rights in property; property rights are defined by reference an independent source such as state law. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538 (1985); <u>Portman</u>, 995 F.2d at 904.

Defendants argue that Plaintiffs, other than WWSG, have not set forth a protected interest. Here, Plaintiffs attempt to define the right as their ability to solicit funds on behalf of the charity, but a deprivation that is an "indirect and incidental result of [a] Government's enforcement action[ ] does not amount to a deprivation of any interest in life, liberty, or property." <u>Westwood v. City of Hermiston</u>, 787 F.Supp.2d 1174, 1195 (D. Or. 2011), aff'd, 496 F. App'x 728 (9th Cir. 2012) (quoting <u>O'Bannon</u>, 447 U.S. at 787). The gravamen of Plaintiffs' complaint is that the RCT and DOJ determined that WWSG was conducting an illegal raffle and revoked their raffle permit, issued a cease and desist order, and, following an investigation, WWSG's registration as a charitable organization was revoked, all allegedly without prior notice or an opportunity to be heard. The interests to be considered here are WWSG's right to the raffle permit and charitable organization status.

Defendants argue that the WWSG does not have a protected interest in the raffle permit to state a claim regarding the August 16, 2016 revocation letter. As discussed above, the Constitution does not create a liberty or property interest in operating as a charitable organization or conducting a raffle. The state may create such property rights by statute. Plaintiffs do not cite

1   any authority addressing whether the state law has created a protected interest in conducting a

2   raffle, but merely argue that WWSG has such a property interest.

3       A property interest protected under the Fourteenth Amendment is present where an

4   individual has a reasonable expectation of entitlement that derives from "existing rules or

5   understandings that stem from an independent source such as state law-rules or understandings

6   that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408

7   U.S. at 577. In Roth, the Supreme Court explained, "To have a property interest in a benefit, a

8   person clearly must have more than an abstract need or desire for it. He must have more than a

9   unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id.

10  "The mere fact a person has received a government benefit in the past, even for a considerable

11  length of time, does not, without more, rise to the level of a legitimate claim of entitlement."

12  Doran v. Houle, 721 F.2d 1182, 1186 (9th Cir. 1983); see also Gerhart v. Lake Cty., Mont., 637

13  F.3d 1013, 1021 (9th Cir. 2011) (past practice of granting a benefit is not sufficient to establish a

14  legal entitlement to the benefit). However, courts also recognize that, where a benefit has been

15  conferred, the continued possession may become essential to the pursuit of livelihood and

16  suspension of the license involves state action that adjudicates important interests of the

17  licensees. Jones v. City of Modesto, 408 F.Supp.2d 935, 950 (E.D. Cal. 2005).

18      The Ninth Circuit has held that "[w]hether an expectation of entitlement is sufficient to

19  create a property interest will depend largely upon the extent to which the statute contains

20  mandatory language that restricts the discretion of the decisionmaker." Doyle v. City of

21  Medford, 606 F.3d 667, 672–73 (9th Cir. 2010) (quoting Allen v. City of Beverly Hills, 911 F.2d

22  367, 370 (9th Cir. 1990)). "[S]tate law creates a 'legitimate claim of entitlement' when it

23  'imposes significant limitations on the discretion of the decision maker.' " Gerhart, 637 F.3d at

24  1020 (quoting Braswell v. Shoreline Fire Dep't, 622 F.3d 1099, 1102 (9th Cir. 2010)).

25      The Ninth Circuit has stated that whether there is a protected interest is considered on a

26  continuum, "[a]t one pole, a state operating license that can be revoked only 'for cause' creates a

27  property interest. At the opposite pole, a statute that grants the reviewing body unfettered

28  discretion to approve or deny an application does not create a property right." Thornton v. City

of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005) (internal citations omitted). Whether the statue creates a property interest depends on the extent to which the governing statute contains mandatory language that restricts the discretion of the reviewing body to deny an application by applicants who meet the statutory requirements. Thornton, 425 F.3d at 1165. "In other words, if the governing statute directs that a license shall be renewed upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body, the licensee has a property right in the reissuance of the license. Conversely, an applicant does not have a property interest in the renewal of a license if the reviewing body has discretion to deny renewal or to impose licensing criteria of its own creation." Id. (internal citations omitted).

The regulations governing the Nonprofit Raffle Program are found at Cal. Code Regs. tit. 11, § 410 et seq. As relevant to the current motion, an eligible organization must be registered in the Nonprofit Raffle Program prior to conducting a raffle in California. Cal. Code Regs. tit. 11, § 415. To register for the Nonprofit Raffle Program the organization must submit a raffle registration form to the DOJ . Cal. Code Regs. tit. 11, §§ 415, 416. The application may be denied, and a permit may be suspended or revoked where the applicant "(1) Submits false or misleading information in the application. (2) Fails to meet or comply with any requirements set forth in Penal Code section 320.5 or these regulations. (3) Engages in any conduct that is not in the best interests of the public's health, safety or general welfare." Cal. Code Regs. tit. 11, § 419.2(a).

Here, the statute itself does not provide mandatory language requiring that the raffle permit be granted but states that the organization's application or permit may be denied, suspended, or revoked where the agency determines that the organization has submitted false and misleading information, failed to meet and comply with the state's regulations, or engages in conduct that is not in the best interest of the public's health, safety or general welfare. The language of the statute itself does not mandate that the permit will issue, but provides the agency with discretion to determine if the organization should be issued a raffle permit. Because the statute does not impose any significant restrictions on the agency's discretion to approve or deny a raffle permit, the State of California has not created a property right in the permit that would be

protected by the Fourteenth Amendment. <u>Bateson v. Geisse</u>, 857 F.2d 1300, 1305 (9th Cir. 1988). Plaintiffs cannot state a due process claim based upon the revocation or denial of the raffle permit.

In their motion to dismiss Defendants did not argue that Plaintiffs do not have a protected interest in their registration as a charitable organization. While there was some discussion of the issue during the May 29, 2019 hearing, whether there is protected interest in the charitable organization status has not been adequately briefed. For the purposes of this motion, the Court shall assume without deciding that WWSG has a protected interest in operating as a charitable organization.

## 2. August 16, 2016 Cease and Desist Letter and Raffle Registration Denial & Revocation Due to Violations of Law

Plaintiffs contend that the August 16, 2016 cease and desist letter and raffle registration denial and revocation due to violations of law were issued without notice and an opportunity to be heard.[7] As discussed above, Plaintiffs do not have an interest in raffle activity that is protected by the Due Process Clause of the United States Constitution and have failed to state a claim against Defendants Eller or Mossler based on the August 16, 2016 cease and desist letter and raffle registration denial and revocation.[8]

---

[7] Plaintiffs contend the determination that the contest was a non-exempt raffle was incorrect because they gave away some of the tickets and they were not provided with an opportunity to contest that incorrect finding. Plaintiffs argue that the determination that the contest was in violation of the law could not be made by the investigative employees, but they provide no authority to support the argument. The statutes provide that enforcement of the raffle requirements rests with the DOJ, and the DOJ is authorized to take any legal or administrative action for violations of the raffle regulations, including requiring a charitable organization to provide all information, documents, and other records to enable the Attorney General and other law enforcement agencies to ascertain compliance with Penal Code § 320.5. Cal. Penal Code. § 320.5(i), (j); Cal. Code Regs. tit. 11, §§ 419.2, 425. The regulations themselves provide that the Attorney General has the authority to secure compliance and address violations, including issuing cease and desist orders and imposing monetary sanctions. Cal. Gov't Code §§ 12591, 12591.1(b), (c), (d), 12598(a), (e); Cal. Code Regs. tit. 11, § 999.6(a). Section 12591.1(b) specifically provides that a cease and desist order may issue where the Attorney General finds that any entity or person subject to the regulations has engaged in an act prohibited by section 12599.6 which includes operating in violation of the requirements of the Act. The Court finds no merit to Plaintiffs' argument that the DOJ could not determine that the contest was an illegal raffle.

[8] The Court agrees with Defendants that Plaintiffs' contention that the August 16, 2016 letters ordered them to stop all solicitation on behalf of the charity is an unreasonable interpretation of the communications. The letter states that WWSG has been found to be in violation California Penal Code section 320.5(f)(2) by selling raffle tickets online at www.winwithacobra.com. "Because of the violations of Penal Code section 320,5, subdivision (f)(2) you are ordered to immediately CEASE AND DESIST from all raffle activities and solicitations by any means." The letter clearly is addressing WWSG's raffle activities and orders WWSG to cease and desist from solicitation for the raffle.

1        3.      February 1, 2018 Automatic Suspension of Registration of Charitable Organization Status

Plaintiffs allege that the February 1, 2018 letter suspending their registration took away their rights without notice because it went into effect on February 1, 2018, and was not mailed until February 8, 2018. (FAC ¶ 46; ECF No. 82 at 6.) Defendants recognize this claim in the factual portion of the motion to dismiss, move to dismiss the claim, (ECF No. 80-1 at 3), and they argue that the administrative law judge found that there was adequate basis to support the February 8, 2018 suspension and refusal to renew WWSG's registration.

Plaintiffs also contend they were not provided with an opportunity to be heard prior to their charitable organization status being revoked. Defendants argue that the cease and desist order and the raffle revocation and denial letters provided Plaintiffs with the information on how to seek an appeal and Plaintiffs did not avail themselves of the procedures provided.

WWSG's charitable organization status was revoked because it was found to have been conducting an illegal raffle by selling raffle tickets over the internet, and cease and desist orders and a letter revoking their raffle permit had issued on August 16, 2016.[9]

As stated above, it is well established the due process is flexible and the procedural protections depends on what the particular situation demands. Mathews, 424 U.S. at 334 (citing

_____

[9] Plaintiffs contend that they did not receive adequate notice prior to the revocation of their raffle permit. To the extent that a finding could be made that California did create a property interest in the raffle permit, California Penal Code clearly sets out the law regarding raffles requiring that eligible organizations must register annually to conduct raffles and that raffles may not be conducted over the internet. See Cal. Pen. Code § 320.5(h)(1). A raffle is defined generally as a "a scheme for the distribution of prizes by chance among persons who have paid money for paper tickets that provide the opportunity to win these prizes" where "(1) Each ticket is sold with a detachable coupon or stub, and both the ticket and its associated coupon or stub are marked with a unique and matching identifier. (2) Winners of the prizes are determined by draw from among the coupons or stubs described in paragraph (1) that have been detached from all tickets sold for entry in the draw." Cal. Pen. Code § 320.5(b). Similarly, the Penal Code provides that legal action can be taken against a registrant if it is determined that the registrant has violated the section and that action to deny, revoke, or suspend a registry shall be conducted pursuant to the Administrative Procedures Act. Cal. Pen. Code § 320.5(i)(j).

Plaintiffs have not challenged the constitutionality of Penal Code section 320.5 in this action. The Penal Code provides notice of the raffle requirements and that a raffle permit could be revoked for violation of those requirements. Due process requires that the laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. Saberi v. Commodity Futures Trading Comm'n, 488 F.3d 1207, 1215 (9th Cir. 2007) (quoting Upton v. SEC, 75 F.3d 92 (2d Cir.1996)). The Court finds no merit to Plaintiffs' argument that they did not receive notice prior that their raffle permit would be revoked prior to the issuance of the cease and desist order and denial and revocation of their raffle permit.

Morrissey, 408 U.S. at 481).  The essential requirements of due process are notice and an opportunity to respond.  Loudermill, 470 U.S. at 546.  This fundamental requirement is the opportunity to present the reasons that the action should not be taken, either in writing or in person.  Id. at 545.  "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action."  Id.

### a.  Notice and Opportunity to be Heard

Although Plaintiffs allege that they were not provided with notice that their charitable organization status was revoked on February 1, 2018 until after February 8, 2018, Plaintiffs had been on notice for over a year that the DOJ had determined that their contest was an illegal raffle and had been ordered to cease and desist soliciting raffle tickets.  In the September 6, 2016, and December 8, 2016 notices imposing sanctions, WWSG was informed that they could be subject to "legal action including a temporary restraining order, permanent injunction, appointment of a receiver, an order for restitution, contempt sanctions, suspension of registration, or an accounting, (Gov, Code § 12591.l, subds. (d) and (f); Cal, Code Regs., tit 11, § 314, subd, (b))."  (ECF No. 81 at 63, 66).

Citing Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971 (9th Cir. 1998), Defendants argue that Plaintiffs were not required to receive predeprivation notice and that the procedures provided were adequate to comply with the requirements of due process.  In Brewster, the Ninth Circuit stated,

> "In order to state a claim under the fourteenth amendment, the complainant must allege facts showing not only that the State has deprived him of a . . . property interest but also that the State has done so without due process of law."  Gearhart v. Thorne, 768 F.2d 1072, 1073 (9th Cir.1985) (quoting Marrero v. City of Hialeah, 625 F.2d 499, 519 (5th Cir.1980)) (internal quotation marks omitted). Consequently, once a court determines that a protected property interest has been taken, "the question remains what process is due."  Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
>
> The question of "what process is due" is more easily asked than answered.  As the Supreme Court has frankly acknowledged, "[f]or all its consequence, 'due process' has never been, and perhaps never can be, precisely defined."  Lassiter v. Department of Social Servs., 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).  Rather, the phrase "expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty."  Id. As a result, deciphering and applying the Due Process Clause is, at best, "an uncertain enterprise."  Id.

Precisely what procedures the Due Process Clause requires in any given case is a function of context. After all, "unlike some legal rules," due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) (quoting Joint Anti–Fascist Committee v. McGrath, 341 U.S. 123, 162, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)) (quotation marks omitted). Rather, it "is flexible and calls for such procedural protections as the particular situation demands." Morrissey, 408 U.S. at 481, 92 S.Ct. 2593. As this court has observed, "[t]he determination of what procedures satisfy due process [in a given situation] depends upon an analysis of the particular case in accordance with the three-part balancing test outlined in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)." Orloff v. Cleland, 708 F.2d 372, 378–79 (9th Cir.1983) (parallel citations omitted). In Mathews, the Supreme Court stated:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Brewster, 149 F.3d at 983.

As discussed above, WWSG received notice that their contest was a non-exempt raffle and that they were to cease and desist all raffle activity. Further, they were informed that failing to cease and desist the raffle activity could subject them to further legal action, including suspension of their registration. Therefore, the Court considers whether Plaintiffs' were required to be provided with a predeprivation hearing prior to the revocation of their charitable organization status.

Plaintiffs argue that they have an important interest in soliciting donations to be used for charitable purposes which is protected by the First Amendment. Plaintiffs point out that the rights are financial in nature. Plaintiffs contend that individuals depend on the charities for support and the charity has an important interest in their donor base and the funds that they receive. Defendants do not argue otherwise. The Court finds that the private interest in running a charitable organization and engaging in charitable activities is significant.

Plaintiffs argue that the risk of erroneous deprivation is great or almost certain because an investigator makes the determination of whether the conduct engaged in violates the law.

47

1  Plaintiffs argued at the May 29, 2019 hearing that since the investigator is biased it is automatic

2  that the deprivation would be erroneous.  Defendants counter that the statutory and regulatory

3  schemes provide adequate procedural safeguards to protect against erroneous deprivation.

4  Further, Defendants argue that the imposition of fines and the revocation of the organizations

5  charitable status were proceeded by the cease and desist order which placed the organization on

6  notice that its conduct was violating California law and it would be fined if WWSG did not cease

7  the conduct.

8        The Court rejects Plaintiffs' contention that the risk of erroneous deprivation is great or

9  almost certain.  While there is some risk of erroneous deprivation, once the organization has

10 been suspected of engaging in activity in violation of the law, the agency has the duty to conduct

11 an investigation prior to issuing any cease and desist order.  Further, the organization is advised

12 at the time of the adverse action of the availability of procedures to appeal the adverse finding.

13 As demonstrated here, Plaintiffs were informed of the finding that they were operating a non-

14 exempt raffle and were provided with the opportunity to appeal the findings.  Plaintiffs had the

15 opportunity to appeal the finding that the contest was a non-exempt raffle prior to having their

16 charitable organization status revoked, although they did not do so.  Once Plaintiffs' charitable

17 organization status was revoked on February 1, 2018, they did file an appeal, and the

18 administrative law judge issued her opinion in August 2019.  Given the procedural safeguards

19 provided, the Court finds that this factor is neutral in the analysis.

20       Plaintiffs contend that the burden on the State to provide notice and an opportunity to be

21 heard by an impartial adjudicator prior to taking away rights that are primarily financial in nature

22 would be slight or minimal.  At the May 29, 2019 hearing, Plaintiffs argued that the State's

23 interest does not outweigh their interests because the State allows Indian gaming to occur which

24 hurts society.  Plaintiffs contend that Indian gaming does not benefit charities and allows the

25 casinos to exploit people's addictions to gambling for the purpose of financial gain.  Defendants

26 replied that the State's interests in this matter outweighs any interests that Plaintiffs have to

27 solicit funds and demonstrates that a predeprivation hearing is not required.  Defendants

28 recognize that the charitable organizations have an interest in soliciting funds, but argue that the

public confidence in the proper use of charitable funds is a weighty interest. If the public was to lose confidence in charitable organizations, they would stop donating and additional burden would fall on the government to meet the needs. Defendants also contend that the State has a significant interest in protecting the integrity of charitable organizations and the public's trust in those organizations.

It has long been established that donations received for charitable purposes must be used for the purposes for which they are given and the Attorney General has a duty to bring enforcement actions to enforce charitable trusts. Pac. Home v. Los Angeles Cty., 41 Cal.2d 844, 854, 264 P.2d 539 (1953); O'Hara v. Grand Lodge Indep. Order of Good Templars of State of California, 213 Cal. 131, 141 (1931). The State has a substantial interest in guarding against fraudulent activities in the name of charity. Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc., 487 U.S. 781, 792 (1988).

The Court finds that the State's interest in ensuring that funds donated for charitable purposes are used for the purposes given outweigh the private interest at stake in this action. Although Plaintiffs argue that Indian gaming hurts society by preying on people's addiction to gambling, the fact that the State has entered into gaming compacts with certain tribes is not similar to the issue here. In this case, the Court considers the State's interest in stopping an organization that has been authorized by the state to operate as a charitable organization from defrauding the public and misusing funds that have been donated for a specific purpose. Where the State suspects that charitable funds are being fraudulently solicited or used for an improper purpose, they have a duty to protect those funds that were donated by the public. The State has a weighty interest in protecting the integrity of the charitable organizations that are registered and authorized to operate under the Supervision of Trustee and Fundraisers for Charitable Purposes Act. See Barry v. Barchi, 443 U.S. 55, 64 (1979) (findings an important state interest in assuring the integrity of horse racing carried out under state law); Jones, 408 F.Supp.2d at 953 (finding state's interest in protecting citizens form being inappropriately touched by message therapist is greater than interest in assuring the integrity of horse racing). Here, the State's interest in protecting the integrity of charitable organizations is at least as weighty as a state's interest in

protecting the integrity of horse racing or of protecting the public from inappropriate touching by a massage therapist.

Where the DOJ determines that the charity is fraudulently obtaining charitable donations or misusing the funds that had been contributed in violation of state law, requiring a predeprivation hearing would allow the organization to request a hearing to cause delay so they could continue to fraudulently solicit funds from the public. Additionally, there would be a risk of the charitable funds being depleted for an improper purpose during the pendency of the administrative proceedings. By issuing the order without a predeprivation hearing, the funds are protected and the state can ensure that those funds that remain in the charitable trust are used for the purpose for which they were given. See Brewster, 149 F.3d at 985 (finding "the District's interest in halting what it believed to be substantial overpayments to Brewster—payments that indirectly affected citizens' tax liability and that might have been difficult to recover after the fact" to be a compelling interest).

In this instance, the Court finds that the State's interest in enforcing charitable trusts and guarding against fraudulent activity in the name of charities outweighs the private interests at stake and the risk of erroneous deprivation. Plaintiffs were not entitled to a predeprivation hearing before their charitable organization status was revoked.

Plaintiffs were provided with a postdeprivation hearing in which they were allowed to present evidence to the administrative law judge as discussed supra at V.B.2. The Court finds that Plaintiffs were provided with the process due to comply with the Fourteenth Amendment in the revocation of their charitable organization status.

    4.    Imposition of Penalties

In their motion to dismiss, Defendants argue that the administrative proceedings resolved the issue of whether Plaintiffs were provided with notice and an opportunity to appeal the imposition of fines and the findings preclude Plaintiffs' due process claim. Defendants contend that the administrative law judge determined that Plaintiffs were adequately informed of their right to appeal and how to appeal the administrative actions and did not do so. Defendants assert that these findings necessarily resolved Plaintiffs' due process claim.

Plaintiffs respond that the California Government Code requires five days' notice before the imposition of fines and that there is a cap for penalties of $10,000. Plaintiffs argue that they did not receive the required notice, they were fined for events they did not attend, and were not provided with a hearing.

Defendants reply that Plaintiffs were not entitled to a hearing before the imposition of the fines but that due process requires they be provided with notice and an opportunity to be heard. Defendants argue that the administrative law judge's finding that Plaintiffs were afforded with an opportunity to appeal the imposition of fines and failed to do so is dispositive.

The parties do not contest that the imposition of fines alleges a property interest that would be protected by the Fourteenth Amendment. Once the plaintiff has identified a protected interest, the question remains as to what procedure is due. Although Plaintiffs argue that five days' notice was required prior to the imposition of the fines under state law, the procedure due to comply with the Fourteenth Amendment is not determined by the procedures set forth in the statute. Loudermill, 470 U.S. at 541; see also State of California ex rel. Lockyer v. F.E.R.C., 329 F.3d 700, 710 (9th Cir. 2003) (notice of four days and seven days sufficient to comply with due process). Plaintiffs were provided with notice to cease and desist their conduct prior to the imposition of the fines.

State law provides that any person who has had an action filed against them may request a hearing to review the action within thirty days after being served with notice of the action. Cal. Gov't Code § 12591.1(e); Cal. Code Regs. tit. 11, § 999.6(c). "The appeal must be in writing and must include: the name and entity affiliation (if any), address and telephone number of the person appealing, the registration number (if any) and a statement of the basis of appeal." Cal. Code Regs. tit. 11, § 999.6(c)(1).

Both the cease and desist letter and the raffle registration and denial letter provided Plaintiffs with the notice of the right to appeal. Both documents advised:

> Pursuant to Penal Code section 320.5, subdivision (j), you may request a hearing to review this [Order/Raffle Registration Denial] by completing and returning the enclosed "Appeal and Request for Hearing" form within 30 days of the date of this Order. Pursuant to Government Code section 12591.1, subdivision (e), and California Code of Regulations, title 11, section 999.6, subdivision (c), the appeal

must be in writing and must contain the name and entity affiliation (if any), address and phone number of the person appealing, the registration number (if any), and a statement of the basis of appeal.

(ECF Nos. 81 at 54, 57-58.)   Both orders informed Plaintiffs that the failure to submit a completed hearing request form within 30 days would waive the right to challenge the order and it would become final.  (Id. at 54, 58.)

Plaintiffs allege that on September 12, 2016, Matthew G. Gregory sent a letter that constituted an appeal of the Cease and Desist letter and the September 6, 2016 notice of imposition of fines which contained the name, address, registration number, and basis for the appeal.  (FAC ¶ 41.)  However, the administrative law judge addressed Plaintiffs' claim that they had requested an appeal which was not provided and, as discussed above, found that Plaintiffs had been notified of the procedure to request an appeal and had not submitted any documents that could reasonably be construed as an appeal.  The administrative law judge's findings on this issue are entitled to preclusive effect and Plaintiffs' cannot state a due process claim based on the notice of imposition of fines.

### 5.   Conclusion Regarding Due Process Claims

For the reasons discussed, the Court finds that Plaintiffs have failed to state a cognizable claim based on the revocation of WWSG's raffle permit, the imposition of fines for violating the cease and desist order, and the revocation of WWSG's charitable organization status. Defendants' motion to dismiss the due process claims should be granted.

### E.   Termination of Defendants DOJ, RCT, Xavier Becerra, Walter Garcia, Kamala Harris, Tanya M. Ibanez, and Elizabeth S. Kim

Defendants move to dismiss any claims against the DOJ, RCT, Becerra, Garcia, Harris, Ibanez, and Kim contending that there are no factual allegations included in the first amended complaint as to them.  Plaintiffs state that the first amended complaint is only brought against Defendants Eller and Mossler.  However, Plaintiffs also state that the term Defendants refers collectively to "Xavier Becerra, the RCT, the DOJ, Walter Garcia, Kamala Harris, Tania Ibanez, and Elizabeth Kim."  (ECF No. 82 at 3.)  Plaintiffs assert that the persons whose names are not listed in the first complaint should be dismissed.  While unclear, it appears that Plaintiffs are

conceding that these defendants should be dismissed from the first amended complaint. Upon review of the first amended complaint, the Court finds no factual allegations sufficient to state a claim against Defendants DOJ, RCT, Becerra, Garcia, Harris, Ibanez, and Kim.

Accordingly, Defendants' motion to dismiss Defendants DOJ, RCT, Becerra, Garcia, Harris, Ibanez, and Kim should be granted.

### F.     Official Capacity Claims Against Defendants Eller and Mossler

Defendants move to dismiss the official capacity claims against Defendants Eller and Mossler on the ground that they are barred under the Eleventh Amendment. Plaintiffs counter that they are seeking injunctive relief which is not barred by the Eleventh Amendment. Defendants reply that Plaintiffs are not seeking injunctive relief in this action and their persistence that they can maintain such claims is in bad faith.

As Plaintiffs were previously advised in the September 6, 2018 findings and recommendations,

> "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). A suit brought against government officials in their official capacity is generally equivalent to a suit against the government itself. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986); Seven Up Pete Venture v. Schweitzer, 523 F.3d 948, 952 (9th Cir. 2008). Therefore, officials may be held liable if " 'policy or custom' . . . played a part in the violation of federal law." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (quoting McRorie, 795 F.2d at 783). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989); see Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010). To prove liability for an action policy the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." Waggy, 594 F.3d at 713.

(ECF No. 62 at 30.)

"Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law." Hafer v. Melo, 502 U.S. 21, 25 (1991). In the first amended complaint, Plaintiffs merely set forth conclusory allegations of a custom or policy by the DOJ

and RCT. (FAC ¶ 22.) Plaintiffs' conclusory allegations of a custom or policy are insufficient to state a cognizable official capacity claim against Defendants Eller or Mossler. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to meet the pleading standard. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Plaintiffs have not identified any stated policies but seek to base their claims on the RCT and DOJ's unofficial policy or custom as alleged in the first amended complaint.

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), holding modified on other grounds by Navarro, 250 F.3d 729. Many of Plaintiffs' allegations regarding unconstitutional policy reflect their disagreement with the result of the investigation that was conducted by the DOJ. However, Plaintiffs' disagreement with the results of the investigation will not establish unconstitutional policies, especially as here where the DOJ's determination that Plaintiffs were conducting an illegal raffle has been decided by the jury in the state action. Further, Plaintiffs' first amended complaint is devoid of factual allegations that the alleged failure to provide notice and a hearing were of sufficient duration, frequency, or consistency such that it would be a traditional method of carrying out policy. WWSG alleges that they were denied notice and a hearing for two notices imposing penalties in September and December of 2016 and that they did not receive notice of the revocation of their charitable organization status in February 2018 prior to its revocation. These allegations are insufficient for the Court to reasonably infer that the DOJ or RCT had a policy of failing to provide notice and a hearing. Iqbal, 556 U.S. at 678.

Plaintiffs have failed to state a plausible official capacity claim and the Court recommends that the official capacity claims be dismissed.

### G. Leave to Amend

Based on the foregoing, the Court finds that Plaintiffs due process claims should be dismissed without leave to amend. The Court considers whether Plaintiffs should be granted leave to file an amended complaint to allege the First Amendment claims raised in the current

motion.

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In determining whether to grant leave to amend, the court considers five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004). The factors are not given equal weight and futility alone is sufficient to justify the denial of a motion to amend. Washington v. Lowe's HIW Inc., 75 F. Supp. 3d 1240, 1245 (N.D. Cal. 2014), appeal dismissed (Feb. 25, 2015).

Plaintiffs allege that they had a right to solicit donations and speak out on behalf of rescue animals and veterans that was deprived by the revocation of WWSG's charitable organization status. While solicitation of charitable contributions is protected speech, see Riley, 487 U.S. at 788, it is because such solicitation is "characteristically intertwined with informative and or perhaps persuasive speech" seeking support for a particular cause or view on economic, political or social issues, Vill. of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 632 (1980). However, it is clear that fraudulent misrepresentation of facts can be regulated. Riley, 487 U.S. at 803 concurring opinion (citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964)). The state can impose reasonable regulations to "serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." Vill. of Schaumburg, 444 U.S. at 637.

In this instance, it has been decided by the state court that WWSG was engaged in a non-exempt raffle and that Matthew G. Gregory and Matthew J. Gregory breached their fiduciary duties to WWSG and were engaged in deceptive and misleading solicitations; Matthew G. Gregory, Danella J. Gregory, and Matthew J. Gregory were unjustly enriched; and Gina D. Gregory aided and abetted in the breach of fiduciary duty. (ECF No. 81 at 20-22.) In these circumstances, the Court finds that it would be futile to provide Plaintiffs with an opportunity to plead a claim for violation of their rights under the First Amendment due to the denial of their

ability to fund raise on behalf of WWSG.

Further, while Plaintiffs argue that their rights to speak on behalf of rescue animals and veterans were restricted, the permanent injunction entered in the state court only precluded the individual plaintiffs from "acting as a founder, officer, director, agent, employee, or a fiduciary for any California charitable corporation, charitable association, charitable organization, or charitable trust[;]" and "from operating any charity raffle, and from soliciting charitable donations and assets in California or from any resident of California."[10] See November 9, 2018 Order and Entry of Judgment for Permanent Injunction Against Individually Named Defendants and Order to Pay Penalties Against Individually Named Defendants in People v. WWSG, no. RG178569629 (Alameda Superior Court), located at http://rct.doj.ca.gov/Verification/Web/Details.aspx?result=07542da0-97d3-42bd-b751-e6de4f49ee1c. While the injunction did prevent Defendants from fundraising activities and being involved in certain capacities within charitable organizations, it did not preclude Plaintiffs from speaking on issues of horse rescue, the plight of veterans, or any other matter.

In this instance, the Court finds that amendment of the complaint would be futile. Accordingly, the Court recommends that the complaint be dismissed without leave to amend.

## VI.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Defendants' motion to dismiss Plaintiffs' first amended complaint be GRANTED; and

2.      This action be dismissed without leave to amend.

IT IS HEREBY ORDERED that objections to this findings and recommendations may not exceed **twenty (20) pages** in length. If a party files objections that fail to comply with this page limitation, the objection may be stricken from the record or only the first twenty pages shall be considered.

---

[10] The Court takes judicial notice of the permanent injunction entered in the Alameda Superior Court action.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**June 7, 2019**__

UNITED STATES MAGISTRATE JUDGE